Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
Telephone:  503.624.6800
Facsimile:  503.624.6888
Attorneys for Plaintiff Tyler Miller

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| TYLER MILLER, an individual, | Case No. |
| Plaintiff, | COMPLAINT |
| vs. | 42 U.S.C. § 1983 |
| HENRY HEIMULLER, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; BRUCE HOLSEY, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; JEFF FLATT, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; and SHELLEY HENNESSY, in her official capacity as Board Member of the Columbia 9-1-1 Communications District, | |
| Defendants. | |

Plaintiff, a Scappoose city councilor, sues Defendants because they have baselessly and unconstitutionally banned him from attending in person any meeting of the Columbia 9-1-1 Communications District (the "District"). Defendants' purported justification for doing so is false. They claim that Plaintiff has created a hostile work environment and sent inappropriate

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

pictures to District employees. Those claims are false, and the ban violates Plaintiff's First Amendment rights. All Plaintiff has done is seek to advocate on behalf of Columbia County's first responders and taxpayers by attending meetings.

Moreover, the ban and a letter that Defendants directed counsel to author are retaliatory in response to Plaintiff's staunch opposition to District board members' proposals that (1) a large corporation be permitted to submit a sole-source bid for supplying equipment and services to the District, to the tune of $20,000,000 to $35,000,000; and (2) the District join Washington County's 9-1-1 system, which would make Columbia County reliant on Washington County's radio system.

Plaintiff seeks damages and an injunction prohibiting Defendants from retaliating against Plaintiff for his First Amendment conduct—as a citizen and City Council member.

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claim for relief alleges a violation of federal law or the Federal Constitution.

2.      This Court has personal jurisdiction because defendants reside in Columbia County, Oregon.

3.      Venue, and divisional venue, lie in this Court and its Portland Division because the acts or omissions at issue arose in Columbia County, Oregon.

## PARTIES

4.      Plaintiff Tyler Miller is an Oregon citizen who resides in Scappoose, Oregon. He was elected to Scappoose City Council in 2020. Among other things, he is 9-1-1 Communications liaison between the Scappoose City Council and the District. He is also the liaison between the City Council and the Columbia County Board of Commissioners.

5.      Henry Heimuller is a Board Member of the District. He is an Oregon citizen. Plaintiff sues him in his official capacity.

6.      Bruce Holsey is a Board Member of the District. He is an Oregon citizen. Plaintiff sues him in his official capacity.

Page 2 - COMPLAINT

7.      Jeff Flatt is a Board Member of the District. He is an Oregon citizen. Plaintiff sues him in his official capacity.

8.      Shelley Hennessy is a Board Member of the District. She is an Oregon citizen. Plaintiff sues her in her official capacity.

### FIRST CLAIM FOR RELIEF

(42 U.S.C. § 1983)

(Plaintiff against all Defendants)

### Count 1 – Violation of First Amendment

9.      As a "District" within the meaning of ORS Chapter 198, and therefore a "public body" within the meaning of ORS Chapter 192.610-.690, the District must comply with the Oregon Public Meetings Law.

10.      The District conducts public board of director meetings once a month and has done so regularly for many years. It currently meets, at a minimum, on the fourth Thursday of each month. The District also calls Special Meetings and Advisory Committee meetings on a regular basis.

11.      Plaintiff has attended over 100 of the District's meetings since 2015. Until the events described in this lawsuit, neither the District, nor any of its directors, has taken any action against Plaintiff in relation to his attending those meetings (or otherwise).

12.      On January 11, 2023, Plaintiff attended a District meeting. During that meeting, the board members, including Defendants, discussed two significant proposals: giving Motorola the opportunity to submit a sole-source contracting proposal, and merging the Columbia 9-1-1 Communications District with Washington County's 9-1-1 systems (the "Proposals").

13.      After the meeting, Plaintiff sent that same day an email to several of the board members:

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

**From:** Tyler Miller <tmiller@cityofscappoose.org>
**Date:** January 11, 2023 at 16:26:52 PST
**To:** Mike Fletcher <MFletcher@columbia911.com>
**Cc:** ██████Personal email addresses██████████████████████
█████████████████████, michael.russell@columbiacountyor.gov
**Subject:** [EXTERNAL]Radio System


Mike,


I would like to be able to support the WCCCA/Motorola endeavor. If you can hear me out on some concerns and requests, I think you may gain my support.


I can tell you that our city management and council are extremely concerned for the public's interest. Motorola is much more expensive than Tait. The attached documents illustrate that point. Even with the discounts Motorola offered, they were still millions more, "apples to apples". When the site count goes up to achieve the coverage needed, the cost difference between Tait and Motorola is likely to increase by millions more. We are also concerned about schools not being included, all public works departments and the electric utility providers.

Schools especially have the potential of bringing hundreds of thousands of dollars in grants to this project.


If not impossible, it is going to take a lot to convince voters to pay millions more compared to a system that meets all the end user requirements and costs millions less.


