Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone: 503.624.6800
Facsimile: 503.624.6888
Attorneys for Plaintiff Tyler Miller

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| TYLER MILLER, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>HENRY HEIMULLER, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; BRUCE HOLSEY, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; JEFF FLATT, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; and SHELLEY HENNESSY, in her official capacity as Board Member of the Columbia 9-1-1 Communications District,<br><br>    Defendants. | Case No. 3:29-cv-00293-<br><br>MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>EXPEDITED TREATMENT REQUESTED |

## **MOTION**

Pursuant to Federal Rule of Civil Procedure 65(a) and (b), Miller moves this Court for both a temporary restraining order and a preliminary injunction enjoining defendants Henry Heimuller, Bruce Holsey, Jeff Flatt, Shelley Hennessy, and any persons working in active concert with them, from prohibiting Miller from attending Columbia 9-1-1 Communications District meetings ("District Meetings") in person.

This motion is supported by the memorandum below, the declaration of Tyler Miller, and such further evidence and argument as this Court may entertain.

## INTRODUCTION

Defendants have prospectively, indefinitely, and baselessly banned plaintiff Tyler Miller ("Miller"), a Scappoose City Councilor who serves as its 9-1-1 Communications liaison, from physically attending future District Meetings. The First Amendment does not tolerate such a brazen restriction on protected speech and petition. Miller is likely to succeed on the merits because the District's ban is not viewpoint neutral, unreasonable in light of the purpose of local government meetings and, regardless, prospective bans are patently unreasonable.

Miller seeks a temporary restraining order, followed by a preliminary injunction, enjoining the District's unconstitutional ban. Miller is entitled to that order because he is likely to succeed on the merits, he is likely to suffer irreparable harm absent such an order, an order would be in the public interest, and the balance of hardship tips sharply in Miller's favor.

## MEMORANDUM

## FACTS RELEVANT TO DETERMINATION OF THE MOTION

Defendants are board members of the District. The District is a 9-1-1 communications district organized under ORS 403.300 to 403.380 and, more broadly speaking, a local service district, as defined by ORS 174.116. The District is the sole 9-1-1 answering point and dispatch center serving Columbia County, Oregon as well as small adjacent portions of Clatsop and Multnomah Counties. The District conducts public board of director meetings once a month and has done so regularly for many years. Miller Decl., ¶ 4. It currently meets, at a minimum, on the fourth Thursday of each month. *Id.* The District also calls Special Meetings and Advisory Committee meetings on a regular basis. *Id.* The next scheduled public District Meeting is set to occur on March 23, 2023.

Miller is a resident of the City of Scappoose, in Columbia County, Oregon. *Id.* at ¶ 2. In 2020, Miller was elected to the Scappoose City Council. *Id.* at ¶ 3. Miller is the council appointed 9-1-1 Communications liaison between the District and the City Council. *Id.* at ¶ 3. In

that capacity, Miller provides the City Council with updates after District Meetings. *Id.* at ¶ 3. Miller has attended over 100 District Meetings since 2015. *Id.* at ¶ 5. Until the events described in this lawsuit, neither the District nor any of its directors, had taken any action against Miller in relation to his attending those meetings (or otherwise). *Id.*

On January 11, 2023, Miller attended a District meeting. *Id.* at ¶ 6. During that meeting, the board members, including Defendants, discussed two significant proposals: giving Motorola the opportunity to submit a sole-source contracting proposal, and merging the Columbia 9-1-1 Communications District with Washington County's 9-1-1 systems (the "Proposals").

After the meeting, that same day, Miller requested to meet with the board member who represents the District Zone containing the City of Scappoose. *Id.* at ¶ 7. When that member did not reply, Miller sent an email to several of the board members:

