IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TYLER MILLER**, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br> **HENRY HEIMULLER**, **BRUCE HOLSEY**, **JEFF FLATT**, and **SHELLEY HENNESSY**, in their official capacities as board members of the Columbia 9-1-1 Communications District, <br><br>　　　　Defendants. | Case No. 3:23-cv-293-SI <br><br> **ORDER AFTER *IN CAMERA* REVIEW** |

Clifford S. Davidson and Drew L. Eyman, SNELL & WILMER LLP, 1455 SW Broadway, Suite 1750, Portland, OR 97201. Of Attorneys for Plaintiff.

Karen M. O'Kasey, HART WAGNER, LLP, 1000 SW Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

　　　　This Order follows the Court's *in camera* review of a document submitted by Defendants under a claim of attorney-client privilege. Plaintiff argues that Defendants have waived the privileged subject-matter of the document at issue. For the reasons explained below, the Court concludes that Defendants have not waived their attorney-client privilege and thus need not

PAGE 1 – ORDER AFTER *IN CAMERA* REVIEW

disclose the document reviewed by the Court *in camera*, provided that Defendants continue not to rely on a defense based on "advice of counsel."

## BACKGROUND

Plaintiff Tyler Miller (Miller) is a Scappoose City Councilor, within Columbia County, Oregon. Columbia 9-1-1 Communications District (C911) is the public entity in Columbia County that answers 911 calls and dispatches public safety responses to those calls. Defendants Henry Heimuller, Bruce Holsey, Jeff Flatt, and Shelley Hennessy (collectively, Defendants) are the board members of C911. Miller is suing Defendants solely in their official capacities.

On February 23, 2023, C911, through board action, banned Miller from attending in person future meetings of C911 otherwise open to the public. The ban allows Miller to observe meetings remotely by videoconference and make presentations remotely. No one else who wants to attend C911 meetings otherwise open to the public are subject to these restrictions. Defendants issued this ban to prohibit Miller from attending C911 meetings in person shortly after Miller publicly objected to C911: (1) inviting only one vendor to submit a sole source contracting proposal, rather than soliciting competitive bids; and (2) proposing to merge Columbia County's emergency communications system with Washington County's system. Miller states that he seeks to persuade other members of the public to question these actions by C911.

Miller filed his complaint on February 28, 2023, alleging violations of the First Amendment, including First Amendment retaliation, and seeking relief under 42 U.S.C. § 1983. On March 13, 2023, the Court grant Miller's motion for a temporary restraining order (TRO) that enjoins Defendants from prohibiting Miller from physically attending any public, in-person meetings of C911. The Court added that C911 may hold its public, in-person meetings in a publicly accessible space separate from the rest of the C911 facility not otherwise open to the public.

PAGE 2 – ORDER AFTER *IN CAMERA* REVIEW

The Court originally scheduled a preliminary injunction hearing for March 30, 2023, with the TRO expiring on April 6, 2023. Since then, the parties agreed to a preliminary injunction hearing on May 19, 2023, with the TRO remaining in effect through that date. The parties also agreed to cooperate in expedited discovery in advance of the preliminary injunction hearing. Miller requested, among other things, "all documents, created from January 1, 2020, to the present, regarding any formal or informal investigation or report concerning any allegations or complaints about Tyler Miller." In response, Defendants produced, among other things, a report prepared by attorney Heather Van Meter (the Van Meter Report), along with her notes from her investigation. Defendants, however, state that they are withholding from production a separate report by C911's outside counsel, Michael Peterkin, to the board that discusses Van Meter's investigation (the Peterkin Report). Peterkin is the person who communicated with Miller and informed Miller that C911 had banned him from attending in-person all future meetings of C911 otherwise open to the public. Miller contends that by disclosing the Van Meter Report, Defendants waived their attorney-client privilege over the Peterkin Report under the doctrine of subject-matter waiver. Defendants provided a copy of the Peterkin Report only to the Court, for *in camera* review.

## STANDARDS

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties "may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). In certain circumstances, "the attorney-client privilege will protect communications between clients and their attorneys from compelled disclosure in a court of law." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126 (9th Cir. 2012). In federal court, the application of the attorney-client privilege in the adjudication of claims arising under federal law is governed by federal common law. *See* Fed. R. Evid. 501; *see also United*

*States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009). The party asserting attorney-client privilege bears the burden of proving that the privilege applies and that the privilege has not been waived. *See Ruehle*, 583 F.3d at 607-08.

A party waives attorney-client privilege by voluntary disclosure. *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990); *see also Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications *on the same subject*.") (emphasis added). Thus, voluntary disclosure of a privileged attorney communication waives the privilege on all other communications on the same subject. *Plache*, 913 F.2d at 1380.

