Karen O'Kasey, OSB No. 870696
E-mail:  kok@hartwagner.com
HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301
        Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TYLER MILLER, an individual<br><br>Plaintiff,<br><br>v.<br><br>HENRY HEIMULLER, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; BRUCE HOLSEY, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; JEFF FLATT, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; and SHELLEY HENNESSY, in her official capacity as Board Member of the Columbia 9-1-1 Communications District,<br><br>Defendants. | Case No 3:23-cv-00293-SI<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**Hearing Date:  March 9, 2023 at 1:00pm**<br><br>**Honorable Michael H. Simon** |

Defendants oppose plaintiff's motion for a temporary restraining order.  This opposition

is supported by the legal memorandum set forth below, the declarations of Michael Fletcher,

Chandra Egan, and Dannell Hooper, and attached exhibits, and the pleadings on file herein.

## FACTUAL BACKGROUND

In January of 2023, C911 employee Chandra Egan complained to Executive Director

Michael Fletcher about Miller's past interactions with her, and provided text messages he sent

her because she learned that Miller was seeking reinstatement as a reserve deputy (Egan Decl. ¶

**Page 1 – DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

4).  She provided an extensive series of text messages between she and Miller ████████

███████████████████████████████████████████████████████████████

Egan became aware in January of 2023 that plaintiff might be reinstated as a reserve deputy for

the Columbia County Sheriff's Office (Egan Decl. ¶ 4).

If that were to happen, Miller would have access to Columbia 911 employees.  Egan

reported that she was not comfortable being physically present at board meetings when Miller

was also there in person (Egan Decl. ¶ 5).  Part of Egan's job duties require her to attend board

meetings in person.

Additionally, C911 employee Dannell Hooper also reported concerns about Miller to Mr.

Fletcher in January of 2023.  She reported that in the past, when Miller was a reserve deputy, he

would misuse the CAD, CJIS, and other emergency communications systems to harass and

intimidate dispatchers.  He would put notes to dispatchers in these systems criticizing their job

performance, which was not appropriate as it did not follow the established chain of command or

recognized boundaries for sheriff deputies. Mr. Miller continued his harassment of dispatchers

after he no longer was a reserve (Hooper Decl. ¶ 2).

Mr. Miller contacted dispatchers directly at work to criticize their performance, even

though he is not a trained 911 dispatcher. He continued his harassment of employees through

public records requests by including criticisms of dispatchers. On one occasion, Miller contacted

Hooper as a dispatcher and told her he needed criminal history information on someone,

although it did not appear to be call-related. When Hooper asked for his name and DPSST

number, he yelled at her and said "I'm your boss, don't you know who your boss is?" (Hooper

Decl. ¶ 3).

Mr. Miller obtains copies of dispatcher calls and then uses the information to publicly

**Page 2 – DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER**

**HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301**

humiliate the dispatchers if he thinks they are not doing their job properly without any Miller having the training or education. His actions undermine dispatcher confidence and are bullying and intimidating to District employees (Hooper Decl. ¶ 5).

At least two employees told Hooper they will quit their jobs if Miller has access to the building or resumes harassing and intimidating dispatchers through misuse of the emergency communications systems. Employees already avoid Mr. Miller if he is on district property for board meetings, and they check cameras to make sure he is gone from the property before they go outside (Hooper Decl. ¶ 6).  Hooper and another District employee rearranged the furniture in the board meeting room to avoid being near Miller during board meetings. Miller then will push the podium, for example, to a position to confront staff and the board members (Hooper Decl. ¶ 6).

Miller lingers on the District's property after public meetings. He is seen on camera being visibly agitated while meeting other attendees in the parking lot or in the lobby near the front door, sometimes for long periods of time. His conduct causes Hooper and the staff to feel unsafe and his actions restrict how staff moves throughout the building and on the property. Staff does not want to run into him or be approached by him (Hooper Decl. ¶ 7).   Hooper also expressed concerns about being physically present in the same room with Miller during his attendance at board meetings.

As a result, the C911 board issued a letter notifying Miller that he could not attend meetings in person.  The letter made clear that Miller may attend meetings by remote means, record the meetings, and make whatever public comments he desires to make (Fletcher Decl. ¶ 9).  The sole basis for the "no contact" letter was the employees' complaints and concerns about Miller.

**Page 3 – DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

## LEGAL STANDARD FOR TEMPORARY RESTRAINING ORDER

A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, *Inc.*, 555 U.S. 7, 20 (2008).

In the context of a First Amendment case, the application of this standard involves an "inherent tension" in that the moving party has the burden of showing likely success on the merits, which is a high burden if the injunction changes the status quo before trial, and the governmental entity bears the burden of justifying any speech restrictive law. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011). A preliminary injunction is an extraordinary remedy never awarded as a right. *Winter v. Natural Resources Defense* Council, 555 U.S. 7 (2008).

Plaintiff has suffered no restriction on his First Amendment rights and has not been threatened with such a restriction. He is not likely to succeed on the merits, and cannot show irreparable harm. His motion should be denied.

## LEGAL ARGUMENT

### 1. In-Person Attendance at Meetings is Not "Speech" For First Amendment Purposes.

Plaintiff spends significant time discussing the limitations that a governmental entity can impose in public forums. Local governmental body meetings open to the public are considered "limited public fora" for First Amendment analysis purposes. *Reza v. Pearce*, 806 F.3d 497, 502 (9th Cir. 2015). Plaintiff has not been excluded from attending the meetings. Plaintiff has been specifically instructed that he can attend via remote means, make any comments he wishes to make at the time of the meeting, and record the meetings. The only question for First

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

Amendment purposes is whether plaintiff has a right to attend in-person versus remotely.  In-person attendance is not "expressive conduct" under the First Amendment.

In assessing whether plaintiff's First Amendment rights have been restricted, a court must first decide whether the conduct at issue is protected speech.  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).  Only if the court determines that the conduct at issue is protected by the First Amendment, does the court go to the second step of the analysis, which is to decide what type of forum is involved.  Here, the court need not advance to the "forum analysis" because there is no expressive conduct being restricted.

To determine whether conduct is expressive and entitled to constitutional protection requires an inquiry into whether the conduct is "sufficiently imbued with the elements of communication to fall within the scope of the First and Fourteenth Amendment."  *Texas v. Johnson*, 491 U.S. 397, 403 (1989).  The United States Supreme Court has repeatedly rejected the view that a limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends to express an idea.  *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

Not all conduct is viewed as "speech" simply because the actor intends to express an idea.  *Spence v. Washington*, 418 U.S. 405, 409 (1974).  A reviewing court must find at the very least, an intent to convey a "particularized message" along with a great likelihood that the message will be understood by those viewing it.  *Johnson*, 491 at 404.  Neither of these elements is present here, as the only conduct that plaintiff complains of being limited is personal attendance at a meeting.  Plaintiff's speech is not being restricted, as he can attend the meetings remotely, fully participate in those meetings, comment during those meetings, and record those meetings.

**Page 5 – DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Tellingly, plaintiff cites no case holding that his physical presence at a board meeting is "expressive conduct" for First Amendment purposes. Plaintiff is not seeking to engage in the type of non-verbal or non-written conduct that courts have found to be protected by the First Amendment. *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 505 (1969)(wearing black armbands to protest American military involvement in Vietnam); *Brown v. Louisiana*, 383 U.S. 131, 141-142 (1966)(sitting in a "whites only" area to protest segregation); *Schacht v. United States*, 398 U.S. 58 (1970)(wearing American military uniforms in presentation criticizing involvement in Vietnam); *Food Employees v. Logan Valley Plaza Inc.,* 391 U.S. 308, 313-314 (1968)(picketing about a wide variety of causes); *Spence, supra* at 409-410 (attaching a peace flag to a sign); *Stromberg v. California*, 283 U.S. 359, 368-369 (1931)(displaying a red flag); *Smith v. Goguen*, 415 U.S. 566, 588 (1974)(wearing pants with small American flags sewn into the seat bottoms).

Plaintiff argues that the alternative to his physical presence is insufficient in light of the purpose of the C911 meetings, relying on this court's decision in *Walsh v. Eng*, 154 F.Supp.3d 1113 (2015). *Walsh* presented the court with a much different fact situation. In *Walsh*, the Portland city council enacted an ordinance allowing individuals to be barred from council meetings for disruptive conduct. The city argued that barring plaintiff was constitutional because it offered plaintiff alternative modes of participation: (1) watching the meetings live online; (2) viewing the upcoming agenda for meetings online and then submitting written comments to the council clerk; and (3) scheduling appointments with city offices. Under the city's proposed scenario in *Walsh*, plaintiff would not have the opportunity to communicate during the actual council meeting itself.

No such limitation is present here. The only difference in plaintiff's attendance and

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

participation is that one is by remote means and one is in person.  Plaintiff argues that not being present in person does not allow him to "assess the credibility" of board members.  Assessing the credibility of a board member is not expressive conduct.  Unlike the ordinance at issue in *Walsh*, the C911 board is not prohibiting plaintiff from making real-time comments during public meetings.

Here, plaintiff's "particularized message" is his various opinions regarding a number of topics that the board discusses.  It is his written and/or verbal communication that is his "expressive conduct," which is not being restricted in any way.  Plaintiff is free to post, write, comment, record, and respond live during meetings to any and all topics raised during the public comment sessions.  The board has imposed no restriction on any First Amendment activity.

**2.  <u>Plaintiff is Not Likely To Suffer Irreparable Harm.</u>**

Plaintiff is not barred from attendance at any meeting as he may attend remotely.  Plaintiff is not going to suffer irreparable harm by being required to attend meetings remotely.  Plaintiff is free to speak at any public meeting and express his views.

**3.  <u>Even If Personal Attendance Is a First Amendment Right, the Board Has Valid Reasons for Excluding Him from In-Person Attendance.</u>**

Plaintiff agrees that a C911 board meeting held at its offices is subject to the "nonpublic forum" analysis.  Limitations on speech in a non-public fora must be reasonable and viewpoint neutral, but that is all they need to be.  *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 268, 270 (9th Cir. 1995).  C911 can regulate not only the time, place and manner of speech, but also the content of speech as long as the content-based regulations are viewpoint neutral and enforced that way.  *Norse v. City of Santa Cruz*, 629 F.3d 966, 975 (9th Cir. 2010).

Here, C911 is not imposing any content-based restriction.  It is limiting the manner of plaintiff's attendance given C911's employees' significant concerns about Mr. Miller's behavior

**Page 7 – DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

towards them.  Under the factual circumstances present here, the manner restriction imposed is reasonable.

## CONCLUSION

For all of the above reasons, the motion for a temporary restraining order should be denied.

DATED this 7th day of March, 2023.


HART WAGNER LLP


By:    */s/ Karen O'Kasey*
_____
Karen O'Kasey, OSB No. 870696
Of Attorneys for Defendants

Trial Attorney:  Karen O'Kasey, OSB No. 870696

**Page 8 – DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of March, 2023, I served the foregoing

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY**

**RESTRAINING ORDER** on the following party at the following address:

> Clifford S. Davidson
> Drew L. Eyman
> Snell & Wilmer LLP
> 1455 SW Broadway Ste 1750
> Portland OR  97201
>     *Of Attorneys for Plaintiff*

by electronic means through the Court's Case Management/Electronic Case File system.


*/s/ Karen O'Kasey*
Karen O'Kasey

Page 1 – CERTIFICATE OF SERVICE