Karen O'Kasey, OSB No. 870696
E-mail: kok@hartwagner.com
HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301
  Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TYLER MILLER, an individual<br><br>   Plaintiff,<br><br>  v.<br><br>HENRY HEIMULLER, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; BRUCE HOLSEY, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; JEFF FLATT, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; and SHELLEY HENNESSY, in her official capacity as Board Member of the Columbia 9-1-1 Communications District,<br><br>   Defendants. | Case No 3:23-cv-00293-SI<br><br>**DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Defendant responds to plaintiff's motion for a preliminary injunction as set forth below.

This response is supported by the declarations of Karen O'Kasey and Michael Fletcher and

attachments thereto, the declarations and briefing submitted in opposition to the motion for a

temporary restraining order and the pleadings on file herein.

Plaintiff previously sought and obtained a temporary restraining order prohibiting

Columbia 911 Communications District ("C911") from barring him from in-person public board

**Page 1 – DEFENDANTS' RESPONSE TO MOTION FOR
    PRELIMINARY INJUNCTION**

meetings.

Plaintiff now seeks a preliminary injunction prohibiting C911 from barring him from in-person attendance at board meetings and from C911 premises and banning him from contacting district employees except in an emergency.

For the reasons below, the motion for a preliminary injunction should be denied. Plaintiff has no First Amendment right to enter C911 property in general, and no First Amendment right to contact C911 employees unless he is calling 911 due to an emergency.

Additionally, to the extent C911's meeting room becomes a limited "public forum" when public meetings are held, plaintiff has not been denied the right to attend those meetings, as all board meetings are being held virtually, as specifically allowed by ORS 192.670. Plaintiff has attended those meetings remotely like all other members of the public. As a result, plaintiff is not likely to suffer "irreparable harm," regardless of the merits of his claim, because he is attending meetings just like all other members of the public.

## <u>FACTUAL EVIDENCE TO BE PRESENTED AT THE HEARING</u>

Defendants will present the following testimony at the time of the preliminary injunction hearing:

On January 3, 2023, district employee Chandra Egan complained about Miller to Executive Director Mike Fletcher. Egan's concern related to fear of harassment, bullying, intimidation, and possible retaliation by Miller against herself and other district employees if Miller were reinstated as a reserve sheriff's deputy. District employees reportedly heard that Miller was seeking reinstatement as a reserve deputy, which prompted Egan's conversation with Mr. Fletcher.

As a result of this complaint, the district retained Heather Van Meter of Bullard Law to

**Page 2 – DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

investigate Egan's concerns.  Ms. Van Meter's investigative report was finalized and sent to

general counsel for C911 on February 6, 2023, *before* plaintiff's February 17, 2023, Facebook

post to Scappoose and Columbia County residents about the radio issues. (O'Kasey Decl. ¶ 2

███ ).

The investigation revealed that Miller had sent Egan numerous text messages on her

personal cell phone ██████████████████████████ that Egan's response to the

last of the texts indicated that the image was not welcome.

The messages were sent late at night, early in the morning, and during work hours when

plaintiff was aware that Egan was at work, in fact, on several occasions asking to confirm that

Ms. Egan was at work.  Some of the text messages were ████████████████████████

██████████████

All the employees interviewed reported concerns and severe anxiety relating to Miller's

behavior towards district employees, particularly dispatchers.  The employees interviewed

reported feeling intimidated and bullied by Miller.

One employee reported that Miller's post-incident public criticism inhibits dispatchers in

their duties because they need to be able to do their jobs quickly and without second guessing

their actions at the time.  One district employee reported that they avoid working as a dispatcher

because of severe anxiety related to Miller's actions in posting dispatcher recordings on his

social media and incorrectly criticizing the dispatching.  Another district employee reported that

when Miller was a reserve deputy, he would call into the dispatchers while on duty (and even off

duty) and yell at them, telling them how to do their jobs even though he was not their supervisor.

The employee indicated that if Miller became a reserve deputy again, the employee would stop

dispatching.

**Page 3 – DEFENDANTS' RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

Other employees complained that when Miller was a reserve deputy, he accessed the CAD system and entered comments into the system criticizing dispatchers directly instead of following the appropriate chain of command.  Employees complained that Miller would contact employees of the district and criticize the employee's dispatching work.

One employee reported that during board meetings, Miller was condescending and disdainful towards district employees.  The employee reported that Miller stands over district employees with his arms folded in an imposing and bullying manner at public meetings, causing the employee to feel extremely uncomfortable and avoid attending public meetings.

Employees reported avoiding attending meetings in person due to personal safety concerns regarding Miller and being afraid to even mention or report their personal safety fears because of a concern that Miller would retaliate against them as established by his long history of either suing the agency or threatening to sue the agency.

One employee reported that Miller misuses the public records request system by leaving personal messages with aggressive language, tone, and demeaning comments in the public records request system, regularly threatening litigation if his demands are not met, regardless of whether he is entitled to what is requested.  Miller has been asked to communicate with outside counsel regarding his public record requests status updates, due to his frequent threats of litigation and aggression, but has refused to do so.

Miller has repeatedly demanded that he be given special treatment in violation of district policy and practice regarding his public records requests, including waivers of fees, refusals to pay fees, and negotiating and backing out of agreements regarding public records request disputes.  Every employee interviewed by Van Meter was very concerned about retaliation by Miller to the extent that one employee requested that no name or identification of the employee

be used due to fear of retaliation.  Three employees indicated that they would quit if Miller
gained access to the district offices or becomes a reserve deputy again.

Two district employees reported they do not carry out all their assigned job duties in
person because of Miller.  This includes not attending board meetings in person and working as a
backup dispatcher, despite being trained and certified to do so, because of Miller's actions
towards dispatchers.  The employees reported that Miller's behavior towards them, including
public shaming and publication of personal photographs of dispatchers in some of his
communications, has caused overall anxiety and low morale for dispatchers.

Ms. Van Meter's report was provided on February 6, 2023.  Based on this report, the
defendants voted to exclude Miller from attending board meetings in person, from contacting
district employees directly, and from entering district premises or property.  The results of the
investigation and Ms. Van Meter's recommendations are the only reason that the above actions
were taken against Miller.

## MEMORANDUM OF LAW

I.      Plaintiff Has No First Amendment Right to Enter C911 Property.

Except for public board meetings, C911 property is not open to the public (Fletcher Decl.
¶ 3, 4).  The C911 office building is located behind a locked gate which bars access to the public
to both the parking lot in front of the office and the office itself (Fletcher Decl. ¶ 3).

As a matter of law, plaintiff has no First Amendment right to enter onto C911 property in
general.  The government, like any landowner, has the power to control access to its private
property.  *Koala v. Khosla*, 931 F.3d 887, 900 (9th Cir. 2019); *Cornelius v. NAACP Legal Def. &
Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985).

While defendants agree that the meeting room at the offices becomes a "limited public

**Page 5 – DEFENDANTS' RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

fora" when board meetings open to the public are held, this does not equate to the C911 offices being open to the public at all other times.

A governmental entity does not create a "public forum" by permitting limited discourse. Instead, the entity must grant general access to its property for expressive use to be *always* considered a public forum. *Seattle Mideast Awareness Campaign v. King County*, 781 F.3d 489, 497 (9th Cir. 2015); *Cornelius, supra*, at 802. C911 does not grant any such general access.

The First Amendment does not guarantee access to property simply because it is owned or controlled by the government. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). As the court held in *Perry*, the existence of a "right of access to public property and the standard by which limitations upon such right must be evaluated different depending on the character of the property at issue." The property at issue is used not for general public forum purposes, but for dispatching emergency calls to various first responders in the district—the opposite of a "public" building.

A public entity may restrict access to its property even based on subject matter and speaker identity as long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral. *Cornelius*, 473 U.S. at 806, *Perry*, 460 U.S. at 47.

The reason that Miller has been excluded from the property is due to employees' complaints about his conduct towards them. Given employee complaints about Miller, and their fear of both his behavior towards them and his potential for retaliation against them if they complain about his behavior, defendants excluded him from the premises, because as an employer, it is legally obligated to protect its employees from harassment and intimidation.

As a matter of law, an employer has a statutory obligation to provide a workplace free of intimidation, bullying, and harassment. ORS 659A.030; ORS 659A.375; ORS 659A.030(1)(g).

**Page 6 – DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

This statutory obligation extends to not only employees of the employer, but non-employees as well.  OAR 839-005-0030(7).  Plaintiff's witnesses are not employed by C911 and their own experiences with plaintiff are irrelevant in determining whether plaintiff should be excluded from C911 offices, as C911 has no legal obligation towards them regarding their interaction with plaintiff.

The C911 offices are not open to the general public as a matter of course; there is no obligation for C911 to provide access to Miller in the first instance, much less allow him on the property given the multiple complaints against him by employees.

For these reasons, plaintiff is unlikely to prevail on the issue of his entitlement to general access to C911 property. For this reason, the preliminary injunction regarding Miller's ban from the property should be denied.

II.    Plaintiff Has No First Amendment Right to Contact District Employees Directly or Indirectly or Through the District Communications Systems Except in an Emergency.

For the same reason that plaintiff has no First Amendment right to be on C911 property in general, he has no First Amendment right to directly or indirectly contact C911 employees for purposes other than calling 911 to report an emergency.  Plaintiff does not work for C911, does not supervise anyone at C911, and has no constitutional right to contact C911 employees that have no interest in speaking with him.  The ban does not prohibit him from contacting C911 in an emergency situation and provides a specific number for him to call for non-emergency reasons.

This ban was issued solely because of the employee complaints about Miller's past behavior towards them.  There is no question that employers are required to take prompt corrective remedial action once they have notice of complaints about the behavior of either

**Page 7 – DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

employees or non-employees towards their staff. *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001); *Brooks v. City of San Mateo*, 229 F.3d 917, 925 (9th Cir. 2000).

For these reasons, plaintiff is not likely to prevail on the merits regarding his claim that he has a First Amendment right to contact district employees directly or indirectly, and for this reason the preliminary injunction motion as to that part of the ban should be denied.

III.    C911 Board Meetings Are Held Remotely Pursuant to ORS 192.679 and As a Result Plaintiff Will Not Suffer Any Irreparable Harm.

Plaintiff seeks a preliminary injunction against his ban from in-person attendance, consistent with his request for a TRO. Defendants rely on the briefing submitted in response to the TRO motion with respect to this motion. In any event, regardless of the merits of plaintiff's underlying claim regarding public meeting attendance, plaintiff is not going to suffer "irreparable harm" because the meetings are being held virtually and he has been able to attend those meetings, like any other member of the public.

In 2021, the Oregon legislature amended ORS 192.670 governing meetings held by public bodies. The statute provides as follow:

> **Meetings by means of telephone or electronic communication.**
> (1) Any meeting, including an executive session, of a governing body of a public body which is held through the use of telephone or other electronic communication shall be conducted in accordance with ORS 192.610 to 192.690
>
> (2) When telephone or other electronic means of communications is used and the meeting is not an executive session, the governing body of the public body shall make available to the public at least one place where, or at least one electronic means by which the public can listen to the communication at the time it occurs. A place provided may be a place where no member of the governing body of the public body is present.
>
> (3) All meetings held by a governing body of a public body, excluding executive sessions, must provide to members of the general public, to the extent reasonably possible, an opportunity to:

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

(a)  Access and attend the meeting by telephone, video or other electronic or virtual means;

(b) If in-person oral testimony is allowed, submit during the meeting oral testimony by telephone, video or other electronic or virtual means; and

(c) If in-person written testimony is allowed, submit written testimony, including by electronic mail or other electronic means, so that the governing body is able to consider the submitted testimony in a timely manner.

All the requirements of the statute regarding video meetings have been met by C911. Plaintiff's witnesses and his own complaints about not being able to see other participants, or that they can only see the executive director and two board members, and can only message hosts and panelists, are irrelevant because none of those things violate the statute.

There is nothing in ORS Chapter 192 requiring any certain process during virtual meetings other than the requirements set forth in ORS 192.670.  There are no requirements in ORS 192.670 that any particular camera angle be available, that any particular messaging system be available, or that attendees be able to "chat" with other attendees.  A public body is not required to allow either written or oral testimony at public meetings in any event. ORS 192.630 (requiring only that the public be permitted to *attend* any meeting except as otherwise provided).

All of plaintiff's anecdotal complaints about virtual meetings are entirely irrelevant under the controlling statute.  To the extent plaintiff and his witnesses are unhappy with remote meetings, their dispute is with the Oregon legislature, not defendants.

///

///

///

///

**Page 9 – DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

## <u>CONCLUSION</u>

For the reasons set forth above, the preliminary injunction should be denied.

DATED this 26th day of April, 2023.

HART WAGNER LLP

By:  */s/ Karen O'Kasey*
Karen O'Kasey, OSB No. 870696
Of Attorneys for Defendants

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of April, 2023, I served the foregoing

**DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** on the

following party at the following address:

Clifford S. Davidson
Drew L. Eyman
Snell & Wilmer LLP
1455 SW Broadway Ste 1750
Portland OR  97201
    *Of Attorneys for Plaintiff*


by electronic means through the Court's Case Management/Electronic Case File system.



*/s/ Karen O'Kasey*
Karen O'Kasey

**HART WAGNER LLP**
**1000 S.W. Broadway, Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**