Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone: 503.624.6800
Facsimile:  503.624.6888
Attorneys for Plaintiff Tyler Miller

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

TYLER MILLER, an individual,

       Plaintiff,

vs.

HENRY HEIMULLER, in his official capacity
as Board Member of the Columbia 9-1-1
Communications District; BRUCE HOLSEY,
in his official capacity as Board Member of the
Columbia 9-1-1 Communications District;
JEFF FLATT, in his official capacity as Board
Member of the Columbia 9-1-1
Communications District; and SHELLEY
HENNESSY, in her official capacity as Board
Member of the Columbia 9-1-1
Communications District,

       Defendants.

Case No. 3:23-cv-00293-SI

PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION TO UNSEAL
COURT DOCUMENTS

ORAL ARGUMENT REQUESTED

[Proposed argument date: May 18, 2023,
concurrently with the preliminary injunction
hearing.]

Plaintiff Tyler Miller opposes—in relevant part—Defendants' motion to unseal "all documents" filed after this Court's March 7, 2023 sealing order. This opposition is supported by the memorandum below, the declaration of Cody Hoesly and exhibits thereto, and such further argument as this Court may entertain.

## INTRODUCTION

Defendants first tried to quash Miller's First Amendment rights, and now attempt to air ancient and unrelated communications to gratify private spite and promote public scandal. Despite having access to Miller's text messages to defend their case, Defendants move to unseal fully irrelevant text messages Miller exchanged years ago with a non-party to this litigation that contains personal musings, gossip, and consensual ribaldry. Compelling reasons justify keeping these text messages under seal, to avoid this Court becoming an instrumentality of the very retaliation Miller has alleged through this lawsuit and that the Court has, at least preliminarily, found to exist. This Court should deny Defendants' motion to unseal as to these text messages and related filings.

## MEMORANDUM

## FACTS NECESSARY TO DETERMINE MOTION

Miller initially filed a Complaint seeking to prevent Defendants—board members of a 9-1-1 communications district in Columbia County (the "District")—from violating his First Amendment rights by baselessly, prospectively, and retaliatorily banning him from attending in-person any meeting of the District. (*See* ECF No. 1.) Shortly thereafter, Miller filed a motion for temporary restraining order and preliminary injunction to prevent the District from banning him from any future meetings during the pendency of this litigation (ECF No. 2), with briefing proceeding under an order to seal. (ECF No. 8.) This Court issued a Temporary Restraining Order forbidding Defendants from banning Miller's in-person attendance at District meetings, and set a preliminary injunction hearing. (ECF Nos. 19, 20, 23.) Defendants then filed a motion to unseal "all documents filed after the order" to seal. (ECF No. 21 at 1.)

Page 1 – PLAINTIFF'S RESPONSE TO
MOTION TO UNSEAL

The crux of the dispute over Defendants' motion to unseal ("Motion"), boils down to text messages exchanged between Miller and a non-party to this litigation, Chandra Egan, spanning from five to over seven years ago. (*See* ECF No. 15, ¶ 7; *see also id.* at Ex. 1 (attaching these text messages in their entirety).) As this Court can see, they contain bawdy, consensual banter, in which neither party expresses discomfort or a desire to end such communication.

These texts have nothing to do with the current litigation and are but a distraction intended to deflect from the actual issues in the litigation, while holding over Miller's head unrelated ammunition that Defendants presume will harm Miller's reputation and force him to cede his constitutionally secured First Amendment rights. Egan initially produced these texts three years ago in response to a subpoena issued in another action pending in this Court, *Miller v. Watson*, No. 3:18-cv-00562-SB (the "Watson Action"). (*Id.*, ¶ 7; *see also* Hoesley Decl., ¶ 3.) At the time Egan testified under oath in the Watson Action, she noted, with reference to the text messages, that she had been friendly with Miller and that she ended that friendliness not because she felt harassed or threatened, but because she wanted to keep her work life and personal life separate. (Hoesley Dec., ¶ 4 & Ex. 1.)

When Defendants revealed that they intended to use the text messages to retaliate against Miller by trying to smear him publicly under the guise of defending itself against this lawsuit, Miller's attorney in the Watson Action designated them confidential pursuant to the protective order in that matter. (Hoesley Decl., ¶ 5.) There had been no previous need to do so as there was no indication that Watson or other District personnel planned to use the messages for any purpose other than the litigation—not to mention as a means of retaliating against Mr. Miller for his advocacy. (*Id.*) Apart from one innocuous text message submitted in connection with a summary judgment motion, none of the text messages currently under seal in this action was filed publicly in the Watson Action. (Hoesley Decl., ¶ 6 & Ex. 2.)

## LEGAL STANDARD

This Court exercises its discretion in reviewing litigants' need to seal documents under a "good cause" standard for materials attached to motions "unrelated to the merits of a case," and

Page 2 – PLAINTIFF'S RESPONSE TO
MOTION TO UNSEAL

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

under a "compelling reasons" standard for motions that are "more than tangentially related to the

merits." *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096-97, 1102-03 (9th Cir.

2016) (finding motion for preliminary injunction more than tangentially related to merits).

Although there is a "strong presumption in favor of access to court records," there must be a

"conscientious[] balanc[ing of] the competing interests of the public and the party who seeks to

keep certain judicial records secret," including for such compelling reasons as "when a court

record might be used to 'gratify private spite or promote public scandal,' [or] to circulate

'libelous' statements' . . . ." *Id*. at 1096-97 (quoting *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S.

589, 599 (1978)). "What constitutes a 'compelling reason' is 'best left to the sound discretion of

the trial court.'" *Id*. at 1097 (quoting *Nixon*, 354 U.S. at 599).

The Court should exercise its discretion to prevent itself from becoming another vector

for Defendants' retaliation and deny Defendants' motion to unseal.

## ARGUMENT

I.    **Compelling reasons necessitate keeping Miller's text messages and their contents
      sealed.**

In a sweeping motion, Defendants seek to unseal *all* court records without

differentiation—even considering the presumption in favor of public access to court records, this

goes too far and collapses the distinction between all filings in this case and the ones that Miller

seeks to retain under seal: the text messages between him and Egan. To be clear, Miller does not

dispute that the Order sealing the entirety of the record may be modified—however, the text

messages between Miller and Egan *should* remain sealed, and any discussion of public

documents of the contents of the texts should be redacted. Indeed, compelling reasons exist to

retain the Court's seal on (1) Miller's and Egan's text messages (ECF No. 11 at Ex. 1; ECF

No.15 at Ex. 1), and (2) any direct quotations or specific descriptions of the text messages in this

and any forthcoming motions.

Compelling reasons to keep a judicial record sealed include—as here—those that prevent

the Court or its files from becoming "a vehicle for improper purposes," such as "the use of

Page 3 – PLAINTIFF'S RESPONSE TO
MOTION TO UNSEAL

records to gratify private spite, promote public scandal, [or] circulate libelous statements." *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (internal quotation marks and citation omitted). Unsealing the Miller-Egan text messages in this litigation manifests private spite and a desire to promote public scandal, particularly in seeking to unseal documents in which Miller does have a privacy right—Defendants' off-topic case law notwithstanding.

Compelling reasons exist to maintain the Miller-Egan text messages under seal for at least three reasons. <u>First</u>, the Miller-Egan text messages contain gossip exchanged in friendly conversation, including privately expressed thoughts and other information from both parties. Documents containing "unsubstantiated rumor, gossip, and other scurrilous allegations" can be "used to gratify private spite" and "permit public scandal," thus providing "compelling reasons" to justify retaining those documents under seal. *United States v. Mathur*, 2:11-CR-00312-MMD, 2012 WL 3135548, at *2 (D. Nev. June 8, 2012), *report and recommendation adopted*, 2:11-CR-00312-MMD, 2012 WL 3135532 (D. Nev. Aug. 1, 2012). This Court could instead summarize "contentions without repeating all of the salacious details for the benefit of the public right to access to judicial files and records." *Id*. Furthermore, private information from individuals—even government employees—unrelated to the action should properly remain sealed. *Doe v. City of San Diego*, 12-CV-689-MMA-DHB, 2014 WL 1921742, at *5 (S.D. Cal. May 14, 2014) (finding that "the information divulges private information from the personnel files of officers not related to this action," and as such that "the Court finds this exhibit of the kind that would 'gratify private spite, promote public scandal, [or] circulate libelous statements.'" (quoting *Kamakana*, 447 F.3d at 1179)).

<u>Second</u>, the Miller-Egan text messages include information about Miller's sexual history, disclosed in jest through a mutual banter with Egan, which are fully irrelevant to the claims at issue here. In implicitly acknowledging the text messages' lack of relevance, Defendants admit that the District's ban "was in response to complaints made by employees regarding Miller and his attendance at board meetings." (Motion at 4.) Even taking Egan's declaration at her word, she merely states that she was "offended" by Miller's text messages, contrasted with her purported

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

reasons for not wanting Miller at the meetings because she is "fearful for [her] personal safety,"
given her opinion that he is "very aggressive, bullying, and intimidating." (ECF No. 11, ¶ 3, 5-6.)
That is, even within her declaration, she does not tie their (very mutual) text messages to the
reasons she now opposes his in-person attendance at District meetings. *Id.*

Defendants' seeking to now disclose years' old text messages with a non-party containing
Miller's private personal information fully unrelated to the claims at issue justifies a compelling
reason to keep the Miller-Egan text messages sealed: "[V]indictively disclos[ing] aspects of [a
party's] sexual history that are irrelevant to the parties' underlying claims" is a compelling
reason to seal a document. *Sparks v. Mamer*, 2:20-CV-0661-KJD-VCF, 2020 WL 2513675, at *2
(D. Nev. May 15, 2020). And certainly, a party's "desire to protect intimate aspects of [his or]
her sexual history outweigh the public interest in access to judicial documents"—"common sense
suggests that one's sexual propensities and sexual history comprise the most intimate details of a
person's life." *Id.*; *see also id.* at *1 (discussing "sensational facts [that] have been disseminated
to [a party's] colleagues in an attempt to injure her reputation as an attorney" in the local
community); *see also, e.g.*, *Low v. Trump Univ., LLC*, 313CV02519GPCWVG, 2016 WL
4098195, at *6 (S.D. Cal. Aug. 2, 2016) (confirming that improper purposes also include prurient
interests in observing that "courts have tended to restrict access to video depositions of
celebrities where the improper purpose for which the deposition is sought is . . . prurient interest
in exposing the details of a celebrity's personal life").

These documents, which were casually exchanged, comprising sometimes bawdy text
messages between two friends (or, at a minimum, people who were friendly), can be viewed as
both "scandalous [and] tawdry," thus furthering an improper purpose in unsealing them. *Contra*
*Macias v. Cleaver*, 1:13-CV-01819-BAM, 2016 WL 3549257, at *4 (E.D. Cal. June 30, 2016)
(declining to maintain internal investigation documents under seal in part because "the
documents here are not scandalous or tawdry"). Unlike in *Macias*, which involved a plaintiff
seeking to unseal internal affairs documents concerning a law enforcement officer, which were
"created as a result of official action by the City . . . to investigate the official conduct of one of

Page 5 – PLAINTIFF'S RESPONSE TO
MOTION TO UNSEAL

its officers," *id*., these were unofficial, casual, and private texts messages that were not the result of any official action by a governing body.

   Third, Defendants ignore an important distinction with their cited authority, which bolsters Miller's conclusion that the present Motion seeks to gratify public spite and promote public scandal in service of retaliating against him: Defendants do not want—or need—public access to the judicial records themselves. They already have them. Instead, despite full access to these text message as parties to the case, they seek an ability to unseal the documents for public consumption. That is, the cases Defendants rely on are those where a member of the public seeks access to sealed court records in a separate action to which the member is not a party. *See Nixon*, 435 U.S. at 591 (press seeking to copy and sell to public tapes that were admitted into trial evidence); *Kamakana*, 447 F.3d at 1175 (appeal on newspaper's motion to intervene in accessing documents filed under seal); *Ctr. for Auto Safety*, 809 F.3d at 1094 (appeal from denial of organization's motion to intervene in accessing documents filed under seal); *Hagestad v. Tragesser*, 49 F.3d 1430, 1431 (9th Cir. 1995) (appeal on state bar's intervention to access sealed records in civil action); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1211 (9th Cir. 1989) (considering "whether the public has a qualified right of access to search warrants and supporting affidavits relating to an investigation which is ongoing and before any indictments have been returned"); *Valley Broad. Co. v. U.S. Dist. Court*, 798 F.2d 1289, 1290 (9th Cir. 1986) (deciding "whether the public's common law right to copy and inspect public records and documents includes the right to copy audio and videotape exhibits as they are received in evidence during a criminal trial"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1127 (9th Cir. 2003) ("This case calls upon us to determine when parties other than the original litigants may gain access to materials that a court has placed under protective seal."). Indeed, the fact that Defendants are attempting to circulate these tangential Miller-Egan text messages more broadly, when they already have access to them for purposes of litigating this case, more strongly suggests an improper (and retaliatory) purpose in seeking to unseal.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Moreover, the very facts that (1) Miller alleged a First Amendment retaliation claim (ECF No. 1, ¶¶ 30-41), and (2) the Court found that "Miller has raised serious First Amendment questions, [with] the balance of hardships tip[ping] sharply in [his] favor," (ECF No. 20 at 15 (internal quotation marks and citations omitted)), strongly intimates that—at the very least—the factual record regarding Defendants' retaliation should be further developed before the Court fully lifts its seal as set forth in this Response. Stated another way: determining whether this attempt to unseal is spiteful or for the purpose of creating scandal is, at this point, too intertwined with the merits of the case for the Court to determine.

The above compelling reasons are "articulable facts known to the court" that overcome the presumption of public access to judicial records here. The Court should maintain the seal over the Miller-Egan text messages and require that public filings directly quoting or specifically characterizing the contents of them be redacted.

## II.    Miller retains a common law privacy right over his text messages.

Defendants claim that Miller has "no expectation of privacy in text messages sent to Egan." (Mot. at 5.) Even if this were accurate, it is not dispositive of whether the Court should continue to prevent itself from becoming an instrumentality of Defendants' retaliation. *See* Section I.

Regardless, Miller *does* in fact retain a privacy right over the Miller-Egan text messages. Oregon recognizes an individual's right to privacy through the common law as against other individuals, including by publication of private facts. Indeed, "[i]t is well established that the common law recognizes the existence of a right to privacy . . . ." *I. K. v. Banana Republic, LLC*, 317 Or. App. 249, 257 (2022); *Reed v. Toyota Motor Credit Corp.*, 301 Or. App. 825, 830–31 (2020) ("Oregon has long recognized a common-law cause of action for invasion of privacy, on four different theories, all of which protect the right of a person to be let alone." (internal quotation marks and citation omitted)).

Oregon also recognizes the right to be free from publication of private facts as set forth in the Restatement (Second) of Torts, § 652D(b): "One who gives publicity to a matter concerning

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *See also Trout v. Umatilla Cnty. Sch. Dist. UH3-Milton-Freewater (McLoughlin Union High Sch.)*, 77 Or. App. 95, 101 (1985) (quoting Section 652(D)). In turn, the "rule stated in this Section applies only to publicity given to matters concerning the private, as distinguished from the public, life of the individual." Restatement (Second) of Torts, § 652D. The Miller-Egan text messages transparently demonstrate Miller's private details. To disseminate such facts by making them available for public access does interfere with Miller's right of privacy over his private thoughts and opinions.

Article I, section 9 of the Oregon Constitution further supports a common law right to be free from invasion of privacy, specifically by state actors. The Oregon Supreme Court "has repeatedly explained that the right to privacy protected by Article I, section 9, 'is the freedom from scrutiny as determined by social and legal norms of behavior, such as trespass laws and conventions against eavesdropping.'" *State v. Lien*, 364 Or. 750, 760 (2019) (internal quotation marks and citations omitted) (quoting *State v. Newcomb*, 359 Or. 756, 764 (2016)). It is not a social norm to screenshot and turn over more than a hundred pages of text messages between a plaintiff and third party in an entirely unrelated litigation from private text messages exchanged years ago.

Oregon Supreme Court precedent analyzing Article 1, section 9 further supports the fact that Miller has a right to privacy in his text messages, especially from state actors obtaining them, like Defendants have here.  In *Lien*, the Oregon Supreme Court departed from the steadfast course of its prior holdings that an individual discards his or her privacy interest when discarding belongings for a sanitation company.  *Id*. at 773-75 (distinguishing *State v. Howard/Dawson*, 342 Or. 635 (2007)). Instead, the court acknowledged that "privacy is grounded in particular social contexts," including that "most Oregonians would consider their garbage to be private and deem it highly improper for others . . . to take away their garbage bin and scrutinize its contents." *Id*. at 760-61.  Accordingly, state actors (there, police) using a garbage collector as their agent

Page 8 – PLAINTIFF'S RESPONSE TO
MOTION TO UNSEAL

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

violated individuals' "privacy interests in their garbage as their bin sat at the curb for regular collection by the sanitation company." *Id*. at 778.

And although an Oregon Court of Appeals case previously determined that an individual "had no protected privacy interest" in the digital copy of a text message police found on another's phone, it relied on the now-overruled reasoning of *Howard/Dawson* to so conclude— this holding simply cannot be good law in this situation following *Lien*. *State v. Carle*, 266 Or. App. 102, 111 (2014). The court of appeals in *Carle* contrasted two cases to conclude that the individual's privacy rights in text messages sent to another were not violated: *State v. Tanner*, 302 Or. 312 (1987) (explaining that "the entrustment of an effect to another is sufficient to establish a privacy interest"), and *Howard/Dawson*. The *Carle* court opted for the latter. Yet even if Miller's text messages were not subject to privacy as contemplated in *Carle*, the Oregon Supreme Court in *Lien* makes clear that where a state actor, like Defendants are here, obtains something entrusted to another through use of an agent, privacy rights stand firm. Just so here. The District and its board—state actors—have obtained the Miller-Egan text messages through an agent, thus thwarting this particular societal expectation of privacy in one's text messages.

Furthermore, Defendants' own cited legal authorities are inapt. Defendants rely on several cases for the supposed proposition that a "person has no legitimate expectation of privacy in information voluntarily turned over to third parties." (Motion at 5.) However, the cases they cite for this proposition all[1] rely on the Fourth Amendment and its jurisprudence—decidedly counter to Oregon's approach to invasion of privacy.

By that same token, Defendants also ignore federal protection of constitutional privacy rights in other contexts more applicable to the Miller-Egan text messages that ***do*** align with Oregon's protection of privacy rights. *Lechowski-Mercado v. Seely Swan High Sch.*, CV 21-10-M-DLC, 2021 WL 2802662, at *2 (D. Mont. July 6, 2021) ("[A] court may restrict discovery where the information sought infringes on an individual's privacy rights."); *see also, e.g., Soto v.*

---

[1] *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026 (N.D. Cal. 2014), does not address the Fourth Amendment, but does address a federal wiretapping statute.

Page 9 – PLAINTIFF'S RESPONSE TO
MOTION TO UNSEAL

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

*City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (observing in same context that "Federal Courts ordinarily recognize a constitutionally-based right of privacy"). In *Lechowski-Mercado*, a party seeking production of private messages from Instagram, Twitter, SnapChat, and other electronic media argued that "information shared on the internet is not private because it is hosted by third-party servers." CV 21-10-M-DLC, 2021 WL 2802662, at *1. The court disagreed, recognizing that "[u]sers of social media have privacy interests in communications sent as direct messages or posts shared only with a select group of persons. *Id*. at *2. So too here—in transmitting a text message to one other person on an even less public platform than Instagram or Twitter (i.e., a cell phone, not in a group text message), Miller has privacy interests in his direct messages.

Specific statutes setting forth requirements for "private communications" similarly recognize that direct messages to another recipient are private communications. *See, e.g.*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 838 (N.D. Cal. 2014) (recognizing as foundational background with reference to Wiretap Act that "Facebook users may also choose to share certain information privately, with just one other Facebook user, through the use of a 'private message.'"); *Shenwick v. Twitter, Inc.*, 16-CV-05314-JST (SK), 2018 WL 833085, at *2 (N.D. Cal. Feb. 7, 2018) (recognizing with reference to Stored Communications Act that a "direct message is a private message through the Twitter platform").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion as to (1) Miller's and Egan's text messages (ECF No. 11 at Ex. 1; ECF No.15 at Ex. 1), and (2) any direct quotations or specific descriptions of the text messages in this and any forthcoming motions.

Dated: April 3, 2023                     SNELL & WILMER L.L.P.

                                         By /s/ Clifford S. Davidson
                                         Clifford S. Davidson, OSB No. 125378
                                         Drew L. Eyman, OSB No. 163762

                                         Attorneys for Plaintiff

\4883-3065-0969

Page 10 – PLAINTIFF'S RESPONSE TO
MOTION TO UNSEAL

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800