Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone:  503.624.6800
Facsimile:  503.624.6888
Attorneys for Plaintiff Tyler Miller

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

TYLER MILLER, an individual,

       Plaintiff,

vs.

HENRY HEIMULLER, in his official capacity
as Board Member of the Columbia 9-1-1
Communications District; BRUCE HOLSEY,
in his official capacity as Board Member of the
Columbia 9-1-1 Communications District;
JEFF FLATT, in his official capacity as Board
Member of the Columbia 9-1-1
Communications District; and SHELLEY
HENNESSY, in her official capacity as Board
Member of the Columbia 9-1-1
Communications District,

       Defendants.

Case No. 3:23-cv-00293-SI

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

## MOTION

Pursuant to Federal Rule of Civil Procedure 65, plaintiff Tyler Miller ("Miller") moves for a preliminary injunction that: (1) prohibits Defendants, and any persons working in active concert with them, from prohibiting Miller from physically attending Columbia 9-1-1 Communications District meetings ("District Meetings") in person,[1] (2) prohibits Defendants, and any persons working in active concert with them, from banning Miller from District premises or any property owned or leased by the District, and (3) prohibits Defendants, and any persons working in active concert with them, from banning Miller from contacting District employees directly, indirectly, or through the District's communications systems.

This motion is supported by the memoranda and declarations submitted in this case in support of Miller's Motion for Temporary Restraining Order and Preliminary Injunction, the memorandum below, the Third Declaration of Tyler Miller, and such further evidence and argument as this Court may entertain.

## MEMORANDUM

### I.    Introduction

On March 1, 2023, plaintiff Tyler Miller ("Miller") moved for a temporary restraining order ("TRO") and preliminary injunction prohibiting Defendants from banning him from attending Columbia 9-1-1 Communications District meetings ("District Meetings") in person. ECF 2. This Court granted Miller's motion for TRO. ECF 20.

Since then, Defendants have continued to reveal their retaliation against Miller's exercise of his First Amendment rights in speaking out against what he views as the District's ill-conceived plans to give Motorola Solutions the opportunity to submit a sole-source contracting

---

[1] Miller does not, at this time, challenge the constitutionality of holding solely remote meetings, which the District chose to do in response to this Court's temporary restraining order.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

proposal, and to merge the Columbia 9-1-1 Communications District with Washington County's 9-1-1 systems (the "Proposals"). Because Miller was drawing unwanted public attention to the District's Proposals and advocating against them, the District banned him from: (1) attending District Meetings in person, (2) setting foot on any District property, and (3) using any communication system of the District, including the non-emergency dispatch number, all under penalty of criminal or civil penalty (the "Ban"). *See* First Miller Decl., ¶ 13 & Ex. 6 (February 23, 2023 ban letter).

Defendants have produced in discovery no evidence justifying their broad and prospective Ban of Miller as a supposed threat to the safety of District personnel. The only threat Miller posed was to the District's shady Proposals. That is the real reason for the Ban. Miller's likelihood of success on the merits has only increased since this Court granted the TRO.

Accordingly, this Court should now grant Miller's requested preliminary injunction to prevent the unconstitutional and harmful effects of the Ban during the pendency of this litigation. That is, this Court should enter a preliminary injunction that: (1) permits Miller to attend public District Meetings in person, (2) prohibits the District from banning Miller from District property, and (3) prohibits Defendants from banning Miller from using any communications system of the District.

## II.    Supplemental Facts

Miller hereby incorporates the facts from his TRO briefing (ECF 2 & 14) as well as the declarations submitted therewith. Miller summarizes some of those pertinent facts below and provides additional facts in support of his requested preliminary injunction.

### A.    Miller is a professional and well-liked public servant with no history of disruptive behavior at public meetings or otherwise.

Miller was elected to the Scappoose City Council in 2020 and serves as the council

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

appointed liaison between 9-1-1 communications that serve City residents and the City Council. Miller Decl., ¶ 3. On February 1, 2023, the recently elected Mayor of the City of Scappoose, Joe Backus, had an introductory meeting and tour of the District facilities with the Executive Director of the District, Michael Fletcher. Backus Decl., ¶ 2. At that meeting, Mr. Fletcher did not mention any concerns about Miller, nor has anyone from the District raised concerns about Miller to Mayor Backus. *Id.* at ¶ 3. Mayor Backus also attended a recent in-person District Meeting, where Miller "was professional and polite to everyone." *Id.* at ¶ 4.

Fellow City Councilor, Peter McHugh, has attended four recent District Meetings and found Miller "nothing less than professional, polite, and courteous" at those meetings. McHugh Decl., ¶ 5. The City Attorney for the City of Scappoose, Peter Watts, said the same. *See* Watts Decl., ¶ 4 (Miller "is extremely polite during public meetings, and I have never observed any disruptions by him.").

Miller has also served as a reserve deputy sheriff for the Columbia County Sheriff's Office from 2011 to 2017. Second Miller Decl., ¶ 6; Third Miller Decl., ¶ 5. During that time, Dustin Hald, the patrol sergeant and lieutenant who supervised the reserve unit, worked "dozens, if not over 100, patrol shifts with Tyler Miller" and found Miller to be "a competent, professional reserve deputy who proved himself over and over." Hald Decl., ¶¶ 5-6. During Lieutenant Hald's time, Miller did not receive any complaints from citizens or District personnel. *Id.* at ¶¶ 7-13.

Kellie Smith, a fellow reserve deputy sheriff and recently elected commissioner for Columbia County, attends weekly meetings of the Columbia County Board of Commissioners with Miller, who she says "has always been respectful and appears to be well-liked by the Commissioners." Smith Decl., ¶ 3. During her time as a reserve deputy from 2015 to 2017, Ms. Smith worked with Miller on several patrol shifts and special projects. *Id.* at ¶ 4. She has "never

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

observed or heard of Tyler Miller harassing or being unprofessional to any personnel from the [District]," she has similarly "not heard of any allegations from any party that Tyler Miller has ever been unprofessional or that he has harassed anyone." *Id.* at ¶ 5. Her interactions with Miller "have all been positive and professional." *Id.* at ¶ 6.

### B.    Miller raises concerns about the Proposals; the District shortens time for public comments, tells Miller to stop talking about the Proposals, launches an investigation into alleged conduct from 7 years ago, and imposes the Ban.

Miller has attended over 100 District Meetings without any issues since 2015. First Miller Decl., ¶ 5. That changed after he began speaking and organizing in opposition to the District's proposals to give Motorola Solutions the opportunity to submit a sole-source contracting proposal, and merge the Columbia 9-1-1 Communications District with Washington County's 9-1-1 systems (the "Proposals").

Miller has frequently and publicly discussed the Proposals and questioned District directors about them when attending District meetings. Third Miller Decl., ¶ 2. In the months leading up to the Ban, Miller spoke out against the Proposals at least a dozen times. *Id.* On September 22, 2022, Defendants shortened the time for public comment from 10 minutes to 3 minutes per person. Third Miller Decl., Ex. 1 (meeting minutes). On October 25, 2022, at a District Board meeting, Miller requested permission to speak a little over 3-minutes. Third Miller Decl., Ex. 2 (meeting minutes). Defendants denied the request, cut Miller off at the 3-minute mark, and Miller politely complied. *Id.*

In May 2023, there will be an election for three of the five District director positions. Third Miller Decl., ¶ 8. Miller has promoted candidates to run for those positions who, among other things, share Miller's concerns about the Proposals. *Id.*

On January 11, 2023, Miller attended a District Meeting at which the Proposals were discussed and, following that meeting, sent an email to several board members regarding his

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

concerns. Miller Decl. at ¶ 6 & Ex. 1. A week later, the District's outside counsel sent a letter to the City Council for the City of Scappoose, requesting that "Miller and the City ***refrain from further comment and criticism until the Motorola proposal is complete*** . . . ." First Miller Decl., Ex. 2 (emphasis added). The District's outside counsel doubled down on that request for silence a few days later. *See* First Miller Decl., Ex. 4 ("This was a fair common-sense request that is consistent with the District's jurisdiction.").

That same month, the District says it received a complaint from Ms. Egan about alleged behavior of Miller from 7 years ago when he was a contractor and reserve deputy sheriff. *See* Egan Decl., ¶ 4. Ms. Egan says she initially raised these same concerns to the District's Executive Director back in February 2020. Egan Decl., ¶ 4. The District says it also received a complaint from Ms. Hooper (Opp. to TRO, p. 2), though Ms. Hooper did not identify when she made the complaint and Lieutenant Hall has no knowledge of such a complaint. *See* Hooper Decl., ¶¶ 1-7 (describing complaints but not identifying when she raised them); Hald Decl., ¶¶ 6-13 (no knowledge of complaints against Miller).

At some point following Ms. Egan's January 2023 complaint, the District tasked outside counsel Heather Van Meter to investigate Miller, who provided a report on February 6, 2023. The District did not communicate any of these findings to Miller, nor even so much as notify him that an investigation had been conducted. Third Miller Decl., ¶ 9. The first time Miller, Mayor Backus, or City Attorney Peter Watts heard of the Egan and Hooper complaints and the District's investigation was in the District's opposition to Miller's motion for TRO. *Id*. Nonetheless, on February 23, 2023, the District imposed the Ban. Miller Decl., Ex. 6.

Page 5 – MOTION FOR PRELIMINARY INJUNCTION

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

     **C.**    **Following the Ban and this Court's TRO ruling, the District changed the District Meetings to virtual only and imposed new restrictions on public access for those virtual meetings.**

Prior to the Ban, the public who attended board meetings by Zoom could always see which members of the public were attending and could chat with anyone. Third Miller Decl. ¶ 4. Since the Ban, that has changed. *Id.* at ¶¶ 3-4. On March 23, 2023, the District held a virtual-only board of directors meeting. At that meeting, the audio was difficult to hear, the chat function was disabled, the public could not see any other attendees, and the camera only showed one board member at a time (switching based on who is talking) making it impossible to view reactions and interactions of other board members. Third Miller Decl., ¶ 3; *see* Ryan Decl., ¶ 4 ("I was blocked from seeing any other public participants" and "the chat feature was also disabled so I could not see or message any of the other public participants."); Plantz Decl., ¶ 3 ("I was blocked from seeing any other public participants" and "I was not able to message anyone for the majority of the meeting" until "[a]bout halfway through the meeting, I noticed the Zoom settings had changed" but "I could then message only the 'host and panelists,' but not any meeting attendees.").

## III.    Argument

In his initial motion (ECF 2 & 14), Miller addressed Defendants' unconstitutional, prospective ban on his in-person attendance at District Meetings. Miller incorporates that evidence and argument here. Plaintiffs must show the same three factors at the preliminary injunction stage as at the TRO stage: (1) plaintiff is likely to succeed on the merits, (2) plaintiff is likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities tips in plaintiff's favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 19 (2008). No one factor is dispositive and stronger factors may offset weaker ones. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the Ninth

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Circuit's "serious questions" test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132.

Pursuant to that standard, Miller provides further argument and evidence below, and now addresses the other retaliatory aspects of Defendants' Ban.

### A.    Miller's claims raise serious legal questions and are likely to succeed on the merits.

Miller brought two claims for relief under 42 U.S.C. § 1983: (1) violation of First Amendment and (2) First Amendment retaliation. ECF 1. Defendants sought to isolate Miller and stifle his speech by imposing the Ban immediately following his political speech in opposition to the Proposals. The First Amendment does not tolerate the Ban and further shields Miller from the District's attempts to retaliate against him for political speech. Accordingly, the District should be enjoined from enforcing its Ban through the entry of judgment in this action.

### 1.    Defendants' Ban on Miller's in-person attendance at District Meetings violates the First Amendment.

#### a.    The First Amendment protects Miller's speech and his right of association.

In connection with the TRO motion, this Court held that "[t]here are at least serious questions going to the merits of whether Miller's physical, in-person, attendance at C911 board meetings is protected speech." ECF 20 at 10. As this Court explained, "even if Miller were to say nothing, his physical presence sitting across from the C911 board members as they decide on the Motorola Proposal likely constitutes expressive conduct in a way that merely virtual presence cannot." *Id.* at 10-11. That is equally true at this preliminary injunction stage. Indeed, the Board made the March 23, 2023 board meeting virtual only, preventing other concerned citizens from showing up in person to express their opposition to the Proposals through physical presence.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Third Miller Decl., ¶ 3.

The First Amendment also separately protects Miller's right of association. Because this Court has already held that Miller raised serious questions regarding his in-person attendance as protected speech (which remains true), Miller need not show that Defendants also violated his First Amendment right of association to satisfy the standards for a preliminary injunction. To this point, the Court has declined to address this additional issue. ECF 20 at 10 n. 5. Nonetheless, Miller continues to maintain that the First Amendment right of association further protects his in-person attendance at District Meetings. *See Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (stating that First Amendment protections include a "corresponding right to associate with others"); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577 (1980) ("From the outset, the right of assembly was regarded not only as an independent right but also as a catalyst to augment the free exercise of the other First Amendment rights with which it was deliberately linked by the draftsmen."). By singling out and banishing Miller to virtual attendance, Defendants have violated his right of association with the group of concerned citizens (organized by Miller and others) who may continue to attend District Meetings in person to oppose the Proposals. *See* Third Miller Decl., ¶ 11 (Miller has organized concerned citizens to attend District Meetings); Ryan Decl., ¶¶ 2-3 (runs a community engagement Facebook group called "engaged Citizens of Columbia County"). At the very least, Miller has raised serious questions going to the merits on this protected right.

> **b.    The District's prospective, indefinite ban of Miller's in-person attendance at District Meetings is neither viewpoint neutral nor reasonable.**

It is undisputed that District Meetings are limited public fora. Government restrictions on speech in such fora must be both viewpoint neutral and reasonable. Defendants do not meet this standard. First, as explained further in the First Amendment retaliation section that follows,

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Defendants banished Miller (and only Miller) to virtual attendance, and more broadly from

District property and communications systems, following his comments opposing the Proposals

– and a mere six days after he posted on Facebook in opposition of the Proposals. The District

did not want Miller physically present at District Meetings rallying opposition to the Proposals.

The Ban is not viewpoint neutral and, for that reason alone, the District's Ban violates the First

Amendment.

Second, the Ban is unreasonable. Following this Court's TRO ruling, the District

produced in discovery: (1) a few handwritten notes of attorney Heather Van Meter who

conducted the investigation of Miller, (2) Attorney Van Meter's report to the District concerning

the investigation, and (3) a handful of audio files of District Meetings. This discovery does not

show any hostile or disruptive behavior at a District Meeting. Regardless, as this Court has

already held, "even if the factual allegations made by C911 against Miller are entirely true, a

*prospective* ban that targets Miller's speech is unreasonable." ECF 20 at 13 (emphasis in

original).

Moreover, the virtual District Meetings are not a reasonable substitute for in-person

attendance. At the March 23, 2023 virtual District Meeting, Miller and other attendees could not

hear well due to poor audio quality, could not communicate with the District board members at

all for at least part of the meeting, could not see any other attendees, could not communicate with

other attendees, and could only see one board member at a time and only when that board

member was speaking. Third Miller Decl., ¶¶ 3-4; Plantz Decl., ¶ 3; Ryan Decl., ¶ 4. The

public's inability to see other attendees ensures those attending have no idea who, and how many

others, share mutual concerns, which prevents them from connecting and organizing. Finally, the

District has attempted to justify the Ban based on Ms. Egan's complaint that she is

Page 9 – MOTION FOR PRELIMINARY INJUNCTION

uncomfortable with Miller being physically present at board meetings, and that part of Ms. Egan's job duties requires her to attend board meetings in person. ECF 9 at 2. But the Ban does not cover just board meetings, it prohibits Miller from attending ***all*** of the District's public meetings in person. Compl, Ex. 6 ("You are not allowed to attend the District's public meetings in person."). That means Miller cannot attend other District meetings which are open to the public but which Defendants do not claim Egan is required to attend or that she even attends at all, including advisory committee meetings and budget meetings. Defendants' broad Ban is not reasonable.

### 2. Defendants imposed the Ban in retaliation for Miller's protected speech.

"Otherwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). "To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (internal quotations omitted).

#### a. Miller was engaged in constitutionally protected political speech.

Miller was engaged in constitutionally protected political speech when he began to rally against and spoke out against the Proposals and promoted candidates to run for District board positions in the upcoming election. Third Miller Decl., ¶¶ 2 & 8. "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Burson v. Freeman*, 504 U.S. 191, 196, 112 S. Ct. 1846 (1992) (internal quotations omitted). In *Mills v. State of Ala.*,

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

384 U.S. 214, 86 S. Ct. 1434 (1966), the Supreme Court explained:

> Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes.

*Id.* at 218-19; *see Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 816, 104 S. Ct. 2118 (1984) ("[P]olitical speech is entitled to the fullest possible measure of constitutional protection."). Accordingly, Miller was engaged in a constitutionally protected activity.

> **b.    Defendants' Ban caused Miller to suffer an injury that would chill a person of ordinary firmness from continuing to engage in political speech.**

Defendants took three adverse actions against Miller, they banned him from: (1) attending District Meetings in person, (2) setting foot on any District property, and (3) using any communications system of the District. Compl., Ex. 6. Those adverse actions would, at minimum, chill a person of ordinary firmness from continuing to engage in political speech.

To prove First Amendment retaliation, "a plaintiff need only show that the defendant 'intended to interfere' with the plaintiff's First Amendment rights and that it suffered some injury as a result; the plaintiff is not required to demonstrate that its speech was actually suppressed or inhibited." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). "The 'adverse action' element of a First Amendment retaliation claim is a low threshold." *DePaul Indus. v. City of Eugene*, No. 6:18-CV-0320-MC, 2018 WL 4039693, at *9 (D. Or. Aug. 23, 2018) (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 65, 75 n.8 (1990) for proposition that "'even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights' comprises adverse action"). Moreover, "'Ordinary firmness' is an objective standard that will not 'allow a defendant to escape liability for a First Amendment violation merely because an unusually

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

determined plaintiff persists in his protected activity.'" *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1142 (D. Or. 2020) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

The District's Ban applies to Miller in both his capacity as a private citizen and District taxpayer, as well as an elected city councilor. In the context of elected officials, "an adverse action against an elected official is material when it prevents the elected official from doing his job, deprives him of authority he enjoyed by virtue of his popular election, or otherwise prevents him from enjoying the full range of rights and prerogatives that came with having been publicly elected[.]" *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022) (internal quotations and citations omitted).

Miller has raised serious questions going to the merits and he is likely to succeed on his First Amendment retaliation claim because the Ban: (1) actually inhibits and suppresses Miller's speech (though he need not prove that high standard to prevail); (2) would chill or silence a person of ordinary firmness from engaging in political speech; and (3) prevents him from doing his job as city councilor and liaison to 9-1-1 communications.

First, the in-person ban actually inhibits and suppress Miller's speech because it suppresses the expressive conduct of Miller's presence at District Meetings, inhibits the effectiveness of his political speech, inhibits his ability to rally political supporters, and inhibits his ability to formally or informally meet with anyone, including board members or constituents, on the premises. In prior years, Miller was often the only person in attendance at the District's board meetings (which are scheduled during the workday). Third Miller Decl., ¶ 11. By bringing information to the public over the last two years, Miller has created a more engaged citizenry, as approximately 2 to 15 members of the public now regularly attend District board meetings. *Id.* The Ban jeopardizes that public engagement, which is precisely Defendants' intent, as explained below.

For the same reasons, and to the extent Miller's capacity as an elected official is at issue, the Ban prevents Miller from doing his job as city councilor and liaison between the City

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Council and 9-1-1 communications. *See* Third Miller Decl., ¶ 10 (describing position). That is, Miller's position as city councilor requires him to remain appraised of actions that could affect residents of the City of Scappoose (the Proposals) and to engage with those actors (in this case, Defendants). That is especially true here because Miller is the Scappoose City Council-appointed liaison for 9-1-1 communications. Miller Decl., ¶ 3; Third Miller Decl., ¶ 10.

Moreover, the Ban prevents Miller from becoming reappointed as a reserve deputy, which Defendants know he is seeking. *See* Opp. to TRO, ECF 9 at 1 (stating Egan complained to the District's Executive Director Michael Fletcher when she learned that Miller sought to become a reserve deputy). As a reserve deputy, Miller would need access to District communications systems. Third Miller Decl., ¶ 13. The District's Ban prevents him from doing so and is intended to interfere with his reappointment process.

At the very least, the Ban would chill a person of ordinary firmness from engaging in political speech, which is all that Miller must prove. That's because the Ban is composed of three separate adverse actions, all of which are proscriptive and serve as punishment. *See Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010) ("The most familiar adverse actions are exercises of governmental power that are regulatory, proscriptive, or compulsory in nature and have the effect of punishing someone for his or her speech."). The District further threatened civil or criminal actions for failure to comply with the Ban, provided a copy of the letter outlining the Ban to "[l]ocal law enforcement . . . for future enforcement purposes," and law enforcement officers are now posted at in-person District Meetings. Miller Decl., Ex. 6; Third Miller Decl., ¶ 14. These adverse actions would chill a person of ordinary firmness from engaging in political speech.

        c.        **Miller's constitutionally protected speech was a substantial or motivating factor in the Defendant's conduct.**

The final element of a First Amendment retaliation claim requires a plaintiff to show that their "protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Arizona*

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

*Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). Courts apply a

"burden-shifting approach to § 1983 claims of First Amendment retaliation[.]" *Boquist v.*

*Courtney*, 32 F.4th 764, 777 (9th Cir. 2022). Once a plaintiff has made a prima facie showing of

retaliation,

> the burden shifts to the defendant official to demonstrate that even without the
> impetus to retaliate he would have taken the action complained of. If there is a
> finding that retaliation was not the but-for cause of the adverse action, the claim
> fails for lack of causal connection between unconstitutional motive and resulting
> harm, despite proof of some retaliatory animus in the official's mind.
>
> The Supreme Court has recently defined but for causation as being established
> whenever a particular outcome would not have happened but for the purported
> cause.

*Id.* (internal quotations and citations omitted).

A plaintiff may satisfy the motive element with either direct or circumstantial evidence.

*Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002). Indeed, the Ninth

Circuit has "held that a plaintiff may rely on evidence of temporal proximity between the

protected activity and alleged retaliatory conduct to demonstrate that the defendant's purported

reasons for its conduct are pretextual and false." *Arizona Students' Ass'n*, 824 F.3d at 870.

Here, the temporal proximity between Miller's protected speech and the resulting Ban is

strong:

- <u>Prior to September 2022, and in the months leading up to the Ban</u>: Miller speaks out against the Proposals at least a dozen times. Third Miller Decl., ¶ 2.

- <u>September 22, 2022</u>: Defendants shortened the time for public comment from 10 minutes to 3 minutes per person. Third Miller Decl., Ex. 1 (meeting minutes).

- <u>October 25, 2022</u>: Miller requested permission to speak a little over 3-minutes. Third Miller Decl., Ex. 2 (meeting minutes). Defendants denied the request, cut Miller off at the 3-minute mark, and Miller politely complied. *Id.*

- <u>January 11, 2023</u>: Miller attended a District board meeting regarding the Proposals, unsuccessfully attempted to schedule a meeting with a board member representing

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Scappoose, and sent an email to several board members expressing his concern. Miller Decl., Ex. 1.

- <u>January 18, 2023</u>: the District's outside counsel requested "that Mr. Miller and the city refrain from further comment and criticism until the Motorola Proposal is complete[.]" Miller Decl., Ex. 2.

- <u>January 20, 2023</u>: the District's outside counsel reiterates its request that Miller and the City should stop talking about the Proposals and tells Miller to not contact the District directly. Miller Decl., Ex. 4.

- <u>February 17, 2023</u>: Miller addresses a Facebook post to Scappoose and Columbia County residents about his concerns with the Proposals and urges the public to attend District board meetings and participate in the public comment process. Miller Decl., Ex. 5.

- <u>February 23, 2023</u>: Defendants voted to ban Miller from attending any District meeting in person and send Miller a letter to that effect. Miller Decl., Ex. 6.

As the Ninth Circuit has observed, "[i]t is hard to conceive or a more direct assault on the First Amendment than public officials ordering the immediate arrests of their critics." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 917 (9th Cir. 2012). The same applies to Defendants' actions significantly limiting public comment time and then outright banning the in-person attendance of the most vocal critic of their Proposals, threatening Miller's arrest for failure to comply and having law enforcement officers on site, starting at the February 23, 2023 board meeting. Third Miller Decl, ¶ 14. Just as in *Lacey*, "there was nothing subtle about their efforts to stifle" Miller's protected speech. *Id.* The District's outside counsel even expressly admitted those efforts, telling "Mr. Miller and the city" to "refrain from further comment and criticism until the Motorola Proposal is complete[.]" Miller Decl., Ex. 2. That is why, six days after Miller posted on Facebook in opposition to the Proposals, the District imposed the Ban. Accordingly, at the very least, Miller has raised serious questions about whether his constitutionally protected speech was a substantial or motivating factor in the Defendant's conduct.

Moreover, the Egan and Hooper complaints concerned alleged behavior seven years

Page 15 – MOTION FOR PRELIMINARY INJUNCTION

earlier and in a different context – while Miller worked as a subcontractor for the District, or as a reserve deputy – and were not raised during the time of the alleged conduct. If Defendants had legitimate concerns about Miller's use of District communications systems, they would have raised those concerns with the Sheriff's Department. That did not happen. Hald Decl., ¶¶ 6-13. Indeed, Defendants have known about Egan's complaint since February 2020 but conspicuously only decided to take action when Miller presented opposition to their Proposals. Worse still, until Defendants filed their opposition to Miller's motion for TRO in this case, Defendants did not notify Miller (or the Scappoose City Attorney or the Mayor of Scappoose) of these complaints, or of any concerns related to Miller's behavior during District Meetings or otherwise. As this Court has already held, "[t]his all supports a conclusion that Defendants' current position is mere pretext." ECF 20 at 14. The minimal discovery produced by Defendants does not warrant a different conclusion – a few handwritten notes, the investigation report, and audio files of District Meetings. The pretextual nature of Defendants' proffered explanations is further grounds for finding a causal connection for purposes of First Amendment retaliation. *See Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1222–23 (D. Or. 2017), *aff'd*, 758 F. App'x 582 (9th Cir. 2018) (Simon, J.) (holding, where police chief was alleged to have informed private employer of purported stalking incident from six years prior in order to have former journalist fired from job, and where police chief argued that "public safety" was his true motive, evidence of pretext showed requisite causal connection for First Amendment retaliation).

Defendants say the above timing and evidence of pretext is pure coincidence. According to Defendants, they imposed the Ban solely in response to complaints they received in January 2023. Both the timing and purported justification strain credulity. Accordingly, they are unlikely to carry their burden of proving that they "would have taken the same adverse action even in the

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

absence of their animus or retaliatory motive arising from the plaintiff's speech." *Boquist*, 32 F.4th at 778. At the very least, at this stage, Miller has raised serious concerns going to the merits.

      **B.**    **Miller is likely to suffer irreparable harm in the absence of preliminary relief.**

      With respect to in-person attendance at District Meetings, this Court has already held that Miller is likely to suffer irreparable, imminent harm in the absence of a TRO. ECF 20 at 15. That's because "[a] 'colorable First Amendment claim' is 'irreparable injury sufficient to merit the grant of relief.'" *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). ECF 20 at 14. That remains true.

      For the same reason, Miller is also likely to suffer irreparable harm with respect to the other aspects of the Ban that he now seeks to enjoin: the prohibition on his entry to any property owned or leased by the District and prohibition of his use of any communications system of the District. The prohibition on entry to District Property prevents Miller from meeting with District officials and the public about public issues, from lobbying District officials, and from attending any meetings on District property as part of his duties as a city councilor. Those meetings are not limited to District Meetings, other public entities also occasionally hold meetings on District property. Third Miller Decl., ¶ 12.

      These other aspects of the Ban also cannot later be remedied by monetary damages and, for that additional reason, constitute irreparable harm. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) ("Irreparable harm is harm for which there is no adequate legal remedy, such as an award for damages.") (internal quotations omitted). These other aspects of the Ban prevent Miller from becoming a reserve deputy, which – as Defendants know – he is actively pursuing and normally would be the decision of the Columbia County Sheriff. Third Miller Decl., ¶ 13. That is because, as a reserve deputy, he would need access to District communications systems. *Id.*. For these additional reasons, Miller is likely to suffer irreparable harm in the absence of a preliminary injunction.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

**C.    The balance of equities tips in Miller's favor and an injunction is in the public interest.**

In granting Miller's motion for TRO, this Court found "that these two factors tip sharply in favor of Miller." ECF 20 at 15. There is no reason to find otherwise now. Indeed, as Miller has now further explained, the Ban will also prevent him from serving the public as a reserve deputy. And the District inches closer and closer to a vote on the sole-source proposal . . . .

**IV.    Conclusion**

For the foregoing reasons, the Court should grant the requested injunction.


Dated: April 12, 2023                             SNELL & WILMER L.L.P.

                                                  By /s/ Clifford S. Davidson
                                                      Clifford S. Davidson, OSB No. 125378
                                                      Drew L. Eyman, OSB No. 163762

                                                  Attorneys for Plaintiff


\4869-9488-5724

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800