Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone: 503.624.6800
Facsimile: 503.624.6888
Attorneys for Plaintiff Tyler Miller

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| TYLER MILLER, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>HENRY HEIMULLER, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; BRUCE HOLSEY, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; JEFF FLATT, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; and SHELLEY HENNESSY, in her official capacity as Board Member of the Columbia 9-1-1 Communications District,<br><br>    Defendants. | Case No. 3:23-cv-00293-SI<br><br>REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................................. 1
II.  ARGUMENT ....................................................................................................................... 2
     A.   Miller's claims raise serious legal questions and are likely to succeed on
          the merits. .................................................................................................................. 2
          1.   Claim 1: Defendants provide no further argument on the merits. ............. 2
          2.   Claim 2: Defendants fail to rebut that Miller plausibly alleged a
               First Amendment retaliation claim. ........................................................... 2
               a.   Defendants do not dispute that Miller has satisfied the first
                    two elements of First Amendment retaliation. ............................... 3
               b.   Defendants' explanation for the Ban is pretextual and they
                    are unlikely to satisfy their burden under the third element
                    of First Amendment retaliation. ...................................................... 3
     B.   Miller is likely to suffer irreparable harm in the absence of preliminary
          relief. ......................................................................................................................... 8
     C.   The balance of equities tips in Miller's favor and an injunction is in the
          public interest. ......................................................................................................... 10
III. CONCLUSION .................................................................................................................. 10

**MEMORANDUM**

**I.      Introduction**

Defendants argue as if Miller brought a single First Amendment claim. Miller brought two claims—(1) violation of First Amendment and (2) First Amendment Retaliation—but Defendants only addressed the first claim.

Curiously, Defendants argue that Miller has no First Amendment right to any of the three aspects of the Ban—(1) in-person attendance, (2) access to District property, (3) use of District communications systems. But Miller has argued only that he has a First Amendment right to in-person attendance at District meetings (Claim 1); Miller has not argued that he has a First Amendment right to access District property generally or to use the District Communications Systems. Rather, he has argued that those aspects of the ban are retaliatory in response to First Amendment conduct (and so was the first aspect). Accordingly, Defendants' arguments on those latter two aspects of the Ban are irrelevant. Moreover, Defendants provide no further argument on the merits of the in-person attendance aspect of the Ban, relying solely on their prior briefing at the TRO stage.

Defendants argue that no irreparable harm will result from the in-person aspect of the Ban because they switched to virtual-only public meetings. In support, they say that ORS 192.670 authorizes municipalities to hold exclusively virtual public meetings. That argument is misguided. That statute does not *authorize* exclusive, indefinite virtual public meetings, it merely identifies *requirements* when such meetings are held. Regardless, Defendants do not say they intend to exclusively hold virtual meetings going forward and, moreover, those particular virtual meetings are inadequate. Accordingly, a preliminary injunction is necessary to prevent irreparable harm.

In his second claim, Miller alleges that all three aspects of the Ban constitute First Amendment Retaliation. Miller set forth a detailed argument to that effect in his Motion for Preliminary Injunction. Defendants did not address that argument.

Page 1 – REPLY ISO MOT. FOR PRELIMINARY INJUNCTION

II.    **Argument**

    A.    **Miller's claims raise serious legal questions and are likely to succeed on the merits.**

        1.    **Claim 1: Defendants provide no further argument on the merits.**

Defendants provide no further argument on the merits of Miller's first claim for First Amendment Violation, relying solely on their prior briefing submitted in response to Miller's Motion for TRO.

Defendants do now argue that the Ban on Miller's in-person attendance is of no consequence because they recently switched to exclusively virtual meetings. But Defendants' argument on that point does not address the merits of the First Amendment violation and, instead, is limited to whether irreparable harm exists – more on that below.

Regardless, to be clear, virtual meetings do not shelter Defendants from First Amendment protections. Indeed, the particular virtual meetings at issue are neither reasonable nor viewpoint neutral. The District moved these public meetings online solely to attempt to avoid Miller's in-person attendance and, as explained further below, Defendants structured these virtual meetings in ways that deprive Miller and other public attendees of the benefits of in-person attendance.

Defendants argue that Miller has no First Amendment right to enter District property or to contact District employees through the District Communications System. It's unclear why Defendants raise those arguments. Miller argues only that those two aspects of the Ban constitute First Amendment retaliation. Just as there is no constitutional right for a public employee to receive a workplace birthday party, it is First Amendment retaliation to deprive her of one based on her speech. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76-77 n.8 (1990) (so noting). More on that below.

        2.    **Claim 2: Defendants fail to rebut that Miller plausibly alleged a First Amendment retaliation claim.**

Defendants do not address Miller's second claim (First Amendment retaliation). In each section of Defendants' response, they argue only that Miller has no First Amendment right to the subjects of the Ban. But that does not affect Miller's First Amendment retaliation claim. That is

because "[o]therwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016).

In Miller's Motion for Preliminary Injunction, he identified the three elements of First Amendment retaliation. Defendants offer only meager resistance to the third element of the First Amendment retaliation test and do not address either of the first two elements. That is, Defendants assert that they imposed the Ban solely because of employee complaints about Miller's behavior. That explanation is unlikely to survive the burden-shifting framework that Courts apply to First Amendment retaliation claims. That is, at this stage, Miller has provided sufficient evidence of pretext.

      a.    **Defendants do not dispute that Miller has satisfied the first two elements of First Amendment retaliation.**

First, Defendants do not dispute that Miller was engaged in constitutionally protected political speech when he spoke out against the Proposals, rallied public opposition to the Proposals, and promoted candidates to run for District board positions in the upcoming election. Third Miller Decl., ¶¶ 2 & 8. Second, Defendants do not dispute that the Ban caused Miller to suffer an injury that would chill a person of ordinary firmness from continuing to engage in political speech, nor do they dispute that the Ban prevents Miller from performing his job as a City Councilor.

      b.    **Defendants' explanation for the Ban is pretextual and they are unlikely to satisfy their burden under the third element of First Amendment retaliation.**

The third and final element of First Amendment retaliation requires Miller to show that his "protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). Defendants do not dispute that Miller has established a prima facie case of First Amendment retaliation.

While Defendants say they imposed the Ban solely due to employee complaints, that explanation is unlikely to survive the burden-shifting framework. *See Boquist v. Courtney*, 32

F.4th 764, 777 (9th Cir. 2022) (after plaintiff makes prima facie showing of retaliation burden shifts to defendant "to demonstrate that even without the impetus to retaliate he would have taken the action complained of"). Defendants' explanations ring hollow and are likely pretextual. Indeed, Defendants' retaliatory efforts are transparent enough that others have taken notice. *See* Fourth Miller Decl., Ex. 1 (email from City Administrator of Vernonia on the same day Defendants imposed the Ban: "Tyler I am so sorry that they are trying to vilify you for saying what all of us are thinking.").

      **(1)**  **The Van Meter Report and Declaration largely consist of inadmissible hearsay that the Court should disregard.**

  Defendants say "[t]he results of the investigation ***and Ms. Van Meter's recommendations*** are the only reason that the above actions were taken against Miller." Response, p. 5 (emphasis added). But Defendants previously told this Court that they are not relying on any advice of counsel defense. *See* Response to Memo re *In Camera* Review, p. 2 (stating "nor does reliance on the investigative conclusions mean that defendants are asserting an 'advice of counsel' defense" and that "no affirmative defense based on advice of counsel has been raised").

  In any event, Ms. Van Meter's report and declaration largely contain both generic statements and inadmissible hearsay. While courts may consider hearsay evidence submitted by a party seeking a preliminary injunction, courts may not consider hearsay evidence submitted by the non-moving party. That's because courts may only consider inadmissible evidence "when to do so ***serves the purpose of preventing irreparable harm before trial***." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (emphasis added). Considering hearsay evidence submitted by Defendants does not serve that purpose. Accordingly, this Court should not consider the hearsay in Van Meter's Report and in her declaration.

  Worse still, the hearsay in the Van Meter report is of the most unreliable variety and reads like a game of telephone, largely describing comments from unnamed persons and often consisting of double hearsay. In the Van Meter Declaration, the following excerpts contain

Page 4 – REPLY ISO MOT. FOR PRELIMINARY INJUNCTION

inadmissible hearsay: the final two sentences of paragraph 4, all of paragraph 7. The Van Meter Report is littered with inadmissible hearsay and double hearsay from unnamed District personnel, including the vast majority of the content on pages 7 to 13. This Court should disregard that inadmissible hearsay or, at the very least, give it very little weight. Indeed, Ms. Van Meter is not even a neutral fact finder; she works for the District. *See* Van Meter Decl., ¶ 1 (stating she has "represented Columbia 9-1-1 Communications District since November 2021").

Once the inadmissible hearsay is stripped away, the Court will see that the Van Meter report and declaration offer little of value to the issues in this lawsuit. And Defendants have not offered evidence to corroborate the hearsay from unidentified personnel in the Van Meter report. Apart from the declarations of Egan and Hooper, Defendants rely solely on the mysterious, non-specific concerns of unnamed personnel as described in the Van Meter Report and declaration. That is particularly curious given that evidence would exist of many of the alleged concerns – the District has systems that record and retain all of these communications – such as: recordings of rude calls with dispatchers, entering comments into the CAD system criticizing dispatchers, recordings of improper behavior at public meetings, and harassing District employees through public records requests. But Defendants have offered no such evidence. Accordingly, Defendants are unlikely to carry their burden "to demonstrate that even without the impetus to retaliate [they] would have taken the action complained of." *Boquist*, 32 F.4th at 777.

**(2)    Defendants' explanation for the Ban is pretext.**

Defendants say the Ban is necessary because they must protect their employees from harassment. That is pretext. To begin, Defendants say employers must take prompt corrective remedial action once they have notice of complaints. Response, p. 7. But Defendants supposedly have been on notice of Egan's complaint since 2020. *See* Fletcher Decl., ¶ 3 ("In 2020, C911 employee Chandra Egan reported to me that she had been harassed and intimidated in the past by Mr. Miller . . . She provided me with a set of text messages she had received from Mr. Miller[.]"); Egan Decl., ¶ 4 ("I first showed the text messages to Michael Fletcher, the C911 Executive Director in February of 2020[.]"). It was only when Egan supposedly raised that

complaint again in 2023, after Miller began speaking in opposition to the District's Proposals, that Defendants took action. *See id.* ("In January of 2023, I brought concerns about Mr. Miller again to Mr. Fletcher . . . ."). In other words, ***instead of*** taking prompt corrective remedial action, Defendants put Egan's complaint in their back pocket and pulled it out when Miller began opposing the Proposals. That is evidence of pretext.

Indeed, in the three years following Egan's initial complaint (February 2020 to February 2023), the District's meeting minutes show that Miller and Egan jointly attended in person 18 public meetings of the District. Fourth Miller Decl., ¶ 3.[1] Either Defendants did not care to take action about Egan's concerns until Miller began opposing the Proposals, or Egan is not actually "fearful for [her] safety when [Miller] is present." Egan Decl., ¶ 5. Either way, it is further evidence of Defendants' pretext and retaliation against Miller for opposing the Proposals.

Defendants try to minimize the highly suspicious timing of the Van Meter report by pointing out that the District asked her to investigate Miller "[i]n the first week of January 2023" (Van Meter Decl., ¶ 3) and that she concluded her investigation eleven days prior to Miller's February 17, 2023 Facebook post about the Proposals. ECF 39, Response, p. 3. But that is of no great moment, because at that time Miller had already been speaking out against the Proposals for months. *See* ECF 27, Mot. for PI, pp. 14-15 (timeline of Miller's opposition leading up to the Ban).

Defendants' supposed reason for the Ban is further betrayed by the fact that, in 2021 alone, at least two District employees resigned due to what they perceived as a hostile work environment caused "by the current administration" and Executive Director Michael Fletcher. *See* Miller Decl., Ex. 2 (resignation of Kaysha Comfort due to "extremely hostile work environment"); *id.* at Ex. 3 (resignation of Teonna Johnson "due to a hostile work environment"). This evidence also cuts against Ms. Van Meter's double-hearsay statement that unnamed District personnel supposedly told her that some of their colleagues have departed due

---

[1] Miller's summary of the meeting minutes is admissible pursuant to Fed. R. Evid. 1006. Miller will provide these records to the Court and defendants upon request, and they are available on the District's website.

to Miller's behavior. Van Meter Decl., ¶ 4.

Defendants further say that the declarations Miller previously submitted are irrelevant because they are from witnesses who are not employed by the District. That's misguided, as the witness declarations Miller submitted up to this point are from people who have substantial connections to, and direct knowledge of, the District and its employees, especially as it relates to Miller's previous sheriff's office supervisor and coworkers and the allegations made against Miller concerning the time period he was a reserve deputy. Moreover, Miller has now submitted two declarations from District dispatchers, neither of whom had any issues with Miller or have even so much as heard about anyone who did. Jenkins Decl., ¶¶ 2-7; Copeland Decl., ¶¶ 2-9. In particular, former District dispatcher Sally Copeland worked dozens of shifts alongside Chandra Egan and Dannell Hooper, and she "do[es] not recall any of those dispatchers ever expressing they felt Tyler Miller was rude, unprofessional, or harassing." *Id.* at ¶ 7.

Finally, Defendants make passing mention of anonymous employees who supposedly complained about Miller's public records requests, and Ms. Van Meter states she took over responding to those requests because of the stress that the harassing nature of the requests caused District employees. Van Meter Decl., ¶ 5. To the extent Defendants point to Miller's public records requests as justifying the Ban, that is further evidence of First Amendment retaliation.[2] Miller's public records requests are constitutionally protected speech, and Defendants conspicuously failed to offer into evidence even a single public records request from Miller to a District employee. Instead, Ms. Van Meter attached an email conversation between herself and Miller, and she says "I found [Miller's] prior inappropriate behavior towards C911 employees consistent with how he communicates with me on public records requests." *Id.* at ¶ 5. That is both inadmissible hearsay and violates the best evidence rule. Prior public records requests

---

[2] Defendants similarly complain that Miller violated the "no contact letter" when he, ***in his capacity as a City Councilor***, contacted other public officials at the District seeking information. ECF 43, Supp. O'Kasey Decl., ¶¶ 2-3. Like it or not, Miller is an elected official who needs to be able to communicate with public officials at the government body providing emergency services to his city.

should be easily obtainable to submit into evidence. Indeed, Defendants say that Miller "misuses the public records request system *by leaving personal messages* with aggressive language, tone, and demeaning *comments in the public records request system*." Response, p. 4 (emphasis added). If those recorded messages and comments were so harassing, then where is that evidence? Defendants have offered none.

For these additional reasons, Miller has raised serious questions going to the merits and he is likely to succeed on his First Amendment retaliation claim. This Court should grant the requested preliminary injunction.

### B. Miller is likely to suffer irreparable harm in the absence of preliminary relief.

Defendants do not dispute that the Ban cannot later be remedied by monetary damages. For that reason alone, the Court should find irreparable harm. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) ("Irreparable harm is harm for which there is no adequate legal remedy, such as an award for damages.") (internal quotations omitted).

Defendants also do not dispute that irreparable harm will result from two of the three aspects of the Ban: access to District property and use of District communications systems. Indeed, Defendants do not dispute that the Ban will prevent Miller from meeting with District officials and the public about public issues, lobbying District officials, attending other meetings on District property, and becoming a reserve sheriff deputy - which is what Defendants say prompted Egan's complaint. As a reserve deputy, Miller would need access to District communications systems and the ability to communicate with on duty District dispatchers, the Ban prevents that. Third Miller Decl., ¶ 13. If Defendants wish for Miller to not become a reserve deputy they should take that up with the Sheriff. For these additional reasons, the Court should find irreparable harm will result from those two aspects of the Ban.

For their part, Defendants address only the in-person attendance aspect of the Ban. They say Miller will not suffer irreparable harm because, in response to the TRO in this case, they decided to make the public meetings exclusively virtual. In the District, participatory democracy now exists only in the metaverse. Defendants made that drastic decision, depriving all their

Page 8 – REPLY ISO MOT. FOR PRELIMINARY INJUNCTION

constituents of in-person attendance, simply to avoid Miller's in-person attendance.

In support of their online-only decision, Defendants say that ORS 192.670 *authorizes* exclusively virtual public meetings. It does not; it merely provides *requirements* for virtual meetings if and when such meetings are held. Defendants point out that the legislature amended that statute in 2021. But that amendment added sections requiring public bodies to provide the public "an opportunity to . . . [a]ccess and attend the meeting by . . . virtual means." Eyman Decl., Ex. 1 (enrolled 2021 House Bill 2560). That is, even if the meeting is held in-person, the public must be able to attend the meeting remotely. The other subsections added via that 2021 amendment make that clear, providing for opportunities for virtual testimony if in-person testimony is allowed. The 2021 amendment does not authorize Defendants to exclusively and indefinitely hold public meetings virtually. Miller is unaware of any such authority. That statute was first enacted in 1973, there are no new or dramatic changes to public meetings in Oregon as Defendants seem to imply.

Moreover, Defendants have not stated that they will hold all subsequent public meetings virtually. So, even if ORS 192.670 did somehow authorize Defendants to move all further public meetings exclusively online, Miller would still suffer irreparable harm should Defendants return to in-person meetings. A preliminary injunction is necessary for that additional reason.

Finally, the virtual District Meetings are not a reasonable substitute for in-person attendance. That is because, at the District's first virtual-only meeting following the TRO in this case, the District provided poor audio; Miller and other attendees could not communicate with the District board members at all for at least part of the meeting, could not see any other attendees, could not communicate with other attendees, and could only see one board member at a time and only when that board member was speaking. Third Miller Decl., ¶¶ 3-4; Plantz Decl., ¶ 3; Ryan Decl., ¶ 4. Defendants do not dispute any of those contentions. Instead, they say all those contentions are "irrelevant because none of those things violate the statute." Response, p. 9. That argument is misguided; Defendants' actions need not rise to the level of a statutory violation to result in irreparable harm. None of those restrictions exist in-person meetings, and

even in the virtual space all of those factors are within Defendants' control. Indeed, Defendants implemented these restrictions only after the TRO in this case. *See* Third Miller Decl., ¶ 4 ("This is the first meeting I have ever seen by the District, via Zoom, where I have not been able to see the other participants and message them directly, or through the Zoom group chat feature."). Accordingly, by creating the particularly restrictive virtual public meetings at issue, Defendants deprive Miller (and the greater public) of the important benefits of in-person attendance. The loss of those in-person benefits results in irreparable harm, especially given the multimillion-dollar sole source procurement proposal the District is considering.

    **C.**    **The balance of equities tips in Miller's favor and an injunction is in the public interest.**

Defendants did not address these considerations, which tip sharply in Miller's favor.

**III.**    **Conclusion**

For the foregoing reasons, the Court should grant the requested injunction.

Dated: May 12, 2023        SNELL & WILMER L.L.P.

                        By /s/ Drew L. Eyman
                           Clifford S. Davidson, OSB No. 125378
                           Drew L. Eyman, OSB No. 163762

                        Attorneys for Plaintiff

\4860-5345-0082