Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
Telephone:  503.624.6800
Facsimile:  503.624.6888
Attorneys for Plaintiff Tyler Miller

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| TYLER MILLER, an individual,<br><br>      Plaintiff,<br><br>vs.<br><br>HENRY HEIMULLER, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; BRUCE HOLSEY, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; JEFF FLATT, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; and SHELLEY HENNESSY, in her official capacity as Board Member of the Columbia 9-1-1 Communications District; and the COLUMBIA 9-1-1 COMMUNICATIONS DISTRICT, an Oregon municipal corporation,<br><br>      Defendants. | Case No. 3:23-cv-00293-SI<br><br>FIRST AMENDED COMPLAINT<br><br>42 U.S.C. § 1983<br>Oregon Declaratory Judgment Act |

Plaintiff, a Scappoose city councilor, sues Defendants because they have baselessly pretextually and unconstitutionally banned him from attending in person any meeting of the Columbia 9-1-1 Communications District (the "District"). ."), from being present on

Page 1 – FIRST AMENDED – COMPLAINT

District property, and from using any District communications system. Defendants' purported justification for doing so is false. They claim that Plaintiff has created a hostile work environment (even though he doesn't work at the District) and sent inappropriate picturestext messages to a District employees. Thosedispatcher six or seven years ago. Even if Defendants' claims are false, and the were accurate, this across-the-board ban violates Plaintiff's First Amendment rights. All Plaintiff has done is seekright to advocate on behalf of Columbia County's first responders and taxpayersexpress himself by attendingappearing in-person at public meetings. of the District's board.

Moreover, the ban and a letter that Defendants directed counsel to author are retaliatory in response to Plaintiff's staunch opposition to District board members' proposals that (1) a large corporation be permitted to submit a sole-source bid for supplying equipment and services to the District, to the tune of $20,000,000 to $35,000,000; and (2) the District join Washington County's 9-1-1 system, which would make Columbia County reliant on Washington County's radio system.

After Plaintiff filed this lawsuit and obtained a temporary restraining order, Defendants decided that the public could attend board meanings only virtually and not in person—even though some members of the board, and the executive director, conduct those meetings in person at District headquarters. Doing so violates the right of Plaintiff and the public at large to associate and assemble in the District headquarters board room, which had been open to the public.

Finally, the District is violating ORS 192.630(4)(a) by banishing Plaintiff and the public to online attendance.

Plaintiff seeks nominal damages, attorney fees, and an injunctioninjunctive relief prohibiting Defendants from retaliating against Plaintiff for his First Amendment conduct—as a citizen and City Council memberthe forgoing constitutional and statutory violations.

## JURISDICTION AND VENUE

1.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Exhibit 1
Page 2 of 32

the claim for relief alleges a violation of federal law or the Federal Constitution.

2.      This Court has personal jurisdiction because defendants reside in Columbia County, Oregon.

3.      Venue, and divisional venue, lie in this Court and its Portland Division because the acts or omissions at issue arose in Columbia County, Oregon.

## PARTIES

4.      Plaintiff Tyler Miller is an Oregon citizen who resides in Scappoose, Oregon. He was elected to the Scappoose City Council in 2020. Among other things, he is 9-1-1 Communications liaison between the Scappoose City Council and the District. He is also the liaison between the City Council and the Columbia County Board of Commissioners.

5.      Henry Heimuller is a Board Member of the District. He is an Oregon citizen. Plaintiff sues him in his official capacity.

6.      Bruce Holsey is a Board Member of the District. He is an Oregon citizen. Plaintiff sues him in his official capacity.

7.      Jeff Flatt is a Board Member of the District. He is an Oregon citizen. Plaintiff sues him in his official capacity.

8.      Shelley Hennessy is a Board Member of the District. She is an Oregon citizen. Plaintiff sues her in her official capacity.

9.      Columbia 9-1-1 Communications District is an Oregon municipal corporation. It provides 9-1-1 dispatch and communications services in Columbia County and part of Multnomah County.

## FIRST CLAIM FOR RELIEF

(42 U.S.C. § 1983)

(Plaintiff against all Defendants)

### Count 1 – Violation of First Amendment right to expression

9.10.   As a "District" within the meaning of ORS Chapter 198, and therefore a "public body" within the meaning of ORS Chapter 192.610-.690, the District must comply with the

Page 3 – FIRST AMENDED –COMPLAINT

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 3 of 32

Oregon Public Meetings Law.

10.11.  The District conducts public board of director meetings once a month and has done so regularly for many years. It currently meets, at a minimum, on the fourth Thursday of each month. The District also calls Special Meetings and Advisory Committee meetings on a regular basis.

11.12.  Plaintiff has attended over 100 of the District's meetings since 2015. Until the events described in this lawsuit, neither the District, nor any of its directors, has taken any action against Plaintiff in relation to his attending those meetings (or otherwise).

12.13.  On January 11, 2023, Plaintiff attended a District meeting. During that meeting, the board members, including Defendants, discussed two significant proposals: giving Motorola the opportunity to submit a sole-source contracting proposal, and merging the Columbia 9-1-1 Communications District with Washington County's 9-1-1 systems (the "Proposals").

13.14.  After the meeting, Plaintiff sent that same day an email to several of the board members:

**From:** Tyler Miller <tmiller@cityofscappoose.org>
**Date:** January 11, 2023 at 16:26:52 PST
**To:** Mike Fletcher <MFletcher@columbia911.com>
**Cc:** rob503@comcast.net, henry@henryheimuller.com, flycessna182@gmail.com, Shelleylh64@hotmail.com, michael.russell@columbiacountyor.gov
**Subject: [EXTERNAL]Radio System**

Mike,

I would like to be able to support the WCCCA/Motorola endeavor. If you can hear me out on some concerns and requests, I think you may gain my support.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 4 of 32

I can tell you that our city management and council are extremely concerned for the public's interest. Motorola is much more expensive than Tait. The attached documents illustrate that point. Even with the discounts Motorola offered, they were still millions more, "apples to apples". When the site count goes up to achieve the coverage needed, the cost difference between Tait and Motorola is likely to increase by millions more. We are also concerned about schools not being included, all public works departments and the electric utility providers.

Schools especially have the potential of bringing hundreds of thousands of dollars in grants to this project.

If not impossible, it is going to take a lot to convince voters to pay millions more compared to a system that meets all the end user requirements and costs millions less.

I am all for competition to get the best possible price for our taxpayers. I am willing to share with you all information I can from our work with Tait to help Federal Engineering and Motorola put a system together that meets our end user's needs at the best possible price offer. My focus has always been: 1) coverage per the user interviews, and 2) <u>total cost of ownership</u> over 15 years.

I am willing to share our site coordinates for the sites selected and the context behind those selections. We spent a lot of time reviewing sites with two different Tait engineers. We reviewed over 70 sites inside and outside the county. The most recent results had the site count down to 13 sites with portable radio coverage from the hip (95% reliability at 3.4 DAQ), that met the end user requirements. I can also share all the radio and accessory counts we received from our interviews. We put a lot of focus on getting those counts correct. For context, the radio count ended up at 978 (not 650), just for fire, police, Columbia County public works and 911 admin and cache radios.

A copy of the January 11 email is attached hereto as <u>Exhibit 1</u> and incorporated herein by reference.

~~14.~~15.  On January 18, 2023, outside counsel to the District sent a letter to the Scappoose City Council requesting "that Mr. Miller and the city refrain from further comment and criticism until the Motorola Proposal is complete and can be fairly evaluated." A copy of the January 18

Page 5 <u>– FIRST AMENDED –</u>COMPLAINT

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 5 of 32

letter is attached hereto as Exhibit 2 and incorporated herein by reference.

15.16.  That same day, the Scappoose City Attorney responded to the District's outside counsel noting public interest in the Motorola issue, raising questions about the proposed sole-source opportunity, and requesting that further communications about the matter be directed to him:

> Mr. Peterkin,
>
> I am the City Attorney for the City of Scappoose, I was forwarded your letter to our Mayor and Council President. I would appreciate it if you directed any future communications to me.
>
> I have not been closely following the procurement portion of the radio process, though it has been coming up at our City Council meetings. There have also been questions/concerns from community members. There seems to be some confusion regarding the process, and your letter gives me a better understanding of where you are in that process.
>
> I think there is a very high probability that there will be future questions given the decision to move forward with a sole source contract. Would you mind providing me with your OAR 125-247-0275 Findings? It would aid me in providing the Council with accurate information, and help insure that they are receiving accurate information.
>
> and help insure that they are receiving accurate information.

A copy of the City Attorney's January 18 response is attached hereto as Exhibit 3 and incorporated herein by reference.

16.17.  On January 20, 2023, the District's counsel responded to Exhibit 3, asking the City Council to "request that Councilor Miller not contact the District directly." The District's counsel complained that after the January 11, 2023 District meeting, Plaintiff had "requested a private meeting with a Board member. That request was rejected. Miller then sent [Exhibit 1]." A copy of District counsel's January 20 correspondence is attached as Exhibit 4 and incorporated herein by reference.

17.18.  On February 17, 2023, Plaintiff published a posting on his "Tyler Miller: Scappoose City Council" Facebook/Meta account. In the posting, which he addressed to "Scappoose and Columbia County Residents," Plaintiff described the Proposals, shared his view

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 6 of 32

that they were a bad idea, urged residents to attend the District meeting on February 23, 2023, and informed residents that three of the five District Board of Directors seats are up for election in May 2023. A copy of the Facebook/Meta posting is attached as <u>Exhibit 5</u> and incorporated herein by reference.

18.19.  Six days later, during the February 23, 2023 meeting, the District Board of Directors, including Defendants, voted to ban Plaintiff from attending any District meetings in person. The Board directed legal counsel to send Plaintiff a letter informing him of this ban.

19.20.  Plaintiff received that letter on February 23 by email from the District's lawyer, informing Plaintiff that he was banned from attending public District meetings in person, and from calling the District's non-emergency dispatch number. The following day, Plaintiff discovered another copy of the letter taped to the door of his residence. A copy of the letter is attached hereto as <u>Exhibit 6</u> and incorporated herein by reference (the "Letter").

20.21.  In the Letter, Defendants accused Plaintiff of engaging in unspecified "conduct [that] has created a hostile work environment." It further accused him of threatening District employees and sending sexually explicit images to them.

21.22.  In addition to Plaintiff, the Letter was sent to the Scappoose City Attorney and local law enforcement.

22.23.  The Letter threatened criminal and civil liability for failure to comply.

23.    Plaintiff has never engaged in the conduct alleged in the Letter.

24.    As Plaintiff subsequently learned in response to his motion for temporary restraining order in this action, the accusations in the letter arose entirely from (1) text messages sent between six and seven years prior that, as far as he knew, had never been unwanted or considered harassing by their recipient; and (2) Plaintiff's purported criticism of dispatchers and other District employees.

24.25.  Plaintiff denies having engaged in any untoward conduct. But even if he had, Ninth Circuit law clearly forbids public bodies from imposing across-the-board bans from public buildings for purposes of attending public meetings, and the across-the-board ban on attending

Page 7 – FIRST AMENDED –COMPLAINT

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 7 of 32

public meetings in person were not reasonably related to the purported concerns professed in the Letter.

25.    The next scheduled public District meeting is set to occur on March 23, 2023.

26.    Plaintiff would like to attend the meeting, and all future meetings, in person, as he has done consistently since 2015 (with the exception of the COVID-19 public health emergency). Doing so is important to his role as 9-1-1 Communications liaison to the City of Scappoose City Council and is his right as an Oregon citizen residing within the District's service area.

27.    Furthermore, attending meetings remotely is materially different from attending in-person. For example, over Zoom, the directors frequently leave their cameras off so it is impossible to observe them or evaluate their credibility, or sometimes to know who is speaking. Moreover, presenting one's views in person, or sitting across the room from policymakers and looking them in the eye as they make decisions, often is more impactful, and the in-person interactions at the meeting—whether with directors or those in attendance— and serves an expressive purpose that is important to the process of making policy and petitioning government. In any event, barring another public health emergency such as COVID-19, Plaintiff has the right to attend in person.

28.    Plaintiff seeks a declaration from this Court that Defendants' ban on Plaintiff's in-person attendance at public District meetings violates his First Amendment rightsright to expression.

29.    Plaintiff seeks an injunction prohibiting Defendants from banning Plaintiff from attending the District's in-person meetings.

**Count 2Count 2 – Violation of First Amendment right to association or assembly**

30.    On March 13, 2023, Plaintiff obtained a temporary restraining order in this action. In direct response to the TRO and to the prospect of Plaintiff's attending the District's public board meetings (as he had done over 100 times before without incident), the District designated its next board meeting, on March 30, to be "virtual."

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 8 of 32

31.    At the March 30 "virtual" meeting, several board members were present at the board's meeting room at District headquarters; the rest attended by Zoom. The executive director also was present in person. The public, however, could only attend remotely.

32.    At the March 30 meeting, the District deactivated Zoom's chat features for public participants and set up the Zoom meeting such that attendees could not see who else was attending. These were new changes; for the entirety of the COVID-19 emergency when Zoom meetings were the only means of attending board meetings, chat was possible and public attendees could see which members of the public were also attending.

33.    At the March 30 meeting, the board members attending virtually kept their cameras off, and several of the board members attending at District headquarters were not visible on the screen. The audio also was spotty and it was difficult to decipher who was speaking.

34.    All meetings since March 30 have been conducted in a similar fashion, with some board members (and District lawyers) attending in person, other board members attending virtually, the public banished to the Internet, and a spotty connection with stripped-down Zoom functionality. Here is a screenshot from the June 15, 2023 board meeting:



35.    In so doing, Defendants have violated, and continue to violate, Plaintiff's and the public's First Amendment right to associate or assemble.

36.    The Court should award nominal damages, and issue an injunction prohibiting Defendants, and those acting in concert with them, from prohibiting members of the public from

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 9 of 32

being physically present in spaces open to the public where a District board meeting is being conducted in whole or in part.

### Count 3 – First Amendment retaliation

(First Amendment retaliation in violation of 42 U.S.C. § 1983)

30.37.  Plaintiff incorporates paragraphs 1 through 27 as though set forth here in full.

31.38.  Plaintiff has been a stalwart opponent of the District's efforts to permit Motorola to submit an exclusive "sole source proposal," which could allow the District to award a $20,000,000 to $35,000,000 contract to Motorola, without a fair an open competitive bidding process.

32.39.  Plaintiff frequently has discussed the Motorola proposal, and questioned District directors about it, when attending District meetings.

33.40.  Plaintiff also is vocal in his opposition to a proposed systems merger of the District with the 9-1-1 agency in neighboring Washington County.

34.41.  In May 2023, there will bewas an election for three of the five District director positions. Plaintiff has promoted candidates to run for those positions who, among other things, share Plaintiff's concerns about the Motorola proposal and the potential systems merger. One of those candidates was elected to the District board.

35.42.  Plaintiff believes, and based upon that belief alleges, that his being banned from attending in-person District meetings, from setting foot on District property, and from being able to call the non-emergency dispatch numberuse District communications systems, was a retaliatory act by Defendants, in concert with Executive Director Michael Fletcher, in response to (a) Plaintiff's exercise of the right of speech and petition in relation to the Motorola Solutions proposal or the systems merger, and (b) his efforts to change the composition of the District board to one that shares Plaintiff's views—both of which are activities protected by the First Amendment.

36.43.  Plaintiff bases hisThe basis for Plaintiff's belief onincludes, at a minimum: (a) having attended over 100 District meetings without incident, until Plaintiff voiced his opposition

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 10 of 32

to the Proposals; (b) ~~the fact that all of his~~Defendants' shortening the time for public comment from 10 minutes to three minutes, when the directors began considering the Motorola Solutions proposal and the systems merger; (c) the fact that all of Plaintiff's communications, including the January 11 email and the February 17 Facebook post, have been professional in tone; (~~e~~d) the proximity in time of the sending of the Letter to both the Facebook post and Plaintiff's opposition of the Proposals; ~~and (d~~(e) the District's request, through counsel, that Plaintiff or other Scappoose city councilors refrain from "comment and criticism" of the Proposals; (f) the amount of time that elapsed between the allegedly inappropriate texting and his being banned; and (g) the fact that despite multiple communications between the District's counsel and Scappoose officials in early 2023, the District's counsel did not once raise Plaintiff's allegedly untoward conduct or offer Plaintiff a chance to address the accusations against him before being banned.

~~37.~~44.   The contents of the Letter itself are further evidence of retaliatory motive. The purpose of the Letter appears to be to discredit, humiliate, and punish Plaintiff by creating a false public record accusing Plaintiff of engaging in unspecified "conduct [that] has created a hostile work environment."

~~38.~~45.   The Letter also implies, so that others may read in a public record, that Plaintiff has harassed or intimidated district employees, through conduct or "offensive, sexually explicit images," and "put employees in fear of you or fear that you will retaliate against them." Plaintiff has never engaged in the conduct of which the Letter accuses him and he knows of no legitimate basis for these accusations—other than to discredit him, his positions, and his preferred candidates in advance of the May 2023 election.

~~39.~~46.   Consistent with his view that the in-person ban and Letter are in retaliation for Plaintiff's First Amendment conduct, within one business day of the sending of the Letter, the local news media became aware of its contents and the ban. Plaintiff believes, and on the basis of such belief alleges, that one or more Defendants, or someone in league with one or more of them such as Executive Director Michael Fletcher, informed the media of the Letter or its contents—in

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 11 of 32

further retaliation against Plaintiff for engaging in speech and petition protected by the First Amendment.

40.47.  Plaintiff, a government official, has suffered reputational harm through this retaliatory conduct, including through (a) the Letter's false implication that he harasses government employees or sends offensive, sexually explicit materials to such employees, and (b) the dissemination to news media of the information contained in the Letter, including the ban on Plaintiff's in-person attendance. Plaintiff will supplement this Complaint as damages are incurred, but Plaintiff currently seeks nominal damages for purposes of this Complaint.

41.48.  Whether or not Plaintiff has suffered damages, Plaintiff seeks injunctive relief prohibiting Defendants from (a) imposing a blanket ban on his attending public District meetings in person, and (b; (b) banning him from District property; (c) banning him from use of District communications systems; and (d) retaliating against Plaintiff based on his speech or petition conduct.

### SECOND CLAIM FOR RELIEF

### Oregon Declaratory Judgment Act – violation of ORS 192.630(4)

#### (Against all defendants)

49.     Plaintiff incorporates and realleges the foregoing paragraphs as though set forth here in full.

50.     As relevant, ORS 192.630(4) requires that meetings of the governing body of a public body be held within the geographic boundaries over which the public body has jurisdiction, at the administrative headquarters of the public body, or at the nearest practical location.

51.     By banishing the public to attending public district meetings solely by Zoom, the District and those acting in concert with it have violated ORS 192.630 (4)(a) and will continue violating that provision unless enjoined by the Court.

52.     Defendants have taken the position that ORS 192.670 authorizes them to relegate the public to the internet, but it does no such thing. ORS 192.670 by its terms is subject to ORS

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 12 of 32

192.630 (4)(a). ORS 192.670(1) ("Any meeting, including an executive session, of a governing body of a public body which is held through the use of telephone or other electronic communication shall be conducted in accordance with ORS 192.610 to 192.690."). Contrary to the manner in which Defendants have contorted the statute, the purpose of ORS 192.670 is to expand the public's access to meetings conducted in the manner required by ORS 192.610-.690.

53.     The Legislature knows how to authorize public bodies to conduct all meetings remotely, which it did during the COVID-19 emergency. In language now repealed due to the end of the COVID-19 emergency, the Legislature provided the means by which a public body could conduct online-only meetings:

> Sec. 1. (1) Notwithstanding ORS 192.610 to 192.690, the governing body of a public body may hold all meetings by telephone or video conferencing technology or through some other electronic or virtual means. When a governing body meets using telephone or video conferencing technology, or through other electronic or virtual means, the public body shall make available a method by which the public can listen to or observe the meeting. If a governing body meets using telephone or video conferencing technology, or through other electronic or virtual means:

> (a) The public body does not have to provide a physical space for the public to attend the meeting; and

> (b) If the telephone or video conferencing technology allows the public body to do so, the public body shall record the meeting and make the recording available to the public. This paragraph does not apply to executive sessions.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Exhibit 1
Page 13 of 32

*See* 2020 s.s.1 c.12 § 1.

54.      Pursuant to ORS 28.020, the Court should declare that by banishing the public to virtual attendance exclusively, the District, and those acting in concert with it, are in violation of ORS 192.630 (4)(a), and enjoin further violation.

WHEREFORE, Plaintiff prays for entry of judgment as follows:

1.   On Count 1 of the First Claim for Relief:

   a.   A declaration that Defendants have violated Plaintiff's First Amendment Rightsright to expression by banning him from attending public District meetings in person;

   b.   An injunction prohibiting Defendants, and all those acting in concert with them or subject to their supervision, from banning Plaintiff from attending public District meetings in person; and

   c.   Attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

2.   On Count 2 of the First Claim for Relief:

   a.   Damages in the amount of at least $1, the precise amount to be proven at trial;

   b.   An injunction prohibiting Defendants, and all those acting in concert with them or subject to their supervision, from

      i.   imposing a blanket ban on his attending public meetings in person; and

      ii.   banning Plaintiff from District property;

      iii.   banning Plaintiff from using District communication systems; and

      ii.iv.   retaliating against Plaintiff based on his speech or petition conduct; and

   c.   Attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

3.   On Count 3 of the First Claim for Relief:

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Exhibit 1
Page 14 of 32

a.   A declaratory judgment that by preventing Plaintiff from being physically present where District board meetings are being conducted at least in part, Defendants are violating Plaintiff's First Amendment right to association or assembly;

b.   An injunction prohibiting Defendants, and those acting in concert with them, from prohibiting members of the public from being physically present in spaces open to the public where a District board meeting is being conducted in whole or in part; and

c.   Attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

4.   On the Second Claim for Relief:

a.   A declaratory judgment, pursuant to ORS 28.020, that Defendants are violating ORS 192.630(4);

b.   An injunction prohibiting the District, and those acting in concert with them, from conducting public board meetings exclusively by remote means absent extenuating circumstances; and

c.   Attorney fees based on the substantial benefit that pursuing this claim will confer on members of the public.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3.5.On all claims and counts:

a.   Attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

Page 15 – FIRST AMENDED –COMPLAINT

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Exhibit 1
Page 15 of 32

~~b.~~a. Costs; and

~~c.~~b. Such other and further relief as the Court deems just or necessary.

DATED this ~~28th~~ ___ th day of ~~February~~June, 2023.

SNELL & WILMER L.L.P.

/s/ Clifford S. Davidson
_____
Clifford S. Davidson, OSB No. 125378
Drew L. Eyman, OSB No. 163762
Attorneys for Plaintiff Tyler Miller

\4892-3414-9971
\4887-4790-2826

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

Exhibit 1
Page 16 of 32

**From:** Tyler Miller <tmiller@cityofscappoose.org>
**Date:** January 11, 2023 at 16:26:52 PST
**To:** Mike Fletcher <MFletcher@columbia911.com>
██████████████████████████████████████████████
████████████████████     michael.russell@columbiacountyor.gov
**Subject: [EXTERNAL]Radio System**

Mike,

I would like to be able to support the WCCCA/Motorola endeavor. If you can hear me out on some concerns and requests, I think you may gain my support.

I can tell you that our city management and council are extremely concerned for the public's interest. Motorola is much more expensive than Tait. The attached documents illustrate that point. Even with the discounts Motorola offered, they were still millions more, "apples to apples". When the site count goes up to achieve the coverage needed, the cost difference between Tait and Motorola is likely to increase by millions more. We are also concerned about schools not being included, all public works departments and the electric utility providers. Schools especially have the potential of bringing hundreds of thousands of dollars in grants to this project.

If not impossible, it is going to take a lot to convince voters to pay millions more compared to a system that meets all the end user requirements and costs millions less.

I am all for competition to get the best possible price for our taxpayers. I am willing to share with you all information I can from our work with Tait to help Federal Engineering and Motorola put a system together that meets our end user's needs at the best possible price offer. My focus has always been: 1) coverage per the user interviews, and 2) total cost of ownership over 15 years.

I am willing to share our site coordinates for the sites selected and the context behind those selections. We spent a lot of time reviewing sites with two different Tait engineers. We reviewed over 70 sites inside and outside the county. The most recent results had the site count down to 13 sites with portable radio coverage from the hip (95% reliability at 3.4 DAQ), that met the end user requirements. I can also share all the radio and accessory counts we received from our interviews. We put a lot of focus on getting those counts correct. For context, the radio count ended up at 978 (not 650), just for fire, police, Columbia County public works and 911 admin and cache radios.

Exhibit 1                    Exhibit 1
Page 17 of 32              Page 1 of 2

**Tyler Miller**
City Councilor
City of Scappoose, Oregon
(503) 543-7146  City Hall
(206) 491-6904  Mobile

City Website

**Public Records Law Disclosure:** This email may be a public record, subject to public disclosure unless exempt from disclosure under Oregon Public Records Law.  Any reply to this email may be a public record, subject to public disclosure unless exempt from disclosure under Oregon Public Records Law.

Exhibit 1
Page 18 of 32

Exhibit 1
Page 2 of 2

# PETERKIN BURGESS

### ATTORNEYS AT LAW

January 18, 2023

**Via Email Only**

City Council
City of Scappoose
c/o Joe Backus, Mayor  jbackus@cityofscappoose.org;
c/o Megan Greisen, Council President:  mgreisen@cityofscappoose.org
33568 E. Columbia Ave.
Scappoose, OR  97056

Re:  **Columbia 9-1-1 Communications District**

Dear City Councilors:

This firm represents Columbia 9-1-1 Communications District ("District"). The District's Board of Directors ("Board") intends to acquire a new public safety radio system with robust coverage, superior reliability, sufficient radio units, and for the best value. The Board appreciates all constructive input, but ultimately it is the Board's sole duty to act for the District's best interests—as it has in the past.

The Board passed a resolution that directs staff, its attorneys, engineers, and consultants to engage with Motorola and WCN and to present a sole source proposal to the Board (the "Motorola Proposal").  Once the Motorola Proposal is presented to the Board, it will be available for public comment and discussed at a public hearing. After completing the above process, the Board will decide whether to accept the Motorola Proposal and negotiate a contract or issue an RFP.

In City Councilor Miller's January 11, 2023 email to the District's Executive Director, Mr. Fletcher, Miller expresses unfounded concerns based on inaccurate facts and false premises.  For example, he assumes the District will contract with Motorola and join WCN. Both remain open questions.  He concludes that Motorola will be the more expensive option without sufficient facts to support his conclusion. The District has not yet received Motorola's final specifications and estimate.   Further, once complete costs for microwave backhaul, dispatch consoles, portable and mobile radios, and site development are included, a more accurate Tait proposal cost is about $25 million.

In Miller's January 11, 2023 email, he offers to share Tait's information. The Board must decline Councilor Miller's offer to share Tait's information, some of which may be proprietary or confidential work product. Instead, Motorola must present its proposal to the Board based on Motorola's independent analysis and in conformance with Federal

*Michael W. Peterkin*   ◆   *Megan K. Burgess*   ◆   *Christian Malone*   ◆   *Taylor Hale*

Exhibit 1
Page 19 of 32

Exhibit 2
Page 1 of 2

City Council
January 18, 2023
Page **2** of **2**

Engineering system specifications.  This process will better bind Motorola to its proposal and warranty obligations, including coverage representations and guarantees. Thus, the District intends to obtain the best system with the represented coverage and at the best value if the Board accepts the Motorola proposal.

In brief, assuming Councilor Miller is authorized to speak for the City of Scappoose, he is not a member of the District's advisory committee.  Mr. Miller and the City will have an opportunity to comment like other public members of the District once the Motorola Proposal is complete and after it is presented to the Board.  The District requests that Mr. Miller and the city refrain from further comment and criticism until the Motorola Proposal is complete and can be fairly evaluated.

Sincerely,

Michael W. Peterkin

Copy (via email only):

    C911CD Board of Directors
    Mike Fletcher, Executive Director of C911CD
    Mike Russell, Chair of the Advisory Committee
    Tyler Miller, Councilor, City of Scappoose

Exhibit 1
Page 20 of 32

Exhibit 2
Page 2 of 2



---------- Forwarded message ---------
From: **Peter Watts** <peter@peterowattspc.com>
Date: Wed, Jan 18, 2023 at 6:04 PM
Subject: Communication with Scappoose Mayor and Councilors
To: <mwp@peterkinburgess.com>

Mr. Peterkin,

I am the City Attorney for the City of Scappoose, I was forwarded your letter to our Mayor and Council President.  I would appreciate it if you directed any future communications to me.

I have not been closely following the procurement portion of the radio process, though it has been coming up at our City Council meetings.  There have also been questions/concerns from community members.  There seems to be some confusion regarding the process, and your letter gives me a better understanding of where you are in that process.

I think there is a very high probability that there will be future questions given the decision to move forward with a sole source contract.  Would you mind providing me with your OAR 125-247-0275 Findings?  It would aid me in providing the Council with accurate information, and help insure that they are receiving accurate information.


--
Peter O. Watts
(503) 657-0406
1969 Willamette Falls Dr. Suite 260
West Linn OR., 97068


--
Peter O. Watts
Peter O. Watts P.C.
(503) 657-0406 Ext 29
1969 Willamette Falls Dr. Suite 260

Exhibit 1                                    Exhibit 3
Page 21 of 32                              Page 1 of 2

West Linn OR., 97068

Exhibit 1
Page 22 of 32

Exhibit 3
Page 2 of 2

# PETERKIN BURGESS
## ATTORNEYS AT LAW

January 20, 2023

**Via Email Only:** peter@peterowattspc.com

Peter Watts
1969 Willamette Falls Drive, Suite 260
West Linn, OR 97068

**Re:   Columbia 9-1-1 Communications District
        Communication with Scappoose Mayor and Councilors**

Dear Mr. Watts:

My January 18, 2023, letter to the City of Scappoose was in response to the January 11, 2023, email that Councilor Miller sent to Columbia 9-1-1 Communications District ("District") and its board of directors ("Board"). His email followed a District public meeting on January 11, 2023, that Miller attended. I enclose a copy of his email for your review and records.

At the above-referenced public meeting, the Board passed a resolution that directed staff, its attorneys, consultants, and engineers to engage with Motorola and WCN and, afterward, to present a sole source <u>proposal</u> to the Board (the "Motorola Proposal").  Contrary to your January 18, 2023 email, the District did not resolve to contract with either Motorola or WCN. Thus, I requested in my letter to the city: "The District requests that Mr. Miller and the city refrain from further comment and criticism until the Motorola Proposal is complete and can be fairly evaluated." This was a fair common-sense request that is consistent with the District's jurisdiction.

Please be advised that the public review period will start when the Motorola Proposal hearing notice is posted with a link to the Motorola Proposal. After the public review period begins, all comments will be given appropriate weight by the Board. Thus, it is premature to request the basis of a District action that has not yet occurred and may never occur because the Motorola Proposal has not been presented.

Further, I ask that you request that Councilor Miller not contact the District directly.  After the above-mentioned District meeting, Mr. Miller requested a private meeting with a Board member. That request was rejected.  Miller then sent his at-issue January 11 email.

The District is concerned that Councilor Miller has and will act *ultra vires*.  Please provide a copy of the city resolution empowering him to communicate with Tait,

Peter Watts
January 20, 2023
Page **2** of **2**

contact individual District Board members, and send his January 11 email to the District. If he was empowered to act or will be empowered to act, the District, nevertheless, requests that Miller communicates through you.

Finally, I request copies of all of Miller's communications with Tait and Communications Northwest. If you require a formal public request for records, please advise.

In closing, the District intends to acquire a new public safety radio system with robust coverage, superior reliability, and sufficient radio units for the best value to benefit and protect its users and the public in compliance with Oregon law.

Sincerely,

Michael W. Peterkin
Enclosure as stated
Copy (via email only):
        Mike Fletcher, Executive Director of C911CD

Exhibit 1
Page 24 of 32

Exhibit 4
Page 2 of 4

**From:** Tyler Miller <tmiller@cityofscappoose.org>
**Date:** January 11, 2023 at 16:26:52 PST
**To:** Mike Fletcher <MFletcher@columbia911.com>
**Cc:** rob503@comcast.net, henry@henryheimuller.com, flycessna182@gmail.com, Shelleylh64@hotmail.com, michael.russell@columbiacountyor.gov
**Subject: [EXTERNAL]Radio System**

Mike,

I would like to be able to support the WCCCA/Motorola endeavor. If you can hear me out on some concerns and requests, I think you may gain my support.

I can tell you that our city management and council are extremely concerned for the public's interest. Motorola is much more expensive than Tait. The attached documents illustrate that point. Even with the discounts Motorola offered, they were still millions more, "apples to apples". When the site count goes up to achieve the coverage needed, the cost difference between Tait and Motorola is likely to increase by millions more. We are also concerned about schools not being included, all public works departments and the electric utility providers. Schools especially have the potential of bringing hundreds of thousands of dollars in grants to this project.

If not impossible, it is going to take a lot to convince voters to pay millions more compared to a system that meets all the end user requirements and costs millions less.

I am all for competition to get the best possible price for our taxpayers. I am willing to share with you all information I can from our work with Tait to help Federal Engineering and Motorola put a system together that meets our end user's needs at the best possible price offer. My focus has always been: 1) coverage per the user interviews, and 2) total cost of ownership over 15 years.

I am willing to share our site coordinates for the sites selected and the context behind those selections. We spent a lot of time reviewing sites with two different Tait engineers. We reviewed over 70 sites inside and outside the county. The most recent results had the site count down to 13 sites with portable radio coverage from the hip (95% reliability at 3.4 DAQ), that met the end user requirements. I can also share all the radio and accessory counts we received from our interviews. We put a lot of focus on getting those counts correct. For context, the radio count ended up at 978 (not 650), just for fire, police, Columbia County public works and 911 admin and cache radios.

Exhibit 1
Page 25 of 32

Exhibit 4
Page 3 of 4

**Tyler Miller**
City Councilor

City of Scappoose, Oregon
(503) 543-7146  City Hall
(206) 491-6904  Mobile

City Website

**Public Records Law Disclosure:** This email may be a public record, subject to public disclosure unless exempt from disclosure under Oregon Public Records Law.  Any reply to this email may be a public record, subject to public disclosure unless exempt from disclosure under Oregon Public Records Law.

Exhibit 1
Page 26 of 32

Exhibit 4
Page 4 of 4

February 18, 2023 Facebook Post

 Tyler Miller: Scappoose City Council

 Tyler Miller: Scappoose City Council
February 17 at 7:44 PM · ⚙                                        •••

Hello Scappoose and Columbia County Residents,

I apologize in advance for a lengthy post. There's a lot of information to share on this topic that can impact our safety and taxes.

- - -

The Columbia 9-1-1 Communications District (C911CD) has publicly posted Resolution 2023-001.

The C911CD is holding a board of directors meeting this Thursday, 2/23/2023 at 9 AM, at the 9-1-1 facility located at 58611 McNulty Way, St. Helens. The board recently limited public comment time from 10 minutes to 3 minutes, per person. Public comment usually starts at about 9:01 AM. Resolution 2023-001 (attached) is on the agenda.

It is critical the public (taxpayers) show up and let your voice and opinion be heard. As you can gather from 9-1-1's Resolution 2023-001, the C911CD appears to be attempting to avoid well established best practice "public contracting" guidelines/rules applicable to government/public agencies, and perhaps "sole source" a multi-million-dollar procurement to Motorola, and entangle our county's 9-1-1 emergency system with Washington County's. As we know from watching past statewide elections, Multnomah and Washington County often control what happens throughout the rest of Oregon, which does not always match with the majority of Columbia County voters. Why would we want our local, county, emergency system entangled with their voters and their much larger public safety agencies to essentially control?

In reading C911CD's Resolution, keep in mind that all law enforcement agencies in our county, except 1, voted NO on the motion, which was "sole source the Motorola solution and join the WCN network". "WCN" is essentially Washington County's radio system. Columbia County Sheriff's Office, Rainier Police Department, Columbia City Police Department, Vernonia Police Department and the Scappoose Police Department were all present, and all voted against the motion. They want to see a fair, competitive RFP/procurement process, from the onset to ensure they get the radio system that meets their operational and safety needs at the best possible price to the taxpayers.

Exhibit 1                                    Exhibit 5
Page 27 of 32                               Page 1 of 5

We can see the C911CD's Resolution is designed to avoid a competitive procurement process from the onset, where all qualified vendors would normally be invited to submit a proposal with their best price. Instead, the C911CD is inviting only Motorola to submit to them a "sole source proposal". By avoiding a competitive/RFP process, the C911CD legally avoids other vendors "protesting" an award exclusively to Motorola. In other words, this is a very shady strategy that is not within the spirit of the public contracting statues. Per C911CD's 1/13/23 to 2/15/23 Expenditure Report, the involved attorney, Michael Peterkin (Perkin Burgess, in Bend), has billed the C911CD $34,579.97 within about 1 month. These records are online. This is our tax money that is being abused and wasted.

The new radio system procurement would be funded by our tax dollars. From everything I have seen so far, the procurement will cost anywhere between $20 million and $35 million dollars. The C911CD would have to ask us, the voters, to approve a tax levy, bond or both.

Qualified vendors who could submit a proposal would normally include at least Motorola, Harris, Tait and Kenwood. If the C911CD accepts the sole source proposal from Motorola, we the public will never know if tax money could have been saved - perhaps, and likely, millions of taxpayer dollars.

The Resolution mentions a "public hearing". What good is a public hearing if there are no other proposals/bids to inform the public and the decision makers of other options? Is the 9-1-1 Executive Director Mike Fletcher and Board trying to make an exclusive deal with Motorola with no competitive process? Motorola is known for being much more expensive in these types of system procurements. Why is this opportunity not open to all vendors; Motorola, Harris, Tait, Kenwood, etc.? Why is competition being avoided? Folks, in my book, this does not pass the "smell test".

Entanglement with Washington County 9-1-1? As part of this endeavor, the C911CD Executive Director appears to be headed towards making Columbia County rely on Washington County's expensive radio system components for our Columbia County public safety radio system to function. What happens when Washington County, who has a much larger tax base/budget than Columbia County wants to upgrade? In the past, they have about 10 to 15 years ahead of Columbia County. Should Columbia County with a taxbase of about 53,000 residents get entangled with a larger county with a taxbase of over 500,000 residents? We essentially lose control of a major part of our 9-1-1 emergency system.

Exhibit 1
Page 28 of 32

Exhibit 5
Page 2 of 5

How does Columbia 9-1-1 Communication District defer such an important part of Columbia County's emergency system to another county's agencies? In other words, joining WCN/Washington County's radio system would entangle us with some of the largest public safety agencies in Oregon, in a completely different county, who currently and would continue to have majority voting power on aspects related to the public safety radio system serving Columbia County's 9-1-1 emergency system. As one person said to me, that is "Taxation without Representation".

To me, the message to our 911 Board of Directors is clear: No sole source to Motorola, no joining/no entanglement with Washington County 9-1-1/WCN.

Resolution 2023-001 undermines public contracting principles and rules and signals to Motorola they are the only proposal/bid being considered. That begs the question: why would Motorola offer the best possible price to our taxpayers, when they are inherently aware there is no competition due to C911CD's Resolution 2023-001? Simply put, Resolution 2023-001 destroys public trust in our public contracting system and serves to destroy trust in C911CD's board of directors, who we elected. Whose interest is the 9-1-1 board of directors representing? Motorola or the constituents who elected them?

From the League of Oregon Cities Purchasing and Public Contracts handbook:

"In the private sector, organizations are generally free to contract however and with whomever they choose with the focus often on the organization's profit. In the public sector, public contracting is founded on the principle of fully advertised, open, and fair competition with the focus on transparency and fairness...."

2/23/2023 at 9 AM, at the 9-1-1 facility located at 58611 McNulty Way, St. Helens.

The 9-1-1 District has 3 board seats up for election in this May's election.

Have questions? Feel free to send me a message.

Tyler Miller
Scappoose Resident/Taxpayer
Scappoose City Councilor

Exhibit 1
Page 29 of 32

Exhibit 5
Page 3 of 5



# Columbia 9·1·1 Communications District
P.O. Box 998
St. Helens, OR 97051

## RESOLUTION 2023-001

**WHEREAS** a joint meeting of the Columbia 9-1-1 Communications District's Advisory Committee and the Board of Directors met at a regularly scheduled meeting on January 11, 2023;

**WHEREAS** a quorum of Directors was present being:

- Bruce Holsey
- Jeff Flatt
- Henry Heimuller
- Shelley Hennessy
- Rob Anderson

**WHEREAS** members of the District's Advisory Committee were present.

**WHEREAS** the District is evaluating the feasibility of the purchase and transfer of Motorola radio equipment currently in possession of the Clackamas 800 Radio Group (C800). C-800 is offering the equipment to the District at a 2017 pricing with a 40% additional discount.

**WHEREAS** the District is evaluating a direct equipment procurement from Motorola in conjunction with the C-800 purchase to obtain all equipment necessary for a new public safety land mobile radio system ("Radio System"). The District's evaluation is dependent upon, among other considerations, legal, cost, and practical considerations and after verification of recommended system requirements by District staff and the District's consultants and user agencies.

**WHEREAS** the District is evaluating whether to pursue a formal partnership with the Washington, Clackamas, Newberg Radio Consortium (WCN) managed by the Washington County Consolidated Communications Agency (WCCCA).

**WHEREAS,** following discussion on the above issues, the Advisory Committee recommended to the Board of Directors to engage with Motorola and WCN and to present a sole source Motorola and WCN Proposal to the District for Board approval.

**WHEREAS** following the advisory vote from the committee, Rob Anderson made a Motion and Jeff Flatt seconded the motion that the Directors unanimously passed the following resolutions:

Exhibit 1
Page 30 of 32

Exhibit 5
Page 4 of 5



# Columbia 9·1·1 Communications District
P.O. Box 998
St. Helens, OR  97051

**IT WAS UNANIMOUSLY RESOLVED** that the District's staff, its attorneys, and consultants are directed to formulate sufficient Radio System requirements to achieve robust coverage, superior reliability, with sufficient radio units, and for the best value and to engage with Motorola to negotiate a sole source Radio System proposal ("Motorola Proposal") for presentation to the Board with design elements that include:

- System functional and operational requirements
- Potential site locations & connectivity requirements and plans
- Coverage requirements
- System reliability and redundancy
- Radio vendor deliverables to include but not limited to: (design license documents, operations and maintenance manuals, test plans & reports, training manuals)
- Regulatory and standards compliance
- Environmental, seismic, and other site requirements
- Migration and cutover plans
- System coverage and acceptance test plans
- Network management
- Training
- Warranty
- 

**IT WAS FURTHER UNANIMOUSLY RESOLVED** that the District's staff, its attorneys, and consultants are directed to explore the feasibility of a partnership with WCN.

**IT WAS FURTHER UNANIMOUSLY RESOLVED** that once the Motorola Proposal and WCN option is presented to the Board, they will be available for public comment in writing and at a public hearing.

**IT WAS FURTHER UNANIMOUSLY RESOLVED** that after completing the public hearing, the Board at that time will decide whether to proceed with the Motorola proposal and whether to negotiate a Radio System contract with Motorola or, in the alternative, whether to issue an RFP for a new Radio System.

By signature below, the Secretary confirms his attendance and concurs that the Resolution is true and accurate as specified above.

_____
Jeff Flatt, Secretary

**RESOLUTION 2023-001**                                         Page **2** of **2**

Exhibit 1                                         Exhibit 5
Page 31 of 32                                     Page 5 of 5

# PETERKIN BURGESS

### ATTORNEYS AT LAW

February 23, 2023

Via: Personal Service
Tyler Miller
32915 SW Keys Crest Drive
Scappoose, OR 97056

**Re:    Columbia 9-1-1 Communications District**

Dear Mr. Miller:

**NOTICE:** You are not permitted to enter the District's premises or any property owned or leased by the District, including remote tower sites**.** You are not allowed to attend the District's public meetings in person.  You may attend District public meetings by remote means.   A remote access link will be included in all the District's public meeting notices. You may make remote presentations to the Board under the operative District rules.  You may continue to audio record or videotape meetings through the link provided or by proxy if the on-site recording is open, obvious, and unobtrusive.

**ADDITIONAL NOTICE**: You are further notified not to contact District employees directly, indirectly, or through the District's communications systems except in an emergency. If you need to contact the District for non-emergency reasons, you may only call (971) 415-4714.  The District will respond to written public records requests in writing in the ordinary course.

The above notices are necessary to shield District employees from your conduct, which has created a hostile work environment.  You have no right to harass and intimidate district employees with your words, your conduct, or with offensive, sexually explicit images. Further, you have no right to put employees in fear of you or fear that you will retaliate against them.

**FAILURE TO COMPLY**.  If you fail to comply with the above notices, you will be subject to civil or criminal actions.

Local law enforcement will be provided a copy of this notice for future enforcement purposes.

Sincerely,

Michael W. Peterkin
Copy (via email only):
     Mike Fletcher, Executive Director of C911CD
     Peter Watts, Scappoose City Attorney (Email only)

*Michael W. Peterkin* ◆ *Megan K. Burgess* ◆ *Taylor Hale*

222 NW IRVING AVE BEND, OR 97703    541.389.2nnnn    541.389.6298 FAX    PETERKINBURGESS.COM

Exhibit 1
Page 32 of 32

Exhibit 6
Page 1 of 1