Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Drew L. Eyman, OSB No. 163762
deyman@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
Telephone:  503.624.6800
Facsimile:  503.624.6888
Attorneys for Plaintiff Tyler Miller

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| TYLER MILLER, an individual,<br><br>      Plaintiff,<br><br>vs.<br><br>HENRY HEIMULLER, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; BRUCE HOLSEY, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; JEFF FLATT, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; and SHELLEY HENNESSY, in her official capacity as Board Member of the Columbia 9-1-1 Communications District; and the COLUMBIA 9-1-1 COMMUNICATIONS DISTRICT, an Oregon municipal corporation,<br><br>      Defendants. | Case No. 3:23-cv-00293-SI<br><br>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION.................................................................. 1

II.   STATEMENT OF MATERIAL FACTS......................................... 2

    A.    The District's Meetings and Proposals. ................................ 2

    B.    Miller opposes certain District Proposals. ............................ 2

    C.    The District shortens time for public comments, tells Miller to stop talking about the Proposals, launches an investigation into alleged conduct from 7 years ago, and imposes the Ban. ...................................................... 3

    D.    Following the Ban and this Court's TRO ruling, the District changed the District Meetings to virtual only and imposed new restrictions on public access for those virtual meetings. ........................................ 6

III.  SUMMARY JUDGMENT STANDARD ......................................... 7

IV.   ARGUMENT ...................................................................... 7

    A.    The District violated Miller's First Amendment right of expression. ................. 7

        1.    The First Amendment protects Miller's right to expression at District meetings ......................................................... 8

        2.    The District's prospective, indefinite ban of Miller's in-person attendance at District Meetings is unreasonable. .................................. 11

    B.    The District Violated Miller's First Amendment right to association or assembly........................................................................ 13

        1.    The Ban Infringes on Miller's First Amendment Right to Association or Assembly ......................................................... 15

        2.    The District's virtual-only meetings infringes on Miller's (and the public's) First Amendment right to association or assembly.................. 16

        3.    The District's Infringement on Miller's right to expressive association is not justifiable. ................................................... 18

            a.    The District's actions are related to suppression of expressive association; no compelling state interest.................. 18

            b.    Not narrowly tailored. ................................................ 20

    C.    The District's Virtual-Only Meetings Violate ORS 192.630(4)(a). .................. 21

V.    CONCLUSION ................................................................ 24

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Americans for Prosperity Found. v. Bonta*
   141 S. Ct. 2373 (2021) ................................................................................ 13, 14, 16

*Boos v. Barry*
   485 U.S. 312 (1988) .................................................................................................. 8

*Boquist v. Courtney*
   No. 6:19-CV-01163-MC, 2023 WL 4563725 (D. Or. July 17, 2023) .......... 2, 14, 16, 18, 19, 20

*Burson v. Freeman*
   504 U.S. 191, 112 S. Ct. 1846 (1992) ...................................................................... 8

*Glass v. Forster*
   No. 1:18-CV-01859-MC, 2020 WL 3077868 (D. Or. June 10, 2020) .................... 12

*Griswold v. Connecticut*
   381 U.S. 479 (1965) ................................................................................................ 14

*Kugler v. Bd. of Ed. of the City of Chicago*
   No. 16 C 8305, 2017 WL 3581176 (N.D. Ill. Aug. 18, 2017) ................................ 10

*Kusper v. Pontikes*
   414 U.S. 51 (1973) .................................................................................................. 14

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*
   466 U.S. 789 (1984) .................................................................................................. 8

*Menotti v. City of Seattle*
   409 F.3d 1113 (9th Cir 2005) .................................................................................. 9

*Mills v. State of Ala.*
   384 U.S. 214, 86 S. Ct. 1434 (1966) ........................................................................ 8

*Norse v. City of Santa Cruz*
   629 F.3d 966 (9th Cir. 2010) .................................................................................. 11

*Reza v. Pearce*
   806 F.3d 497 (9th Cir. 2015) .................................................................................. 11

*Richmond Newspapers, Inc. v. Virginia*
   448 U.S. 555 (1980) ................................................................................................ 13

*Roberts v. U.S. Jaycees*
   468 U.S. 609 (1984) ................................................................................ 16, 18, 20, 21

*Sullivan v. Univ. of Washington*
   60 F.4th 574 (9th Cir. 2023) .................................................................................. 15

*Walsh v. Enge*
   154 F. Supp. 3d 1113 (D. Or. 2015) ........................................................... 7, 8, 9, 12

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

*White v. City of Norwalk*
  900 F.2d 1421 (9th Cir. 1990) ................................................................. 8

**Statutes**

2020 OR Laws ch.12 § 1 ........................................................................ 23

2021 House Bill 2560 ............................................................................ 22

ORS 174.116 .......................................................................................... 2

ORS 192.630(4) ..................................................................................... 1

ORS 192.630(4)(a) ............................................................... 1, 21, 22, 23

ORS 192.670 ..................................................................... 21, 22, 23

ORS 192.670(1) ..................................................................................... 22

ORS 192.670(3) ..................................................................................... 22

ORS 198.010 .......................................................................................... 2

ORS 403.300 .......................................................................................... 2

ORS Ch. 403 ........................................................................................... 2

**Rules**

Fed. R. Civ. P. 56(a) .............................................................................. 7

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

## **LR 7-1 CERTIFICATION**

The parties made a good-faith effort to resolve this motion through telephonic conference but were unable to do so.

## **MOTION**

Pursuant to Federal Rule of Civil Procedure 56, plaintiff Tyler Miller ("Miller") moves for summary judgment in his favor on Counts 1 and 2 of the First Claim for Relief (violation of First Amendment right to expression and right to association or assembly) and the Second Claim for Relief (Oregon Declaratory Judgment Act – violation of ORS 192.630(4)).

This motion is supported by the following memorandum, the Fifth Declaration of Tyler Miller, all declarations previously filed in this case, the Court's file, and such further evidence and argument as this Court may entertain.

## **MEMORANDUM**

## I.    **Introduction**

The Columbia 9-1-1 Communications District's (the "District") unjustified, prospective ban on Miller's in-person attendance at public meetings (the "Ban") violates the First Amendment as a matter of law. It also separately violates Miller's First Amendment right to associate and assemble with other concerned citizens to petition the District's directors and express support for, or disapproval of, proposed board actions. That is so whether the District bans Miller from in-person District meetings or whether it holds virtual-only meetings with settings imposed that block public attendees from seeing and interacting with others. Moreover, by banishing the public to online-only meetings, the District violates ORS 192.630(4)(a).[1]

---

[1] In response to this lawsuit, the District has switched back to in-person meetings—at least for now. Because the District has asserted—both in open court and privately—that it reserves the right to conduct online-only meetings indefinitely, there is still a need for the Court to adjudicate this issue and grant relief. *See Boquist v. Courtney*, No. 6:19-CV-01163-MC, 2023 WL 4563725,

Accordingly, the Court should enter summary judgment in favor of Miller on Counts 1 and 2 of the First Claim for Relief, and on the Second Claim for Relief.

## II.    Statement of Material Facts

### A.    The District's Meetings and Proposals.

Defendants are board members of the District. The District is a 9-1-1 communications district organized under ORS 403.300 to 403.380 and, more broadly speaking, a district under ORS 198.010 and a local service district under ORS 174.116. The District is the sole 9-1-1 answering point and dispatch center serving Columbia County, Oregon, as well as small adjacent portions of Clatsop and Multnomah Counties. The District conducts public board of director meetings once a month and has done so regularly for many years. First Miller Decl., ¶ 4. It currently meets, at a minimum, on the fourth Thursday of each month. *Id.* The District also calls Special Meetings and Advisory Committee meetings on a regular basis. *Id.*[2]

### B.    Miller opposes certain District Proposals.

Miller is a resident of the City of Scappoose, in Columbia County, Oregon. *Id.* at ¶ 2. In 2020, Miller was elected to the Scappoose City Council. *Id.* at ¶ 3. Miller is the council-appointed 9-1-1 Communications liaison between the District and the City Council. *Id.* at ¶ 3. In that capacity, Miller provides the City Council with updates after District Meetings. *Id.* at ¶ 3.

---

at *9 (D. Or. July 17, 2023) ("While it is true that the 12-hour rule is no longer in effect (and therefore not presently violating Plaintiff's First Amendment rights), Defendants only rescinded the rule after this litigation commenced. It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.") (internal quotations omitted).

[2] The Advisory Committee improperly comprises persons from outside the District and public agencies that are not supposed to be on the Advisory Committee. Also, the District has failed to seek Advisory Committee review of the District's annual budget, and to adjust the District's zones based on the most recent census (not to mention the 2010 census). All these things are required under ORS Ch. 403. These are issues to be resolved separately.

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

Miller has attended over 100 District Meetings without incident since 2015. First Miller Decl., ¶ 5; *see* McHugh Decl., ¶ 5 (Miller is "nothing less than professional, polite, and courteous" at District meetings); Watts Decl., ¶ 4 (Miller "is extremely polite during public meetings, and I have never observed any disruptions by him."); Backus Decl., ¶ 4 (Miller "was professional and polite to everyone."). But the District banned him after he began speaking and organizing in opposition to the District's proposals to give Motorola Solutions the opportunity to submit a sole-source contracting proposal, and merge the Columbia 9-1-1 Communications District with Washington County's 9-1-1 systems (the "Proposals").

Miller frequently and publicly has discussed the Proposals and questioned District directors about them when attending District meetings. Third Miller Decl., ¶ 2. In the months leading up to the Ban, Miller spoke out against the Proposals at least a dozen times. *Id.*

In May 2023, there was an election for three of the five District director positions. Third Miller Decl., ¶ 8. Leading up to that election, Miller promoted candidates to run for those positions who, among other things, share Miller's concerns about the Proposals. *Id.*

### C.     The District shortens time for public comments, tells Miller to stop talking about the Proposals, launches an investigation into alleged conduct from 7 years ago, and imposes the Ban.

On September 22, 2022, Defendants shortened the time for public comment from 10 minutes to 3 minutes per person. Third Miller Decl., Ex. 1 (meeting minutes). On October 25, 2022, at a District Board meeting, Miller requested permission to speak a little over 3-minutes. Third Miller Decl., Ex. 2 (meeting minutes). Defendants denied the request, cut Miller off at the 3-minute mark, and Miller politely complied. *Id.*

On January 11, 2023, Miller attended a District meeting. First Miller Decl., ¶ 6. During that meeting, the board members, including Defendants, discussed the Proposals. After the meeting, that same day, Miller requested to meet with the board member who represents the

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

District Zone containing the City of Scappoose. *Id.* at ¶ 7. When that member did not reply, Miller sent an email to several of the board members. *Id.* at Ex. 1.

A week later, the District's outside counsel sent a letter to the City Council for the City of Scappoose, requesting that "Miller and the City <u>refrain from further comment and criticism until the Motorola proposal is complete</u> . . . ." *Id.* at Ex. 2 (emphasis added). The Scappoose City Attorney responded, noting public interest in the Motorola Solutions issue and raising questions about the proposed sole-source opportunity. *Id.* at Ex. 3. But the District's outside counsel doubled down on that request for silence a few days later. *See id.* at Ex. 4 ("This was a fair common-sense request that is consistent with the District's jurisdiction.").

On February 17, 2023, Miller published a posting on his "Tyler Miller: Scappoose City Council" Facebook/Meta account. *Id.* at Ex. 5. In the posting, which he addressed to "Scappoose and Columbia County Residents," Miller described the Proposals, shared his view that they were a bad idea, urged residents to attend the District meeting on February 23, 2023, and informed residents that three of the five District Board of Directors seats are up for election in May 2023. *Id.*

Six days later, during the February 23, 2023 meeting, Defendants voted to ban Miller from: (1) attending District Meetings in person, (2) setting foot on any District property, and (3) using any communication system of the District, including the non-emergency dispatch number, all under threat of criminal or civil penalty. *See id.* at ¶¶ 12-13 & Ex. 6 (February 23, 2023 ban letter).

In a letter informing Miller of the Ban, Defendants accused Miller of engaging in unspecified "conduct [that] has created a hostile work environment." *Id.* at Ex. 6. It further accused him of threatening District employees and sending sexually explicit images. *Id.* Miller

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

was at a loss as to what these referred to and did not find out until he filed a motion for temporary restraining order ("TRO") in this action. Third Miller Decl., ¶ 9. In opposition to Miller's motion for TRO, the District said that it received a complaint in January 2023 from District employee Chandra Egan about alleged behavior of Miller from 7 years ago when he was a contractor and reserve deputy sheriff. *See* ECF 9, Opp. to Mot. for TRO at 1; Egan Decl., ¶ 4. Ms. Egan says she initially raised these same concerns to the District's Executive Director back in February 2020. Egan Decl., ¶ 4. The District says it also received a complaint from Ms. Hooper, though Ms. Hooper did not identify when she made the complaint and Lieutenant Dustin Hald, who was Miller's sheriff's office supervisor, has no knowledge of such a complaint. *See* Hooper Decl., ¶¶ 1-7 (describing complaints but not identifying when she raised them); Hald Decl., ¶¶ 6-13 (no knowledge of complaints against Miller).

At some point following Ms. Egan's January 2023 complaint, the District tasked outside counsel Heather Van Meter to investigate Miller, and she provided a report on February 6, 2023. During that time, District representatives communicated with both the Mayor of Scappoose and the Scappoose City Attorney but did not mention any complaints against Miller. First Miller Decl., Ex. 2-4; Backus Decl., ¶¶ 2-3. The District did not communicate any of these findings to Miller, nor even so much as notify him that an investigation had been conducted. Third Miller Decl., ¶ 9. The first time Miller, Mayor Backus, or City Attorney Peter Watts heard of the Egan and Hooper complaints and the District's investigation was in the District's opposition to Miller's motion for TRO. *Id*. Nonetheless, on February 23, 2023, the District imposed the Ban. First Miller Decl., Ex. 6.

Miller would like to attend all future District Meetings in person, as he has done consistently since 2015 (with the exception of the COVID-19 public health emergency), *id.* at

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

¶ 15, and he would like his constituents and the public at large to do so and congregate with him. Doing so is important to his role as 9-1-1 Communications liaison to the City of Scappoose City Council, and his right as an Oregon citizen residing within the District's service area. *Id.*

On March 13, 2023, this Court entered an order granting Miller's motion for temporary restraining order, providing that Miller may physically attend any public meetings that the District board conducts in person that is otherwise open to the public. ECF 20. And, on May 18, 2023, this Court entered an order granting in part Miller's motion for a preliminary injunction, providing, among other things, that defendants may not preclude Miller from physically attending any public, in-person meetings on District property nor prohibit Miller from contacting District employees (subject to two exceptions). ECF 52.

> **D.      Following the Ban and this Court's TRO ruling, the District changed the District Meetings to virtual only and imposed new restrictions on public access for those virtual meetings.**

Prior to the Ban, the public who attended board meetings by Zoom could always see which members of the public were attending and could chat with anyone. Third Miller Decl. ¶ 4. Since the Ban, that has changed. *Id.* at ¶¶ 3-4. On March 23, 2023, the District held a virtual-only board of directors meeting. *See id.* at ¶ 3; ECF 92, Answer ¶ 15 ("Defendants admit that board meetings have been held with this new Zoom account since March of 2023."). At that meeting, the audio was difficult to hear, the chat function was disabled, the public could not see any other attendees, and the camera only showed one board member at a time (switching based on who is talking, and some did not have their camera on) making it impossible to view reactions and interactions of other board members. Third Miller Decl., ¶ 3; *see* Ryan Decl., ¶ 4 ("I was blocked from seeing any other public participants" and "the chat feature was also disabled so I could not see or message any of the other public participants."); Plantz Decl., ¶ 3 ("I was blocked from seeing any other public participants" and "I was not able to message anyone for the majority of

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

the meeting" until "[a]bout halfway through the meeting, I noticed the Zoom settings had changed" but "I could then message only the 'host and panelists,' but not any meeting attendees."). The same restrictions applied to the April 27, 2023 board meeting. Fifth Miller Decl., ¶ 3. At the virtual-only board of directors meetings on May 25, 2023 and June 15, 2023, Miller was once again able to see other attendees, but he could still only message the meeting host. *Id.* at ¶ 4.

The District held the public board meetings virtual-only in March, April, May, and June 2023. *Id.* at Ex. 1-4; ECF 92, Answer ¶ 15 ("Defendants admit that board meetings have been held with this new Zoom account since March of 2023."). The District held an in-person meeting in July 2023 and is scheduled to hold another in-person meeting in August 2023.

## III.    Summary Judgment Standard

The Court may grant a motion for partial summary judgment as to any claim or defense, or part of any claim or defense. Fed. R. Civ. P. 56(a). The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

## IV.    Argument

### A.    The District violated Miller's First Amendment right of expression.

Courts evaluate claimed unconstitutional restrictions on speech under a three-pronged test: (1) whether the First Amendment protects the plaintiff's speech; (2) the nature of the forum; and (3) whether the justifications offered for limiting or excluding speech from the forum satisfy the requisite standards. *Walsh v. Enge*, 154 F. Supp. 3d 1113, 1126 (D. Or. 2015) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985)).

The Ban flunks all three parts of the test. First, the First Amendment protects Miller's right to expression at the District's public meetings. Second, those District meetings are limited

public forums. Third, the District's prospective ban is unreasonable as a matter of law.

Accordingly, the First Amendment does not tolerate the Ban. This Court should enter summary

judgment in favor of Miller on count 1 of the first claim for relief.

> 1.    **The First Amendment protects Miller's right to expression at District meetings**

"[T]he First Amendment reflects a profound national commitment to the principle that

debate on public issues should be uninhibited, robust, and wide-open, and [the U.S. Supreme

Court has] consistently commented on the central importance of protecting speech on public

issues." *Boos v. Barry*, 485 U.S. 312, 318 (1988) (internal quotations and citations omitted). It is

unsurprising then that courts in this Circuit have consistently protected speech about public

issues to local government officials. *See White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir.

1990) ("Citizens have an enormous first amendment interest in directing speech about public

issues to those who govern their city."); *Walsh*, 154 F. Supp. 3d at 1126-27 (holding that speech

at City Council meetings is protected under First Amendment).

"[S]peech concerning public affairs is more than self-expression; it is the essence of self-

government." *Burson v. Freeman*, 504 U.S. 191, 196, 112 S. Ct. 1846 (1992) (internal quotations

omitted). In *Mills v. State of Ala.*, 384 U.S. 214, 86 S. Ct. 1434 (1966), the Supreme Court

explained:

> Whatever differences may exist about interpretations of the First
> Amendment, there is practically universal agreement that a major purpose
> of that Amendment was to protect the free discussion of governmental
> affairs. This of course includes discussions of candidates, structures and
> forms of government, the manner in which government is operated or
> should be operated, and all such matters relating to political processes.

*Id.* at 218-19; *see Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466

U.S. 789, 816 (1984) ("[P]olitical speech is entitled to the fullest possible measure of

constitutional protection.").

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

Moreover, as this Court indicated in *Walsh v. Enge*, a key component of public meetings is "formally or informally meeting with anyone, including elected council members, on the premises." 154 F. Supp. 3d 1113, 1133 (D. Or. 2015). Defendants admit that Miller meets with others attending the District's public meetings. ECF 12, Hooper Decl., ¶ 7 (alleging that Plaintiff "is seen on camera," by someone, "being visibly agitated while <u>meeting with other attendees</u> in our parking lot or in the lobby near the front door, <u>sometimes for long periods of time</u>.") (emphasis added.)

The fact that technology now permits remote attendance at public meetings does not lessen the importance of being present in order to fully participate in the public forum. Indeed, the prevalence of remote technology makes showing up in person all the more meaningful and that much more expressive of public concern or interest in the District's agenda. As the Western District of Washington has observed in a different First Amendment context, "there is no internet connection, no telephone call, no television coverage that can compare to attending a political rally in person." *See Menotti v. City of Seattle*, 409 F.3d 1113, 1174 (9th Cir 2005) (citation omitted).

Being allowed to congregate for any lawful purpose—whether as a show of force in numbers, or simply to engage in spontaneous conversation about public issues with those around him—is just as important to Miller (and the public) as speaking to the District board or hearing what they have to say. The First Amendment concerns here are particularly acute given that Plaintiff is an elected official appointed by the city that he serves to act as the liaison for 9-1-1 communications, and liaison to the Columbia County Board of Commissioners—in addition to advocating as a concerned citizen and on behalf of first responders in the city of Scappoose and throughout Columbia County. Third Miller Decl., ¶ 10.

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

The case at bar resembles *Kugler v. Bd. of Ed. of the City of Chicago*, No. 16 C 8305, 2017 WL 3581176 (N.D. Ill. Aug. 18, 2017). There, the Chicago Board of Education restricted Kugler's access to Chicago Public Schools property because of allegedly threatening conduct. Here is one example of the plaintiff's alleged conduct in that case:

> [I]n December 2014, Kugler participated in a grievance hearing at Manley Career Academy ("Manley") at which Principal Trista Harper ("Harper") was present. During the course of the hearing, Kugler yelled at Harper and exhibited what she considered to be an intimidating tone and body language. When Harper asked him to act professionally and look at her when speaking to her, Kugler replied, "I don't have to look at you," and asked, "I mean, who are you?" He then banged his fist on a desk and said, "What are you going to do about it?" Harper, who was upset and felt threatened, "thought at the time maybe [she] should get security because [she] thought that maybe [Kugler] ... wanted to fight or something," having never experienced such conduct in a professional setting. She reported Kugler's conduct to the Board's law department. Following the meeting, she "started to receive an abundance of email harassments" from Kugler.

*Id.* at *1 (citations to evidentiary record omitted). There were additional examples of this type of behavior on Kugler's part. Kugler sued based on denial of access and First Amendment retaliation and moved for an injunction.

As relevant here, the court found that permitting Kugler to attend grievance hearings by phone or teleconference could not cure the First Amendment harm Kugler suffered through physical exclusion:

> "As explained above, Kugler has been indefinitely barred from exercising any First Amendment right on CPS property. The Board's only argument otherwise is that Kugler can still participate in grievance hearings off of CPS property and by telephone or videoconference. This argument fails for two reasons. First, as Kugler explains in his supplemental brief, he cannot attend certain disciplinary meetings that are expected as part of his job as a CTU representative. The Board responds that such meetings were not the focus of the evidentiary hearing, and explains that it is in the process of arranging videoconferencing for these meetings, but neither response changes the fact that, at present, the Board's restrictions prevent Kugler from representing CTU members at disciplinary meetings. And, more importantly, Kugler is barred from expressing himself in-person at

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

grievance hearings for an indefinite period, which has unreasonably harmed him for the reasons explained above. This abridgement of his First Amendment freedoms is irreparable and cannot be compensated by monetary damages."

*Id.* at *11 (citations to evidence omitted).

Physical presence at public meetings has an important expressive function. In connection with Miller's TRO and preliminary injunction motions, this Court held that "[t]here are at least serious questions going to the merits of whether Miller's physical, in-person, attendance at C911 board meetings is protected speech." ECF 20 at 10. As this Court explained, "even if Miller were to say nothing, his physical presence sitting across from the C911 board members as they decide on the Motorola Proposal likely constitutes expressive conduct in a way that merely virtual presence cannot." *Id.* at 10-11.

## 2.    The District's prospective, indefinite ban of Miller's in-person attendance at District Meetings is unreasonable.

District Meetings are limited public fora. *See Reza v. Pearce*, 806 F.3d 497, 503 (9th Cir. 2015) ("We have held that city council meetings, where the public has the opportunity to address officers of a local government or local governmental agency, are limited public fora[.]"). Government restrictions on speech in such fora must be both viewpoint neutral and reasonable. Defendants do not meet this standard because the District's prospective ban is unreasonable as a matter of law.

While the government can remove an individual from a limited public forum if the individual <u>actually disrupts</u> the proceedings, the government cannot prospectively ban an individual from future hearings. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 976 (9th Cir. 2010) ("Actual disruption means actual disruption. It does not mean constructive disruption, technical disruption, virtual disruption, *nunc pro tunc* disruption, or imaginary disruption."); *Reza*, 806 F.3d at 506 ("No cases, in the Ninth Circuit or otherwise, even remotely suggest that

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

*Norse's* principle can be inverted to indefinitely ban an individual from a government building based on a single disruption of a hearing.").

In *Walsh v. Enge*, this Court granted permanent injunctive and declaratory relief because the ordinance at issue prospectively banned individuals from physically using "a government building where legislative actions take place." *Walsh*, 154 F.Supp.3d at 1133. This Court explained that "prolonged and prospective exclusions defeat the very purpose of the forum: to provide the opportunity for discourse on public matters." *Id.*; *cf. Glass v. Forster*, No. 1:18-CV-01859-MC, 2020 WL 3077868, at *5 (D. Or. June 10, 2020) (no First Amendment violation where plaintiff "was not prospectively forbidden from participating in future events, nor was he banned from the Senior Center [where candidate debate had occurred].). Accordingly, exclusion from public meetings may be imposed only on a case-by-case basis. *See Walsh*, 154 F.Supp.3d at 1133 ("Defendants have a simple alternative to the prospective exclusion ordinance. They can order any disruptive individual to leave the meeting that he or she is disrupting for the duration of the meeting.").

Here, Miller did not "actually disrupt" any District Meetings, so the District would not be justified in contemporaneously removing him from any particular meeting. But the District's actions are far more egregious because they prospectively and indefinitely banned Miller from all future meetings (and District premises and communications systems). As this Court has already held at the TRO stage, "even if the factual allegations made by C911 against Miller are entirely true, a *prospective* ban that targets Miller's speech is unreasonable." ECF 20 at 13 (emphasis in original). This Court reiterated that holding at the preliminary injunction stage

> "[E]ven if the Court accepted Defendants' arguments about the Van Meter Report, prospective bans against speaking in limited public fora are generally unreasonable. The Court incorporates its prior analysis from the TRO Opinion on this point. Miller, 2023 WL 2474345, at *6 (discussing

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

*Walsh v. Enge*, 154 F. Supp. 3d 1113, 1133-34 (D. Or. 2015). The Court
concludes that even if the factual allegations made by C911 against Miller
are true, a prospective ban that targets Miller's speech is unreasonable."

ECF 52 at 14. Accordingly, the District's Ban is not reasonable. This Court should enter

summary judgment in favor of Miller on count 1 of his First Claim for Relief.

**B.    The District Violated Miller's First Amendment right to association or
assembly.**

The First Amendment also separately protects Miller's right of association or assembly.

*See Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (stating that First

Amendment protections include a "corresponding right to associate with others"); *Richmond

Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577 (1980) ("From the outset, the right of assembly

was regarded not only as an independent right but also as a catalyst to augment the free exercise

of the other First Amendment rights with which it was deliberately linked by the draftsmen.").

That protection covers both Miller's in-person attendance at District Meetings as well as

remote meetings via Zoom. By singling out and banishing Miller to virtual attendance,

Defendants violated his right of association with concerned citizens (organized by Miller and

others) who similarly oppose the Proposals. *See* Third Miller Decl., ¶ 11 (Miller has organized

concerned citizens to attend District Meetings); Ryan Decl., ¶¶ 2-3 (runs a community

engagement Facebook group called "engaged Citizens of Columbia County"). Then, by

switching to heavily restricted virtual-only public meetings, the District again violated his right

of association with that same group – and others who might wish to join.

As the Supreme Court has explained,

The right of 'association' . . . is more than the right to attend a meeting; it
includes the right to express one's attitudes or philosophies by membership
in a group or by affiliation with it or by other lawful means. Association in
that context is a form of expression of opinion; and while it is not expressly
included in the First Amendment its existence is necessary in making the
express guarantees fully meaningful.

Page 13 – MOTION FOR PARTIAL SUMMARY JUDGMENT

*Griswold v. Connecticut*, 381 U.S. 479, 483 (1965). Several years later, the Supreme Court

reiterated that "[t]here can no longer be any doubt that freedom to associate with others for the

common advancement of political beliefs and ideas is a form of 'orderly group activity'

protected by the First and Fourteenth Amendments." *Kusper v. Pontikes*, 414 U.S. 51, 56–57

(1973).

The right of association is broad, covering not only actual restrictions on association but

also restrictions that might chill association. As the Supreme Court has explained, "[w]hen it

comes to the freedom of association, the protections of the First Amendment are triggered not

only by actual restrictions on an individual's ability to join with others to further shared goals.

The risk of a chilling effect on association is enough, because First Amendment freedoms need

breathing space to survive." *Americans for Prosperity Found.*, 141 S. Ct. at 2389 (internal

quotations omitted).

To succeed on a freedom of association or assembly claim, this Court most recently

explained:

> "Today, the freedom of association has largely subsumed the freedom of
> assembly. Parties bringing an expressive association claim under the First
> Amendment must demonstrate that they are asserting their right to associate
> for the purpose of engaging in those activities protected by the First
> Amendment—speech, assembly, petition for the redress of grievances, and
> the exercise of religion."

*Boquist v. Courtney*, No. 6:19-CV-01163-MC, 2023 WL 4563725, at *9 (D. Or. July 17, 2023)

(internal quotations omitted) (quoting *Givens v. Newsom*, 459 F. Supp. 3d 1302, 1314 (E.D. Cal.

2020)). However, "[t]he right to expressive association is not an absolute right and can be

infringed upon if that infringement is: (1) unrelated to the suppression of expressive association;

(2) due to a compelling government interest; and (3) narrowly tailored." *Id.*

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

Here, the record shows that both the Ban and subsequent virtual-only restrictions violated Miller's right of association or assembly under the First Amendment. That's because they prevented Miller from associating with the group of concerned citizens for the purpose of opposing the District's Proposals.

### 1. The Ban Infringes on Miller's First Amendment Right to Association or Assembly

Miller engaged in expressive association in joining together with other concerned community members to advocate against the Proposals. "Individuals engage in expressive association when they join with others to pursue a wide variety of political, religious, cultural, or social purposes, including the advocacy of both public and private points of view, the advancement of beliefs and ideas, and the transmission of a system of values." *Sullivan v. Univ. of Washington*, 60 F.4th 574, 579 (9th Cir. 2023) (internal quotations and citations omitted).

The District's Ban singled out and banished Miller to virtual attendance. In that way, the District violated his right of association with the group of concerned citizens (largely organized by Miller) who may continue to attend District Meetings in person to oppose the Proposals. The District's Ban prevents Miller from gathering with likeminded individuals and showing up on a particular issue—*i.e.*, the sole-source Motorola Solutions proposal. Indeed, in his capacity as a Scappoose city councilor, Miller encouraged concerned members of the public to attend the February 23, 2023 meeting in which the board members discussed the sole-source Motorola Solutions proposal. First Miller Decl., ¶ 11 & Ex. 5.

Banishing Miller to Zoom prevents him from assembling with others—respectfully—at public meetings, infringing his right of assembly. If the District holds an in-person meeting, those other concerned citizens may continue to attend District Meetings in person while Miller is relegated to attending remotely via Zoom. That violates Miller's First Amendment right to

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

associate and assemble with that group for purposes of opposing the Proposals. *See Americans for Prosperity Found.*, 141 S. Ct. at 2823 (right of association is violated "where individuals are punished for their political affiliation" or "where members of an organization are denied benefits based on the organization's message"); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) ("According protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority."). At the very least, the Ban chills expressive association because it will discourage other concerned citizens from speaking out, at the risk of suffering the District's wrath like Miller.

In *Boquist*, this Court recently considered a First Amendment challenge to a disciplinary requirement that an Oregon State Senator provide 12-hour notice prior to arriving at his workplace in the Capitol building. 2023 WL 4563725, at *1. There, this Court granted the plaintiff's motion for summary judgment because "Plaintiff has shown that the 12-hour rule infringed upon his right to freely associate (for purposes of speech) with his constituents at the Capitol at any time of day." *Id.* at * 9. The same goes for attending public meetings alongside a group of concerned citizens.

### 2.    The District's virtual-only meetings infringes on Miller's (and the public's) First Amendment right to association or assembly

In direct response to the TRO entered in this case on March 13, 2023, and to the prospect of Miller's attending the District's public board meetings (as he had done over 100 times before without incident), the District designated its next board meeting, on March 23, to be "virtual." Third Miller Decl., ¶ 3; ECF 92, Answer, ¶ 15. These virtual meetings violated Miller's rights to association or assembly.

At the March 23rd virtual meeting, several board members were present at the board's

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

meeting room at District headquarters; the rest attended by Zoom. Third Miller Decl., ¶ 3; Fifth

Miller Decl., Ex. 1. The executive director also was present in person. *Id*. The public, however,

could only attend remotely. *Id.* At the March 23rd meeting, and at the next board meeting in

April, the District deactivated Zoom's chat features for public participants and set up the Zoom

meeting such that attendees could not see who else was attending. *Id.* at ¶¶ 3-4; Plantz Decl., ¶ 3;

Ryan Decl., ¶ 4; ECF 92, Answer, ¶ 15; Fifth Miller Decl., ¶ 3. At the District's board meetings

on May 25, 2023 and June 15, 2023, attendees could once again see other attendees, but they

could still only message the meeting host. Fifth Miller Decl., ¶ 4.

     These were speech-suppressing changes to the Zoom interface; for the entirety of the

COVID-19 emergency, when Zoom meetings were the only means of attending board meetings,

chat was possible and public attendees could see which members of the public were also

attending. ECF 92, Answer, ¶ 15; *see* Second Miller Decl., ¶ 10 (District meetings went virtual-

only for approximately two years due to COVID); Third Miller Decl., ¶ 4 ("This is the first

meeting I have ever seen by the District, via Zoom, where I have not been able to see the other

participants and message them directly, or through the Zoom group chat feature."). At the March

23rd meeting, the board members attending virtually kept their cameras off, and several of the

board members attending in-person at District headquarters were not visible on the screen. Third

Miller Decl., ¶ 3. The audio also was spotty and it was difficult to decipher who was speaking.

*Id*. Similarly, at the next three virtual-only board of directors meetings (April, May, and June)

some board members attended in person while other board members attended virtually, with the

public banished to the internet with a spotty audio connection. Fifth Miller Decl., Ex. 1-4; ECF

92, Answer, ¶ 15.

     These four virtual-only meetings violate Miller's First Amendment Rights of association

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

or assembly because the District restricted the virtual meetings in ways that prevent Miller from associating or assembling with others for purposes of opposing the Proposals. That is, the restrictions prevented Miller from seeing and interacting with other concerned members of the public. At the very least, those restrictions chill expressive association. Accordingly, they violate the First Amendment.

### 3. The District's Infringement on Miller's right to expressive association is not justifiable.

While the District infringed on Miller's First Amendment right to association or assembly, that alone is not dispositive. "Infringements on [the right to associate for expressive purposes] may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984); *see Boquist*, 2023 WL 4563725, at *9 (same). Here, the Ban and virtual-only meetings restrictions serve no compelling state interest and, regardless, are not narrowly tailored.

### a. The District's actions are related to suppression of expressive association; no compelling state interest.

The District's actions are unjustifiable. The Ban and subsequent, restricted virtual-only meetings were not adopted to serve a compelling state interest. Instead, the evidence shows that the District took those actions to suppress Miller's speech and association with other concerned citizens. The below timeline is illustrative:

- Prior to September 2022, and in the months leading up to the Ban: Miller speaks out against the Proposals at least a dozen times. Third Miller Decl., ¶ 2.

- September 22, 2022: Defendants shortened the time for public comment from 10 minutes to 3 minutes per person. Third Miller Decl., Ex. 1 (meeting minutes).

- October 25, 2022: Miller requested permission to speak a little over 3-minutes. Third Miller Decl., Ex. 2 (meeting minutes). Defendants denied the request, cut

Miller off at the 3-minute mark, and Miller politely complied. *Id.*

- <u>January 11, 2023</u>: Miller attended a District board meeting regarding the Proposals, unsuccessfully attempted to schedule a meeting with a board member representing Scappoose, and sent an email to several board members expressing his concern. First Miller Decl., ¶¶ 6-7 & Ex. 1.

- <u>January 18, 2023</u>: the District's outside counsel requested "that Mr. Miller and the city refrain from further comment and criticism until the Motorola Proposal is complete[.]" First Miller Decl., Ex. 2.

  <u>January 20, 2023</u>: the District's outside counsel reiterates its request that Miller and the City should stop talking about the Proposals and tells Miller to not contact the District directly. First Miller Decl., Ex. 4.

- <u>February 17, 2023</u>: Miller addresses a Facebook post to Scappoose and Columbia County residents about his concerns with the Proposals and urges the public to attend District board meetings and participate in the public comment process. First Miller Decl., Ex. 5.

- <u>February 23, 2023</u>: Defendants voted to ban Miller from attending any District meeting in person and send Miller a letter to that effect. First Miller Decl., Ex. 6.

- <u>March 26, 2023</u>: Following this Court's TRO, obligating the District to permit Miller to attend in person public meetings, the District switches to virtual-only meetings. ECF 92, Answer, ¶ 15. At those meetings, the District implements new, restrictive Zoom settings that prevent public attendees from seeing and chatting with other public attendees. Third Miller Decl., ¶ 4.

The politically driven actions above are like those in *Boquist*. There, the plaintiff, an Oregon state senator, was disciplined by a Senate conduct committee for speaking "politically charged words." *Boquist*, 2023 WL 4563725, at *1. As part of that discipline, plaintiff was required to provide 12-hour notice prior to arriving at his workplace at the Capitol building. *Id.* Plaintiff claimed the disciplinary action violated his First Amendment right of association. This Court granted plaintiff's motion for summary judgment, finding:

> "Plaintiff has shown that the 12-hour rule infringed upon his right to freely associate (for purposes of speech) with his constituents at the Capitol at any time of day. Moreover, the rule did not further a compelling government interest; the evidence indicates that it was purely political, and most certainly related to the suppression of Plaintiff's speech. The Court finds no

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

genuine issue of material fact that the 12-hour rule infringes upon Plaintiff's
right to freely assemble."

*Id.* at *9. The same reasoning applies here.

In connection with the TRO and preliminary injunction motions, this Court already held
that "Defendants have not met their burden to show that the restriction on Miller's physical, in-
person, presence at public meetings is reasonable and not pretextual." ECF 52 at 14 (Preliminary
Injunction); *see* ECF 20 at 14 (TRO) ("This all supports a conclusion that Defendants' current
position is mere pretext."). This Court now should find that there is no genuine issue of material
fact that the Ban serves no compelling state interest because, like *Boquist*, the evidence indicates
that it was purely a political tactic to suppress expressive association.

Moreover, the restrictions that the District imposed on the virtual-only meetings do not
serve any compelling state interest. That is, restricting the ability of public attendees to see and
communicate with other attendees during public meetings does not serve any compelling state
interest. On their face, those restrictions serve only to suppress expressive association.

This Court should find that there is no genuine issue of material fact that the Ban and the
virtual-only meetings infringe on Miller's First Amendment rights to association and assembly.

### b.     Not narrowly tailored.

As explained in section IV(A)(2) above, there is no evidence that Miller is disruptive at
District Meetings and, in any event, prospective bans are patently unreasonable. Even if the
District can somehow demonstrate a compelling state interest, the indefinite Ban is not
sufficiently narrowly tailored, because the District could simply remove Miller from specific
meetings if he is actually disruptive. Accordingly, even if a compelling state interest existed, it
can be achieved through means significantly less restrictive of associational freedoms. *Roberts*,
468 U.S. at 623.

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

The virtual-only meetings are not narrowly tailored either. There is no legitimate reason the District needs to restrict the ability of public attendees to see and communicate with each other during virtual-only District meetings. *See* ECF 92, Answer ("Defendants admit that in March of 2023, the district changed to a different Zoom account that allowed the moderator to mute participants and changed the chat feature so that the chats only went to the moderator."). Indeed, the District held virtual-only public meetings without those restrictions during the COVID pandemic. *See* Second Miller Decl., ¶ 10 (District held public meetings virtual-only due to COVID); Third Miller Decl., ¶ 4 (District's Zoom restrictions are new). Accordingly, the District's virtual-only meetings, with their new restrictions as of March 23, 2023, are not sufficiently narrowly tailored. That is, whatever government interest virtual-only meetings might serve, that interest can be achieved through means significantly less restrictive of associational freedoms. *Roberts*, 468 U.S. at 623. Accordingly, the virtual-only meeting restrictions are not justifiable and violate the First Amendment.

### C.    The District's Virtual-Only Meetings Violate ORS 192.630(4)(a).

ORS 192.630(4)(a) requires that meetings of the governing body of a public body be held in one of three physical places: within the geographic boundaries over which the public body has jurisdiction, at the administrative headquarters of the public body, or at the nearest practical location. The District's virtual-only public meetings violate that statute.

After the Court issued its TRO in this case on March 13, 2023, the District switched from in-person board meetings to virtual-only, holding the next four public board meetings remotely by Zoom.[3] *See* ECF 92, Answer ¶ 15 ("Defendants admit that board meetings have been held

---

[3] The District held an in-person board meeting in July and is scheduled to hold another in-person board meeting on August 28, 2023. Of course, the District believes it can return to virtual-only public meetings any time it chooses. *See* ECF 92, Answer ¶ 16 (denying allegations).

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

with this new Zoom account since March of 2023."); Fifth Miller Decl., ¶¶ 3-4 & Ex. 1-4.

Defendants have taken the position that ORS 192.670 authorizes them to relegate the public to

the internet, but it does no such thing. ORS 192.670 merely provides requirements for virtual

meetings if and when such meetings are held. By its terms, ORS 192.670 is subject to ORS

192.630(4)(a). *See* ORS 192.670(1) ("Any meeting, including an executive session, of a

governing body of a public body which is held through the use of telephone or other electronic

communication shall be conducted in accordance with ORS 192.610 to 192.690.").

      Contrary to the way Defendants have contorted the statute, the purpose of ORS 192.670

is to expand the public's access to meetings conducted in the manner required by ORS 192.610-

.690. The plain text of the statute provides that public bodies must provide the public an

opportunity to access "[a]ll meetings" by virtual means. ORS 192.670(3); *see* Eyman Decl.,

Ex. 1 (enrolled 2021 House Bill 2560; adding section 3 to ORS 192.670). That is, when a public

meeting is held in person, the public must be provided the option of attending the meeting

remotely. This is made clear by the two state legislators who co-sponsored the 2021 House Bill

that added the operative language to ORS 192.670:

> Senator Steiner Hayward: "[W]e are starting to hear from various government
> bodies that after the pandemic is over and in person meetings are allowed, that they
> will go back to only in person meetings and only allowing people to testify in
> person. Representative Meek and I think that's highly problematic. We think that
> in order to facilitate public participation by Oregonians across this state at every
> level of government that anything that falls under public meetings laws, with the
> exception that Ms. Porter outlined, should be available to the public by virtual
> means and they should be able to testify virtually. We have people who travel from
> Enterprise to Salem, a six-hour drive, to testify for 15 minutes. That's not ok, Mr.
> Chair and members of the committee. We need to make it so that they don't have
> to do that if they want to get their voices heard on important pieces of legislation."
> Audio recording, Public Hearing, Senate Committee on Rules, House Bill 2560,
> April 27, 2021 (4:00 to 4:56).[4]

---

[4] Available at
https://olis.oregonlegislature.gov/liz/mediaplayer/?clientID=4879615486&eventID=2021041260

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

Representative Meek: "The goal here is to not circumvent the way that our counties and cities and school boards are providing their meetings, we would like there to be continued access so that you have both, you have your in person meeting but those that cannot make it and couldn't make it will have the opportunity to, like the Senator mentioned, be able to participate, listen in, and be educated on some of the issues that are very important to our communities right now. *Id.* at 7:05 to 7:33.

The above testimony confirms that the legislature did not intend ORS 192.670 to authorize exclusively remote meetings, as the District now suggests.

The Legislature knows how to authorize public bodies to conduct all meetings remotely, which it did during the COVID-19 emergency. In language now repealed due to the end of the COVID-19 emergency, the Legislature provided the means by which a public body could conduct online-only meetings:

Sec. 1. (1) Notwithstanding ORS 192.610 to 192.690, the governing body of a public body may hold all meetings by telephone or video conferencing technology or through some other electronic or virtual means. When a governing body meets using telephone or video conferencing technology, or through other electronic or virtual means, the public body shall make available a method by which the public can listen to or observe the meeting. If a governing body meets using telephone or video conferencing technology, or through other electronic or virtual means:

(a) The public body does not have to provide a physical space for the public to attend the meeting; and

(b) If the telephone or video conferencing technology allows the public body to do so, the public body shall record the meeting and make the recording available to the public. This paragraph does not apply to executive sessions.

2020 OR Laws Ch. 12, § 1 (first special session) (emphasis added). No such authorizing language appears in ORS 192.670. Instead, the legislature amended ORS 192.670 in 2021 to continue to provide the public the option of attending public meetings remotely.

By banishing the public to virtual attendance only, the District, and those acting in concert with it, are in violation of ORS 192.630(4)(a). This Court should enter summary judgment in favor of Miller on the Second Claim for Relief.

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800

## V.    Conclusion

For the foregoing reasons, the Court should enter summary judgment in favor of Miller on Counts 1 and 2 of the First Claim for Relief and on the Second Claim for Relief.

Dated: August 22, 2023                          SNELL & WILMER L.L.P.

By /s/ Drew L. Eyman
   Clifford S. Davidson, OSB No. 125378
   Drew L. Eyman, OSB No. 163762

Attorneys for Plaintiff

\4861-2387-4420

Snell & Wilmer
601 SW 2nd Avenue, Suite 2000
Portland, Oregon 97204
503.624.6800