IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYLER MILLER,

          Plaintiff,

v.

STEVE WATSON,

          Defendant.

Case No. 3:18-cv-00562-SB

**DISCOVERY ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

    Plaintiff Tyler Miller ("Miller") filed this action against defendant Steve Watson ("Watson"), asserting whistleblower retaliation. The Court has supplemental jurisdiction over Miller's state law claim under 28 U.S.C. § 1367(a), and all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636.

    Now pending before the Court is (i) Miller's request in accord with the Court's informal discovery dispute resolution procedures to require non-parties Bullard Law, P.C. ("Bullard Law") and the Columbia 911 Communications District (the "District") (together, the "Non-Parties") to produce electronically-stored information ("e-discovery") in response to Miller's subpoenas following the Court's denial of the Non-Parties' motions to quash, and (ii) the Non-

PAGE 1 – DISCOVERY ORDER

EXHIBIT 1
Page 1 of 11

Parties' request to sanction Miller for failing to take reasonable steps to avoid imposing undue burden or expense on the Non-Parties with respect to e-discovery. Alternatively, the Non-Parties ask the Court to shift their cost of complying with the subpoenas to Miller. For the reasons discussed below, the Court denies the Non-Parties' request to sanction Miller, orders the Non-Parties to produce e-discovery in response to the subpoenas, and orders Miller to pay the Non-Parties' e-discovery costs.

## BACKGROUND

Miller filed this case on April 2, 2018, alleging several claims against Watson and others related to Miller's work for the District. Following motion practice, Miller filed an amended complaint on January 6, 2020, asserting a single claim against Watson for whistleblower retaliation under an unspecified state statute. (ECF No. 85.)

On March 3, 2020, Watson moved for summary judgment, arguing, *inter alia*, that the applicable statute of limitations barred Miller's claim. (ECF No. 91.) The Court agreed, and entered summary judgment on behalf of Watson. (ECF No. 127.) Miller appealed the Court's entry of summary judgment, and the Ninth Circuit reversed and remanded the case in December 2021. See *Miller v. Watson*, No. 20-35922, 2021 WL 5905722, at *1 (9th Cir. Dec. 14, 2021).

In January 2022, the Court stayed all case management deadlines pending a judicial settlement conference. (ECF No. 140.) Following an unsuccessful judicial settlement conference, the Court adopted the parties' proposed case management deadlines, ordering discovery to be completed and dispositive motions filed by October 7, 2022, and setting a four-day jury trial to begin on May 16, 2023. (ECF Nos. 145, 147.) The Court later continued the discovery and dispositive motion deadlines to December 30, 2022. (ECF No. 170.)

The parties notified the Court on July 6, 2022, that they disagreed on the appropriate scope of discovery following remand. Although the parties agreed that they should produce

PAGE 2 – DISCOVERY ORDER

EXHIBIT 1
Page 2 of 11

updated responses to prior discovery requests, they disagreed with respect to the impact of a recent opinion in a related case, *Karthauser v. Columbia 9-1-1 Commc'ns Dist.*, No. 3:20-cv-00127-SI. In that case, Judge Simon held that the District "waived privilege with respect to communications on the subject matter of th[e Liani Reeves ("Reeves")] report, namely, the investigation of Watson's relationships with female employees at [the District]" by voluntarily disclosing the Reeves report, and also "waived privilege with respect to communications about the Miller investigation" by voluntarily disclosing the Akin Blitz ("Blitz") report. (*Karthauser*, No. 3:20-cv-00127-SI, ECF No. 32.) Both reports and the investigations underlying the reports are central to Miller's allegations in this case.

Following a July 13, 2022, discovery hearing, the Court entered a discovery order outlining the appropriate scope of post-remand discovery:

> The Court will allow Plaintiff to seek additional discovery relating to the Liani Reeves and Akin Blitz reports, in light of Judge Simon's opinion in *Karthauser v. Columbia 9-1-1 Commc'ns Dist.*, Case No. 3:20-cv-00127-SI (ECF No. 32), finding waiver of the attorney-client privilege with respect to the subject matter of those reports, on the ground that Judge Simon's opinion post-dated this Court's summary judgment opinion and therefore the discovery was not available to the parties during the original discovery period. The parties may not otherwise pursue any additional formal discovery, except to seek updated responses to prior discovery requests (including subpoenas).

(ECF No. 155.)

Following entry of that order, Miller served subpoenas on the Non-Parties, seeking a wide range of documents relating to the Reeves and Blitz reports and underlying investigations. (*See* ECF Nos. 159-6, 161-6.) The Non-Parties moved to quash the subpoenas on the grounds that they violated the Court's July 13 discovery order; producing documents in response to the subpoena would violate the protective order entered in *Karthauser*; and the subpoenas sought documents that are protected by the attorney-client privilege or the work product doctrine. (*See*

PAGE 3 – DISCOVERY ORDER

EXHIBIT 1
Page 3 of 11

ECF Nos. 158, 160.) The Court denied the motions to quash on September 9, 2022. (ECF No. 166.)

Thereafter, the Non-Parties produced to Miller approximately 1,500 pages of responsive documents that were not stored electronically. However, Miller and the Non-Parties could not agree on e-discovery search terms. The Non-Parties proposed three custodians (Watson, Reeves, and Blitz), search terms ((("investigation" or "report") and ("9-1-1" or "911")), and a date range of January 1, 2017 to April 20, 2017. Miller initially proposed ten custodians/sources, 107 senders/receivers, and 125 search terms for Bullard Law, and 38 custodians/sources, 81 senders/receivers, and 125 search terms for the District. Following a discovery hearing and further conferral, Miller narrowed the terms to five custodians/sources, 42 senders/receivers, and 71 search terms for Bullard Law, and 23 custodians/sources, 41 senders/receivers, and 73 search terms for the District. Miller's requests span a date range of October 1, 2016 to December 31, 2018.

The Non-Parties obtained an estimate from an e-discovery vendor for $54,200 to $87,200 in costs to process e-discovery using the narrowed search terms, and Non-Parties' counsel anticipates $35,000 to $40,000 in attorney's fees and costs to review and produce the discovery. Miller's counsel asserts that the vendor estimate is unreasonably high and produced a lower estimate from another vendor. However, the Non-Parties' counsel obtained an apples-to-apples comparison from Miller's vendor and the estimate was roughly the same as the Non-Parties' vendor. In sum, it will cost the Non-Parties an estimated minimum of $89,200 and a maximum of $127,200 to respond to Miller's subpoenas in light of the scope of his proposed e-discovery search terms.

///

PAGE 4 – DISCOVERY ORDER

EXHIBIT 1
Page 4 of 11

## DISCUSSION

I.     **MILLER'S REQUESTED SEARCH TERMS AND THE NON-PARTIES' REQUESTED SANCTION**

The current posture of the pending discovery dispute before the Court is that the Non-Parties are asking the Court to allow them to produce nothing further, and Miller continues to ask for the moon. *See Boston Scientific Corp. v. Lee*, Case No. 5:14-mc-80188-BLF-PSG, 2014 WL 3851157, at *1 (N.D. Cal. Aug. 4, 2014) ("This case illustrates a recurring problem in all civil discovery[.] A party demands the sun, moon and stars in a document request or interrogatory, refusing to give even a little bit. The meet and confer required by a court in advance of a motion is perfunctory at best, with no compromise whatsoever."). This despite weeks of Court-ordered conferral and discovery hearings. The Court finds that both positions are unreasonable, but based on communications to date, the Court has no confidence that counsel for Miller and the Non-Parties could reach an agreement on the search terms or a path forward if the Court ordered further conferral. *See Barracuda Networks, Inc. v. j2 Global, Inc.*, No. 2:19-mc-00146-PSG (PJWx), 2020 WL 5802372, at *3 ("[C]ounsel were seemingly unable or unwilling to agree on the time of day[.]"); *see also Boston Scientific Corp.*, 2014 WL 3851157, at *7 ("But to allow [the plaintiff] now to seek shelter from a fallback position . . . would make a mockery of both parties' obligation to meet and confer in good faith from the start. The time to tap flexibility and creativity is during meet and confer, not after."). The parties have not asked the Court to assist with narrowing the search terms, nor does the Court have the ability *sua sponte* to narrow Miller's search terms in any meaningful way. Thus, the Court must choose between two unreasonable positions.

Citing Federal Rule of Civil Procedure ("Rule") 45(d)(1), the Non-Parties ask the Court to sanction Miller for failing to take reasonable steps to avoid imposing undue burden or

PAGE 5 – DISCOVERY ORDER

EXHIBIT 1
Page 5 of 11

expense, by ordering that the Non-Parties' production to date is complete. The Court declines to do so because Miller took steps to narrow his original search terms, and because it does not appear that Miller is acting in bad faith, for an improper purpose, or in a manner inconsistent with existing law. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) ("Rule 45(d)(1) is discretionary. . . . Merely losing a motion to compel does not expose a party to Rule 45 sanctions. Similarly, while failure narrowly to tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions. A court may, however, impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law.") (simplified); *see also Audio MPEG, Inc. v. HP Inc.*, No. 16-mc-80271-HRL, 2017 WL 950847, at *6 (N.D. Cal. Mar. 10, 2017) ("[T]o the extent that Apple's opening brief suggests that the court should sanction Dell for its failure to avoid imposing an undue burden, the court will not impose sanctions in light of Dell's cooperative efforts to narrow the scope of discovery requested in its subpoenas."). Further, the Non-Parties have not yet produced any e-discovery in response to the subpoenas, and therefore the Court finds that ordering that their production to date is complete is not an appropriate discovery sanction.

Aside from their request for an order relieving them of any further obligation to respond to the subpoenas, the Non-Parties have not offered a meaningful alternative to Miller's search terms. Therefore, the Court orders the Non-Parties to produce e-discovery responsive to the subpoenas using Miller's narrowed search terms. However, the Court agrees with the Non-Parties that Miller's proposed search terms, even as narrowed, result in a significant expense, and

therefore the Court shifts the Non-Parties' expenses resulting from compliance with the subpoenas back to Miller.[1]

## II. MANDATORY RULE 45 COST-SHIFTING

### A. Legal Standards

Rule 45 governs non-party subpoenas and allows a party to serve a subpoena commanding a nonparty to produce materials. "Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." *Legal Voice*, 738 F.3d at 1184; *see also* FED. R. CIV. P. 45(d)(2)(B)(ii) ("[The order [compelling production] must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance").[2]

"[W]hen discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." *Legal Voice*, 738 F.3d at 1184. "If so, the district court must order the party seeking

---

[1] In light of the cost-shifting ordered herein, the Court overrules the Non-Parties' objection under Rule 45(e)(1)(D) that the electronically-stored information is not reasonably accessible due to undue burden and cost. *See* FED. R. CIV. P. 45(e)(1)(D) ("The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.").

[2] The Non-Parties question whether Rule 45(d)(2)(B)(ii) applies here because Miller has not formally moved to compel compliance with the subpoena. However, the Court required Miller and the Non-Parties to utilize the Court's informal discovery dispute resolution procedures to resolve Miller's objections to the Non-Parties' subpoena compliance to date, and formal briefing was not requested. As such, the Court considers Miller's requests during the informal process as requests to compel the Non-Parties to produce e-discovery consistent with his proposed search terms. *Cf. Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-cv-04062-LHK, 2017 WL 930809, at *1 n.3 (N.D. Cal. Mar. 9, 2017) ("Under the particular circumstances presented here, the fact that [the non-party's] production was made without the necessity of a court order compelling compliance does not foreclose its ability to seek reimbursement of its costs. Costs may be shifted if the requesting party is on notice that the non-party will seek reimbursement.") (citation omitted).

PAGE 7 – DISCOVERY ORDER

EXHIBIT 1
Page 7 of 11

discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'" *Id.* "[T]he rule is mandatory." *Id.*

"[N]either the Federal Rules nor the Ninth Circuit has defined 'significant expenses,' which is a term that readily lends itself to myriad interpretations depending on the circumstances of a particular case." *United States v. McGraw-Hill Cos., Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014). Courts look to the nonparty's financial ability to bear the costs of production. *Id.* "[A]n expense might be 'significant,' for instance, to a small family-run business, while being 'insignificant' to a global financial institution." *Id.*

Rule 45's cost-shifting provision "was not intended as a mechanism for entities which stand to benefit from certain litigation outcomes to evade discovery costs arising from their involvement in the underlying acts that gave rise to the lawsuit." *Cornell v. Columbus McKinnon Corp.*, No. 13-cv-02188-SI, 2015 WL 4747260, at *5 (N.D. Cal. Aug. 11, 2015) (citation omitted). Thus, courts also must consider whether the nonparty has an interest in the outcome of the underlying case. *Id.*

Finally, the nonparty seeking cost shifting must demonstrate that its costs are reasonable and resulted from compliance with the subpoena. *See McGraw-Hill Cos., Inc.*, 302 F.R.D. at 536 ("Rule 45 does not cut a blank check to non-parties—unnecessary or unduly expensive services do not 'result from compliance' and, therefore, do not count as 'expenses.'").

**B.      Analysis**

The Court concludes that the expense required for the Non-Parties to respond to Miller's subpoenas in accordance with Miller's e-discovery search terms is significant, and therefore shifts the expense to Miller.

///

///

There can be no reasonable dispute that expenses totaling $89,200 to $127,200 for non-parties to respond to a subpoena are significant.[3] See *Barracuda Networks, Inc.*, 2020 WL 5802372, at *4 (shifting to the plaintiff significant "costs of $22,729.65 and attorney's fees of $52,110.40 for a total of $74,840.05" that non-party digital media company incurred to comply with subpoena); *Nitsch,* 2017 WL 930809, at *1, 4 (finding that $67,787.30 was a significant expense for a nonparty consulting company); *Legal Voice*, 738 F.3d at 1181, 1185 (finding "no trouble concluding that $20,000 is 'significant'" for a non-profit legal advocacy group).

The Court has considered the ability of the Non-Parties to pay the costs of compliance, and concluded that the expenses here are not insignificant to either the District (a taxpayer-funded public safety agency) nor its law firm. See *Barracuda Networks, Inc.*, 2020 WL 5802372, at *2 ("[The plaintiff's] argument that $22,729.65 is not significant to [the non-party digital media company] is rejected. $22,729.65 to produce discovery to another company for that company's lawsuit is significant to any company, even one like [the non-party digital media company]. And, if that were not enough, [the non-party] also spent more than $80,000 on attorney's fees, bringing its total to over $106,000.00. Clearly, that amount is 'significant' to [the non-party].").[4]

Further, although both Non-Parties have some tangential interest in the outcome of this litigation, it does not appear that either has a financial stake in the litigation, Miller has not

---

[3] The Non-Parties represent they have already spent dozens of hours and thousands of dollars in fees and costs to produce the 1,500 pages of documents to date, and that they have not billed any of those expenses to Miller. Thus, the Court concludes that the Non-Parties have already crossed the "significant" expense threshold, such that Miller must bear all additional costs of compliance going forward. See *Legal Voice,* 738 F.3d at 1185 (noting that even $9,000 may be sufficiently "significant").

[4] Miller does not allege that he does not have the ability to pay the Non-Parties' expenses, and the history of this litigation to date does not suggest a lack of resources.

PAGE 9 – DISCOVERY ORDER

EXHIBIT 1
Page 9 of 11

worked for the District for several years, the District was never a party to this litigation, and Bullard Law was dismissed early in the litigation.

Finally, the Court finds that the Non-Parties' estimated vendor costs of complying with the subpoenas is reasonable. The Court bases its conclusion in part on the comparable estimate from a second vendor.[5] *See id.* ("According to [the non-party], it originally gathered 702,000 documents and ultimately produced 11,000. Paying a vendor $22,729.65 to assist in screening and producing this many documents is not unreasonable by any means. As such, [the non-party's] motion for reimbursement of that cost is granted."). The Court reserves judgment on whether the Non-Parties' estimate of attorney's fees and costs to review and produce the discovery is reasonable.

For all of these reasons, the Court orders Miller to pay $54,200 up front to cover the low end of the e-discovery vendor's estimate before the vendor begins the e-discovery project. *See Pitts v. Davis*, No. 2:12-cv-0823 TLN AC P, 2015 WL 6689856, at *5 (E.D. Cal. Oct. 30, 2015) ("[T]he court has discretion under Rule 45 to award costs before or after production.") (citation omitted). Miller may pay the sum directly to the vendor, or may deposit the funds with the Court. In addition, the Non-Parties' counsel shall submit its monthly billing records to Miller for payment. If Miller and the Non-Parties do not agree on the reasonableness of the Non-Parties' fees and costs reflected in the billing records, they shall submit the billing records to the Court.[6]

---

[5] Miller and the Non-Parties shall confer to resolve Miller's complaints about the form of the Non-Parties' production to date so that any problems are not compounded with the e-discovery production.

[6] The attorney's fees and costs must result from reviewing and producing the e-discovery discussed herein, and therefore shall not include any fees and costs incurred leading up to this order. *See Nitsch*, 2017 WL 930809, at *2 ("Reimbursable expenses under Rule 45 may include some attorney's fees. However, '[t]he rule does not establish a blanket requirement that all of a nonparty's legal fees are reimbursable so long as they are somehow related to its efforts in responding to a subpoena.' Rather, '[r]eimbursable fees are those that are necessary to the third

PAGE 10 – DISCOVERY ORDER

EXHIBIT 1
Page 10 of 11

Upon agreement as to the reasonableness of the fees or upon the Court's order regarding same, Miller shall pay the Non-Parties' fees and costs within fourteen days.

## CONCLUSION

For the reasons stated, the Court ORDERS that (i) Miller shall pay $54,200 by December 5, 2022, to cover the Non-Parties' e-discovery vendor costs before the vendor begins work; (ii) Miller shall pay any additional e-discovery vendor expenses greater than $54,200, not to exceed $87,200, within fourteen days of receiving the vendor's invoice; and (iii) Miller shall pay the Non-Parties' reasonable attorney's fees and costs to comply with the subpoenas, within fourteen days of receipt of the invoices (or, if Miller disputes the reasonableness of any invoice, within fourteen days of an agreement or a court order regarding the reasonableness of the attorney's fees and costs incurred).

The Court EXTENDS the discovery deadline to March 31, 2023, to allow the Non-Parties sufficient time to collect, review, and produce the requested e-discovery and to allow Miller sufficient time to take any noticed depositions after reviewing the e-discovery. The Court EXTENDS the dispositive motion deadline to April 28, 2022. The Court VACATES the May 16, 2023 trial date and the April 19, 2023 pre-trial conference, to be reset at a later date.

DATED this 21st day of November, 2022.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

party's compliance and thus benefit the requesting party or are of assistance to the court.'") (simplified); *see also McGraw-Hill*, 302 F.R.D. at 536 ("The touchstone is whether the expense 'result[s] from compliance' with the court's order compelling production." (quoting FED. R. CIV. P. 45(d)(2)(B)(ii))).

PAGE 11 – DISCOVERY ORDER

EXHIBIT 1
Page 11 of 11