I am all for competition to get the best possible price for our taxpayers. I am willing to share with you all information I can from our work with Tait to help Federal Engineering and Motorola put a system together that meets our end user's needs at the best possible price offer. My focus has always been: 1) coverage per the user interviews, and 2) total cost of ownership over 15 years.


I am willing to share our site coordinates for the sites selected and the context behind those selections. We spent a lot of time reviewing sites with two different Tait engineers. We reviewed over 70 sites inside and outside the county.

Page 4 - COMPLAINT

The most recent results had the site count down to 13 sites with portable radio
coverage from the hip (95% reliability at 3.4 DAQ), that met the end user
requirements. I can also share all the radio and accessory counts we received from
our interviews. We put a lot of focus on getting those counts correct. For context,
the radio count ended up at 978 (not 650), just for fire, police, Columbia County
public works and 911 admin and cache radios.

A copy of the January 11 email is attached hereto as <u>Exhibit 1</u> and incorporated herein by

reference.

14.     On January 18, 2023, outside counsel to the District sent a letter to the Scappoose

City Council requesting "that Mr. Miller and the city refrain from further comment and criticism

until the Motorola Proposal is complete and can be fairly evaluated." A copy of the January 18

letter is attached hereto as <u>Exhibit 2</u> and incorporated herein by reference.

15.     That same day, the Scappoose City Attorney responded to the District's outside

counsel noting public interest in the Motorola issue, raising questions about the proposed sole-

source opportunity, and requesting that further communications about the matter be directed to

him:

Mr. Peterkin,

I am the City Attorney for the City of Scappoose, I was forwarded your letter to our Mayor
and Council President.  I would appreciate it if you directed any future communications to
me.

I have not been closely following the procurement portion of the radio process, though it has
been coming up at our City Council meetings.  There have also been questions/concerns from
community members.  There seems to be some confusion regarding the process, and your
letter gives me a better understanding of where you are in that process.

I think there is a very high probability that there will be future questions given the decision to
move forward with a sole source contract.  Would you mind providing me with your OAR
125-247-0275 Findings?  It would aid me in providing the Council with accurate information,
and help insure that they are receiving accurate information.

A copy of the City Attorney's January 18 response is attached hereto as <u>Exhibit 3</u> and

incorporated herein by reference.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

16.     On January 20, 2023, the District's counsel responded to Exhibit 3, asking the City Council to "request that Councilor Miller not contact the District directly." The District's counsel complained that after the January 11, 2023 District meeting, Plaintiff had "requested a private meeting with a Board member. That request was rejected. Miller then sent [Exhibit 1]." A copy of District counsel's January 20 correspondence is attached as Exhibit 4 and incorporated herein by reference.

17.     On February 17, 2023, Plaintiff published a posting on his "Tyler Miller: Scappoose City Council" Facebook/Meta account. In the posting, which he addressed to "Scappoose and Columbia County Residents," Plaintiff described the Proposals, shared his view that they were a bad idea, urged residents to attend the District meeting on February 23, 2023, and informed residents that three of the five District Board of Directors seats are up for election in May 2023. A copy of the Facebook/Meta posting is attached as Exhibit 5 and incorporated herein by reference.

18.     Six days later, during the February 23, 2023 meeting, the District Board of Directors, including Defendants, voted to ban Plaintiff from attending any District meetings in person. The Board directed legal counsel to send Plaintiff a letter informing him of this ban.

19.     Plaintiff received that letter on February 23 by email from the District's lawyer, informing Plaintiff that he was banned from attending public District meetings in person, and from calling the District's non-emergency dispatch number. The following day, Plaintiff discovered another copy of the letter taped to the door of his residence. A copy of the letter is attached hereto as Exhibit 6 and incorporated herein by reference (the "Letter").

20.     In the Letter, Defendants accused Plaintiff of engaging in unspecified "conduct [that] has created a hostile work environment." It further accused him of threatening District employees and sending sexually explicit images to them.

21.     In addition to Plaintiff, the Letter was sent to the Scappoose City Attorney and local law enforcement.

22.     The Letter threatened criminal and civil liability for failure to comply.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

23.     Plaintiff has never engaged in the conduct alleged in the Letter.

24.     But even if he had, Ninth Circuit law clearly forbids public bodies from imposing across-the-board bans from public buildings for purposes of attending public meetings, and the across-the-board ban on attending public meetings in person were not reasonably related to the purported concerns professed in the Letter.

25.     The next scheduled public District meeting is set to occur on March 23, 2023.

26.     Plaintiff would like to attend the meeting, and all future meetings, in person, as he has done consistently since 2015 (with the exception of the COVID-19 public health emergency). Doing so is important to his role as 9-1-1 Communications liaison to the City of Scappoose City Council and is his right as an Oregon citizen residing within the District's service area.

27.     Furthermore, attending meetings remotely is materially different from attending in-person. For example, over Zoom, the directors frequently leave their cameras off so it is impossible to observe them or evaluate their credibility, or sometimes to know who is speaking. Moreover, presenting one's views in-person often is more impactful, and the in-person interactions at the meeting—whether with directors or those in attendance—is important to the process of making policy and petitioning government. In any event, barring another public health emergency such as COVID-19, Plaintiff has the right to attend in person.

28.     Plaintiff seeks a declaration from this Court that Defendants' ban on Plaintiff's in-person attendance at public District meetings violates his First Amendment rights.

29.     Plaintiff seeks an injunction prohibiting Defendants from banning Plaintiff from attending the District's in-person meetings.

**Count 2 – First Amendment retaliation**

(First Amendment retaliation in violation of 42 U.S.C. § 1983)

30.     Plaintiff incorporates paragraphs 1 through 27 as though set forth here in full.

31.     Plaintiff has been a stalwart opponent of the District's efforts to permit Motorola to submit an exclusive "sole source proposal," which could allow the District to award a

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

$20,000,000 to $35,000,000 contract to Motorola, without a fair an open competitive bidding process.

32.    Plaintiff frequently has discussed the Motorola proposal, and questioned District directors about it, when attending District meetings.

33.    Plaintiff also is vocal in his opposition to a proposed systems merger of the District with the 9-1-1 agency in neighboring Washington County.

34.    In May 2023, there will be an election for three of the five District director positions. Plaintiff has promoted candidates to run for those positions who, among other things, share Plaintiff's concerns about the Motorola proposal and the potential systems merger.

35.    Plaintiff believes, and based upon that belief alleges, that his being banned from attending in-person District meetings, and from being able to call the non-emergency dispatch number, was a retaliatory act by Defendants, in concert with Executive Director Michael Fletcher, in response to (a) Plaintiff's exercise of the right of speech and petition in relation to the Motorola proposal or the systems merger, and (b) his efforts to change the composition of the District board to one that shares Plaintiff's views—both of which are activities protected by the First Amendment.

36.    Plaintiff bases his belief on (a) having attended <u>over 100</u> District meetings without incident, until Plaintiff voiced his opposition to the Proposals; (b) the fact that all of his communications, including the January 11 email and the February 17 Facebook post, have been professional in tone; (c) the proximity in time of the sending of the Letter to both the Facebook post and Plaintiff's opposition of the Proposals; and (d) the District's request, through counsel, that Plaintiff or other Scappoose city councilors refrain from "comment and criticism" of the Proposals.

37.    The contents of the Letter itself are further evidence of retaliatory motive. The purpose of the Letter appears to be to discredit, humiliate, and punish Plaintiff by creating a false public record accusing Plaintiff of engaging in unspecified "conduct [that] has created a hostile work environment."

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

38.    The Letter also implies, so that others may read in a public record, that Plaintiff has harassed or intimidated district employees, through conduct or "offensive, sexually explicit images," and "put employees in fear of you or fear that you will retaliate against them." Plaintiff has never engaged in the conduct of which the Letter accuses him and he knows of no basis for these accusations—other than to discredit him, his positions, and his preferred candidates in advance of the May 2023 election.

39.    Consistent with his view that the in-person ban and Letter are in retaliation for Plaintiff's First Amendment conduct, within one business day of the sending of the Letter, the local news media became aware of its contents and the ban. Plaintiff believes, and on the basis of such belief alleges, that one or more Defendants, or someone in league with one or more of them such as Executive Director Michael Fletcher, informed the media of the Letter or its contents—in further retaliation against Plaintiff for engaging in speech and petition protected by the First Amendment.

40.    Plaintiff, a government official, has suffered reputational harm through this retaliatory conduct, including through (a) the Letter's false implication that he harasses government employees or sends offensive, sexually explicit materials to such employees, and (b) the dissemination to news media of the information contained in the Letter, including the ban on Plaintiff's in-person attendance. Plaintiff will supplement this Complaint as damages are incurred, but Plaintiff currently seeks nominal damages for purposes of this Complaint.

41.    Whether or not Plaintiff has suffered damages, Plaintiff seeks injunctive relief prohibiting Defendants from (a) imposing a blanket ban on his attending public District meetings in person, and (b) retaliating against Plaintiff based on his speech or petition conduct.

WHEREFORE, Plaintiff prays for entry of judgment as follows:

1.   On Count 1 of the First Claim for Relief:

   a.   A declaration that Defendants have violated Plaintiff's First Amendment Rights by banning him from attending public District meetings in person;

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

  b. An injunction prohibiting Defendants, and all those acting in concert with them or subject to their supervision, from banning Plaintiff from attending public District meetings in person;

2. On Count 2 of the First Claim for Relief:

  a. Damages in the amount of at least $1, the precise amount to be proven at trial;

  b. An injunction prohibiting Defendants, and all those acting in concert with them or subject to their supervision, from

    i. imposing a blanket ban on his attending public meetings in person; and

    ii. retaliating against Plaintiff based on his speech or petition conduct;

3. On all claims and counts:

  a. Attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

  b. Costs; and

  c. Such other and further relief as the Court deems just or necessary.

DATED this 28th day of February, 2023.

      SNELL & WILMER L.L.P.

      /s/ Clifford S. Davidson
      Clifford S. Davidson, OSB No. 125378
      Drew L. Eyman, OSB No. 163762
      Attorneys for Plaintiff Tyler Miller

\4892-3414-9971

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800