> **From:** Tyler Miller <tmiller@cityofscappoose.org>
> **Date:** January 11, 2023 at 16:26:52 PST
> **To:** Mike Fletcher <MFletcher@columbia911.com>
> **Cc:** rob503@comcast.net, henry@henryheimuller.com, flycessna182@gmail.com, Shelleylh64@hotmail.com, michael.russell@columbiacountyor.gov
> **Subject: [EXTERNAL]Radio System**
>
> Mike,
>
> I would like to be able to support the WCCCA/Motorola endeavor. If you can hear me out on some concerns and requests, I think you may gain my support.
>
> I can tell you that our city management and council are extremely concerned for the public's interest. Motorola is much more expensive than Tait. The attached documents illustrate that point. Even with the discounts Motorola offered, they were still millions more, "apples to apples". When the site count goes up to achieve the coverage needed, the cost difference between Tait and Motorola is likely to increase by millions more. We are also concerned about schools not being included, all public works departments and the electric utility providers. Schools especially have the potential of bringing hundreds of thousands of dollars in grants to this project.
> If not impossible, it is going to take a lot to convince voters to pay millions more compared to a system that meets all the end user requirements and costs millions less.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

> I am all for competition to get the best possible price for our taxpayers. I am willing to share with you all information I can from our work with Tait to help Federal Engineering and Motorola put a system together that meets our end user's needs at the best possible price offer. My focus has always been: 1) coverage per the user interviews, and 2) <u>total cost of ownership</u> over 15 years.
>
> I am willing to share our site coordinates for the sites selected and the context behind those selections. We spent a lot of time reviewing sites with two different Tait engineers. We reviewed over 70 sites inside and outside the county. The most recent results had the site count down to 13 sites with portable radio coverage from the hip (95% reliability at 3.4 DAQ), that met the end user requirements. I can also share all the radio and accessory counts we received from our interviews. We put a lot of focus on getting those counts correct. For context, the radio count ended up at 978 (not 650), just for fire, police, Columbia County public works and 911 admin and cache radios.

Miller Decl., Exhibit 1.

On January 18, 2023, outside counsel to the District sent a letter to the Scappoose City Council requesting "that Mr. Miller and the city refrain from further comment and criticism until the Motorola Proposal is complete and can be fairly evaluated." Miller Decl., Exhibit 2.

That same day, the Scappoose City Attorney responded to Exhibit 2. He noted public interest in the Motorola issue, raised questions about the proposed sole-source opportunity, and requested that further communications about the matter be directed to him:

> Mr. Peterkin,
>
> I am the City Attorney for the City of Scappoose, I was forwarded your letter to our Mayor and Council President. I would appreciate it if you directed any future communications to me.
>
> I have not been closely following the procurement portion of the radio process, though it has been coming up at our City Council meetings. There have also been questions/concerns from community members. There seems to be some confusion regarding the process, and your letter gives me a better understanding of where you are in that process.
>
> I think there is a very high probability that there will be future questions given the decision to move forward with a sole source contract. Would you mind providing me with your OAR 125-247-0275 Findings? It would aid me in providing the Council with accurate information, and help insure that they are receiving accurate information.

Page 4 – MOTION FOR TRO

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Miller Decl., Exhibit 3.

On January 20, 2023, the District's counsel responded to Exhibit 3, asking the City Council to "request that Councilor Miller not contact the District directly." Miller Decl., Exhibit 4. The District's counsel complained that after the January 11, 2023 District meeting, Miller had "requested a private meeting with a Board member. That request was rejected. Miller then sent [Exhibit 1]." *Id.*

On February 17, 2023, Miller published a posting on his "Tyler Miller: Scappoose City Council" Facebook/Meta account. Miller Decl., Exhibit 5. In the posting, which he addressed to "Scappoose and Columbia County Residents," Plaintiff described the Proposals, shared his view that they were a bad idea, urged residents to attend the District meeting on February 23, 2023, and informed residents that three of the five District Board of Directors seats are up for election in May 2023. *Id.*

Six days later, during the February 23, 2023 meeting, Defendants voted to ban Plaintiff from attending any District meetings in person. *Id.* at ¶ 12. The Board directed legal counsel to send Plaintiff a letter informing him of this ban. *Id.* at ¶ 12.

Miller received that letter on February 23 by email from the District's lawyer, informing Plaintiff that he was banned from attending public District meetings in person, and from calling the District's non-emergency dispatch number (the "Letter"). Miller Decl., Exhibit 6. The following day, Plaintiff discovered another copy of the Letter taped to the door of his residence. *Id.* at ¶ 13.

In the Letter, Defendants accused Miller of engaging in unspecified "conduct [that] has created a hostile work environment." Exhibit 6. It further accused him of threatening District employees and sending sexually explicit images. *Id.* Miller has never engaged in the conduct alleged in the Letter. Miller Decl. at ¶ 14.

In addition to Miller, the Letter was sent to the Scappoose City Attorney and local law enforcement. *Id.* The letter threatened civil or criminal liability for failure to comply. *Id.*

Miller would like to attend all future District Meetings in person, as he has done consistently since 2015 (with the exception of the COVID-19 public health emergency). *Id.* at ¶ 15. Doing so is important to his role as 9-1-1 Communications liaison to the City of Scappoose City Council, and his right as an Oregon citizen residing within the District's service area. ). *Id*.

## **LEGAL STANDARD**

"In deciding whether to grant a motion for a temporary restraining order ('TRO'), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction." *Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1222 (D. Or. 2016); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (a court's "analysis is substantially identical for [an] injunction and [a] TRO")). "A plaintiff seeking a preliminary injunction must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 19 (2008). "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014).

Under the Ninth Circuit's approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker one. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). This Circuit has adopted and applied a version of the sliding scale approach called the "serious questions test" under which a preliminary injunction may issue where the likelihood of success is such that "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *Id.* (citation omitted).

Here, each factor supports injunctive relief in Miller's favor on his First Amendment claim.

Page 6 – MOTION FOR TRO

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

# ARGUMENT

## I. Miller is likely to succeed on the merits.

Courts evaluate claimed unconstitutional restrictions on speech under a three-pronged test: (1) whether the First Amendment protects the plaintiff's speech; (2) the nature of the forum; and (3) whether the justifications offered for limiting or excluding speech from the forum satisfy the requisite standards. *Walsh v. Enge*, 154 F. Supp. 3d 1113, 1126 (D. Or. 2015) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985)).

### A. The First Amendment protects Miller's speech.

"[T]he First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and [the U.S. Supreme Court has] consistently commented on the central importance of protecting speech on public issues." *Boos v. Barry*, 485 U.S. 312, 318 (1988) (internal quotations and citations omitted). It is unsurprising then that courts in this Circuit have consistently protected speech about public issues to local government officials. *See White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) ("Citizens have an enormous first amendment interest in directing speech about public issues to those who govern their city."); *Walsh*, 154 F. Supp. 3d at 1126-27 (holding that speech at City Council meetings is protected under First Amendment).

The District's restrictions apply to Miller's speech at District Meetings open to the public. Speech at local government meetings is protected by the First Amendment. Accordingly, the First Amendment protects Miller's speech.

### B. The District Meetings are limited public fora.

Courts have recognized three categories of public fora: "(1) traditional public fora; (2) designated public fora; and (3) limited public fora." *Reza v. Pearce*, 806 F.3d 497, 502 (9th Cir. 2015). "Limited public fora are public property limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Id.* at 503. The Ninth Circuit has held that local government meetings open to public are limited public fora. *See id.* at 503 (explaining "[w]e have held that city council meetings, where the public has the opportunity to address officers of a

local government or local governmental agency, are limited public fora" and holding that legislative hearing at Arizona Senate building is a limited public forum); *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010) ("[T]he entire city council meeting held in public is a limited public forum.").

The District Meetings are local government meetings that are open to the public. *See* Miller Decl., ¶ 4; ORS 174.116(1)(a) ("'local government' means all cities, counties <u>and local service districts</u> located in this state" and all such administrative subdivisions) (emphasis added); ORS 174.116(2)(o) ("'local service district' means . . . A 9-1-1 communications district . . . ."). Indeed, as a "District" within the meaning of ORS Chapter 198, and therefore a "public body" within the meaning of ORS Chapter 192.610-.690, the District must comply with the Oregon Public Meetings Law. Accordingly, the District Meetings are limited public fora.

### C. The District's prospective, indefinite ban of Miller from attending future District Meetings in person is not reasonable even if the District allows Miller to attend remotely.

In a limited public forum, the government's restriction of speech must be reasonable and viewpoint neutral. *See Reza*, 806 F.3d at 503 ("In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."). The District has the burden of proof to show that the ban reasonably fulfills a legitimate need for purposes of determining reasonableness. *Walsh*, 154 F. Supp. 3d at 1133.

The District's complete ban of Miller's physical presence at future District Meetings is neither viewpoint neutral nor reasonable. That's because: (1) the District banned Miller after he expressed concerns with District procurement, (2) the ban is not reasonable in light of the purpose served by the District Meetings, and (3) prospective bans are not reasonable.

### 1. The District's ban is not viewpoint neutral because they singled out Miller following expression of his concerns.

A regulation of speech is not permissible if it's "an effort to suppress expression merely because public officials oppose the speaker's view." *Reza*, 806 F.3d at 503 (internal quotations omitted); *see Walsh*, 154 F.Supp.3d at 1128 (looking for evidence suggesting defendants selectively enforced the exclusion against plaintiff because of his viewpoint). That is what happened here. Miller expressed concern about a District contract proposal on January 11, 2023 (Miller Decl., Ex. 1); on January 18, 2023, the District's outside counsel requested "that Mr. Miller and the city refrain from further comment and criticism until the Motorola Proposal is complete and can be fairly evaluated" (Miller Decl., Ex. 2); on February 17, 2023, Miller posted about his concerns on his Facebook account (Miller Decl., Ex. 5); six days later, during the February 23, 2023 meeting, Defendants voted to ban Plaintiff from attending any District meetings in person (Miller Decl., at ¶ 12). In other words, the District apparently banned Miller from attending meetings in person in an effort to suppress expression because the District opposed Miller's view on the Motorola proposal. Accordingly, the ban is not viewpoint neutral and therefore is not constitutionally permissible.

### 2. The District's ban is not reasonable in light of the purpose of the District Meetings.

A restriction on speech "must be reasonable in light of the purpose served by the forum." *Reza*, 806 F.3d at 504. Like other local government meetings, the purpose of the District Meetings is to allow public discourse on proposed District actions. *See Walsh*, 154 F.Supp.3d at 1133 (the purpose of City Council meetings "is to allow public discourse on proposed City actions"); *id.* at 1131 ("The very purpose of a council meeting is the creation of a forum for public discourse and decisionmaking.") (internal quotations omitted). That purpose includes not only making comments during public meetings but also "<u>formally or informally meeting with anyone, including elected council members, on the premises</u>." *Id.* (emphasis added). In other words, physical presence is an important aspect of local government meetings and public

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

discourse. Indeed, the Ninth Circuit has explained that "imposing a complete bar on [plaintiff's] entry into the [Senate] Building, clearly exceeds the bounds of reasonableness . . . ." *Reza*, 806 F.3d at 505.

So too, here. While the District will permit Miller to remotely attend District Meetings, that alternative to physical presence is insufficient and inappropriate in light of the purpose served by these local government meetings. *See Walsh*, 154 F. Supp. 3d at 1132 (insufficient and inappropriate alternative modes of communication don't justify government actions in First Amendment arena). Attending meetings remotely is materially different; presenting one's views in-person is often more impactful; and in-person interactions at a meeting—whether with directors or those in attendance—is important to the process of making policy and petitioning government. Remote attendance would both ostracize Miller and bar him from the important public discourse that is best achieved, if not only achieved, by in-person attendance. On Zoom, the District directors frequently leave their cameras off, making it is impossible to observe them or evaluate their credibility, or sometimes to even know who is speaking. Miller Decl., ¶ 16. Miller has the right to attend District Meetings in person. The District's ban on his in-person attendance is unreasonable.

### 3. The District's prospective ban is patently unreasonable.

While the government can remove an individual from a limited public forum if the individual ***actually disrupts*** the proceedings, the government cannot prospectively ban an individual from future hearings. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 976 (9th Cir. 2010) ("Actual disruption means actual disruption. It does not mean constructive disruption, technical disruption, virtual disruption, *nunc pro tunc* disruption, or imaginary disruption."); *Reza*, 806 F.3d at 506 ("No cases, in the Ninth Circuit or otherwise, even remotely suggest that *Norse's* principle can be inverted to indefinitely ban an individual from a government building based on a single disruption of a hearing.").

In *Walsh v. Enge*, this Court granted permanent injunctive and declaratory relief because the ordinance at issue prospectively banned individuals from physically using "a government

building where legislative actions take place." *Walsh*, 154 F.Supp.3d at 1133. This Court explained that "prolonged and prospective exclusions defeat the very purpose of the forum: to provide the opportunity for discourse on public matters." *Id.*; *see Glass v. Forster*, No. 1:18-CV-01859-MC, 2020 WL 3077868, at *5 (D. Or. June 10, 2020) (no First Amendment violation where plaintiff "was not prospectively forbidden from participating in future events, nor was he banned from the Senior Center [where candidate debate had occurred]."). Accordingly, exclusion from public meetings may be imposed only on a case-by-case basis. *See Walsh*, 154 F.Supp.3d at 1133 ("Defendants have a simple alternative to the prospective exclusion ordinance. They can order any disruptive individual to leave the meeting that he or she is disrupting for the duration of the meeting.").

Here, Miller did not "actually disrupt" any District Meetings, so the District would not be justified in contemporaneously removing him from any particular meeting. But the District's actions are far more egregious because they prospectively and indefinitely ban Miller from all future meetings (and District premises!). The District argues that the ban is "necessary to shield District employees from [Miller's] conduct, which has created a hostile work environment." Miller Decl., Ex. 6. Conspicuously absent is any mention of what "conduct" Miller allegedly engaged in. *See Walsh*, 154 F.Supp.3d at 1132 (speculation about safety or disruption is not enough). That's because Miller has not engaged in any conduct that disrupted District Meetings or put the safety of District employees at risk. The District cannot prove that the ban serves a legitimate need, and indeed, as will be addressed later in this lawsuit, serves only to retaliate against Miller based on his speech and petitioning conduct.

As explained above, the First Amendment does not tolerate such prospective bans. Accordingly, the District's ban is not reasonable. As the District cannot justify its indefinite, prospective ban, Miller is likely to succeed on the merits.

**II. Miller is likely to suffer imminent, irreparable harm in the absence of a restraining order.**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, "[i]rreparable harm is relatively easy to establish in a First Amendment case. The plaintiff need only demonstrate the existence of a colorable First Amendment claim." *California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (internal quotations and citations omitted) *see Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) ("The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable.") (internal quotations omitted).

As set forth above, Miller demonstrates the existence of a colorable First Amendment claim – the District has unconstitutionally restricted his protected speech by banning him from all future District Meetings. The next District Meeting is March 23, 2023, though a special meeting may be called at any time. Accordingly, Miller is likely to suffer irreparable harm in the absence of a temporary restraining order, and that harm is imminent.

**III. An injunction against the District's indefinite, prospective ban is in the public interest and the balance of hardships tips sharply in Miller's favor.**

When the government is a party, courts "consider the balance of equities and the public interest together." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). "It is always in the public interest to prevent the violation of a party's constitutional rights." *California Chamber of Com.*, 29 F.4th at 482. Accordingly, where a party raises a colorable First Amendment claim, issuance of a temporary restraining order is in the public interest and the balance of hardships tips sharply in that party's favor. *See Cuviello v. City of Vallejo*, 944 F.3d 816, 834 (9th Cir. 2019) ("Because [plaintiff] has raised a colorable free speech claim and demonstrated that Chapter 8.56 causes irreparable harm, it is well within the public interest to issue a preliminary injunction."); *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (raising of

"serious First Amendment questions compels a finding that there exists 'the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in the plaintiffs' favor.'") (internal quotations excluded).

Because Miller has raised a colorable free speech claim, an injunction against the District's indefinite, prospective ban is in the public interest and the balance of hardships tips sharply in Miller's favor. Accordingly, Miller has satisfied each of the requirements for a temporary restraining order and preliminary injunction.

## IV. The Court should not require a bond.

Rule 65 of the Federal Rules of Civil Procedure directs that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Federal courts, however, have discretion as to the amount of security and may even dispense with the security requirement altogether. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'") (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)).

The Court should exercise its discretion to dispense with the bond requirement, or require a bond in a nominal amount. There is no risk that an erroneously issued injunction will cause economic harm to any defendant, therefore there is no need for a bond.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## REQUESTED INJUNCTION

The Court should issue both a temporary restraining order and a preliminary injunction enjoining defendants Henry Heimuller, Bruce Holsey, Jeff Flatt, Shelley Hennessy, and any persons working in active concert with them, from prohibiting Tyler Miller from attending District Meetings in person.

Dated: February 28, 2023

SNELL & WILMER L.L.P.

By /s/ Clifford S. Davidson
Clifford S. Davidson, OSB No. 125378
Drew L. Eyman, OSB No. 163762

Attorneys for Plaintiff

4880-1681-8771