A party also may waive attorney-client privilege implicitly. "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). The reason for implicit waiver is that "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield." *Id.* (*citing United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)); *see also Clark v. United States*, 289 U.S. 1, 15 (1933) ("The privilege takes flight if the relation is abused."). In other words, "[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Blizerian*, 926 F.2d at 1292 (citation omitted). The Ninth Circuit in *Chevron* held that the defendant in that case had waived its attorney-client privilege because the defendant put its reliance on the advice of counsel at issue:

> [T]o the extent that Pennzoil claims that its tax position is reasonable because it was based on advice of counsel, Pennzoil puts at issue the tax advice it received. In his declaration, Chairman Liedtke stated that insofar as Pennzoil's decision to

PAGE 4 – ORDER AFTER *IN CAMERA* REVIEW

> proceed with the Chevron investment was based on tax considerations, that decision was made based upon the advice of counsel. Pennzoil cannot invoke the attorney-client privilege to deny Chevron access to the very information that Chevron must refute in order to demonstrate that Pennzoil's Schedule 13D is materially misleading.

*Chevron Corp.*, 974 F.2d at 1162-63. As the Ninth Circuit held in *Chevron*, expressly invoking advice of counsel as an element of a defense is at least a partial waiver of the attorney-client privilege.

A party also may impliedly waive the attorney-client privilege even without expressly raising an affirmative defense, such as when a party's position in practical effect relies upon counsel's advice. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("The defendant need not raise an affirmative defense to inject a new issue into the case, although it frequently occurs that way."). Regardless, establishing an implied waiver requires a showing that the party seeking the protections of the privilege has affirmatively injected an issue into the case that places the legal advice at issue. *See id.*; *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."); Restatement (Third) of the Law Governing Lawyers § 80 (2000) ("(1) The attorney-client privilege is waived for any relevant communication if the client asserts as to a material issue in a proceeding that: (a) the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct . . . .").

## DISCUSSION

Miller asked the Court to review the Peterkin Report *in camera* to determine if Defendants' attorney-client privilege has been waived. If so, Defendants must turn disclose the

Peterkin Report in discovery. Miller argues that because Defendants are relying on the Van Meter Report to justify their prohibiting Miller from personally attending meetings that are otherwise open to the public, Defendants must somehow be asserting an advice of counsel defense based on the Peterkin Report, which discusses Van Meter's investigation. Relying on *Chevron*,[1] Miller asserts that by implicating the advice of counsel as a defense to his claim of retaliation, and by producing the Van Meter Report, Defendants have implicitly waived their attorney-client privilege with respect to the Peterkin Report.[2]

In response, Defendants state that they have not asserted an "advice of counsel" defense, either at the TRO hearing or at any other time. Defendants argue that they based their decision to bar Miller from in-person attendance at otherwise public board meetings in part on the investigation conducted by Van Meter after C911 employees made complaints about Miller in January 2023. Moreover, in response to Miller's discovery request, Defendants produced the Van Meter Report as well as her investigative notes. Defendants argue that this satisfies their discovery obligations. Defendants add that they are properly withholding the Peterkin Report to the board, which discusses Peterkin's legal conclusions about Van Meter's investigation.

The Court agrees that Defendants have not asserted an affirmative defense based on advice of counsel, either explicitly or implicitly. Because no affirmative defense based on advice of counsel has been raised, *Chevron* is inapplicable. Defendants responded to Miller's motion for

---

[1] Miller also cites to *Gilbrook v. City of Westminster*, 177 F.3d 839, 870 (9th Cir. 1999), as an example of where the Ninth Circuit has rejected an attempt to rely on advice of counsel in the context of a First Amendment retaliation claim. *Gilbrook*, however, does not concern the attorney-client privilege and is thus inapplicable to the question of whether Defendants must disclose the Peterkin Report to Miller.

[2] Miller does *not* argue that Defendants waived their attorney-client privilege over the Peterkin Report by voluntary disclosure of that report.

TRO by explaining that their ban of Miller was issued in part on a factual investigation by Van Meter into complaints made by employees of C911. Defendants argue that they acted appropriately in requesting Van Meter to investigate and in relying upon the Van Meter Report. Further Defendants represent that they are not, and will not be, asserting any defense based on reliance on advice received from their attorney, Michael Peterkin. The Court accepts this representation by Defendants.

## CONCLUSION

After reviewing *in camera* the Peterkin Report submitted by Defendants, the Court concludes that Defendants have not waived their attorney-client privilege regarding the contents of attorney Michael Peterkin's legal advice to Defendants, which is the relevant "subject matter" for this analysis, not Van Meter's factual investigation. Defendants thus need not disclose the Peterkin Report to Plaintiff.

**IT IS SO ORDERED**.

DATED this 17th day of April, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge