**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **TYLER MILLER**, an individual, | Case No. 3:23-cv-293-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **HENRY HEIMULLER**, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; **BRUCE HOLSEY**, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; **JEFF FLATT**, in his official capacity as Board Member of the Columbia 9-1-1 Communications District; **SHELLEY HENNESSY**, in her official capacity as Board Member of the Columbia 9-1-1 Communications District; and the **COLUMBIA 9-1-1 COMMUNICATIONS DISTRICT**, an Oregon Municipal Corporation, | |
| Defendants. | |

Clifford S. Davidson, Brett E. Applegate, and Drew L. Eyman, SNELL & WILMER, 601 SW Second Avenue, Suite 2000, Portland, OR 97204. Of Attorneys for Plaintiff.

Karen O'Kasey and Zachariah Allen, HART WAGNER LLP, 1000 SW Broadway, Twentieth Floor, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Tyler Miller partially prevailed in a recent bench trial against Defendants, the Columbia 9-1-1 Communications District ("District") and four members of its Board of Directors ("Board"). Among other relief, the Court awarded Miller a permanent injunction. Now before the Court is Miller's motion under Rule 60(a) of the Federal Rules of Civil Procedure to correct the terms of that injunction. ECF 209 ("Mot."). For the reasons discussed below, because the terms of the injunction were not the result of a clerical mistake or a mistake arising from oversight or omission, the Court denies Miller's motion.[1]

## STANDARDS

Rule 60(a) of the Federal Rules of Civil Procedure allows a district court to "correct a clerical mistake or a mistake arising from oversight or omission." Rule 60(a) provides the fix for "blunders in execution," whereas Rule 60(b) may be used to address substantive mistakes "where the court *changes its mind*." *Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1297 (9th Cir. 2014) (quotation marks omitted and emphasis in original); *see also Blanton v. Anzalone*, 813 F.2d 1574, 1577 n.2 (9th Cir. 1987) (explaining that Rule 60(a) cannot be used "where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination"). Arithmetic or spelling errors are "quintessential" clerical errors. *Tattersalls*, 745 F.3d at 1297 (citing Moore's Federal Practice § 60.11); *see also Jones & Guerrero Co. v. Sealift Pac.*, 650 F.2d 1072, 1074 (9th Cir. 1981) (collecting cases). So too are instances "where what is spoken, written or recorded is

---

[1] Notwithstanding the Parties' requests for oral argument, the Court does not believe that oral argument would assist in resolving the pending motion. *See* LR 7-1(d)(1).

not what the court intended to speak, write or record." *In re Jee*, 799 F.2d 532, 535 (9th Cir. 1986).

A district court may also use Rule 60(a) "to clarify a judgment in order to correct a failure to memorialize part of its decision, to reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented, or to permit enforcement." *Garamendi v. Henin*, 683 F.3d 1069, 1078 (9th Cir. 2012) (cleaned up). As the Ninth Circuit explained in *Garamendi*, however, that use is narrow. *See id*. Because "Rule 60(a)'s touchstone is fidelity to the intent behind the original judgment," *id.*, the "rule does not allow a court to make corrections that, under the guise of mere clarification, 'reflect a new and subsequent intent because it perceives its original judgment to be incorrect,'" *id.* at 1080 (quoting *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992)). Thus, if a court resorts to Rule 60(a) to clarify the language of its judgment, the new language "'must reflect the contemporaneous intent of the district court as evidenced by the record.'" *Id.* (quoting same).

By contrast, Rule 60(b)(5) permits a court to modify the substantive terms of an injunction when "applying it prospectively is no longer equitable." Because a modification under Rule 60(b)(5) is extraordinary relief, courts in the Ninth Circuit require "clear showings of 'a substantial change in circumstances or law since the orders were entered, extreme and unexpected hardship in compliance with the injunction's terms, and a good reason why the court should modify the permanent injunction.'" *SEC v. Worthen*, 98 F.3d 480, 482 (9th Cir. 1996) (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363, 365 (9th Cir. 1990) (adopting alterations in *Worthen*)).

**BACKGROUND**[2]

In 2020, Miller was elected to the Scappoose City Council and was appointed as the

Council's 9-1-1 communications liaison to the Columbia 9-1-1 Communications District.

ECF 205 ("FFCL") at 3 ¶ 5. In January 2023, the Board authorized the District's Executive

Director at the time, Michael Fletcher, to hire the District's outside counsel to investigate

employee complaints about Miller. *Id.* ¶ 6. The outside counsel made an investigative report. *See*

*id.* at 4 ¶ 7. Based solely on that report and a set of text messages between Miller and another

district employee, Chandra Egan, the Board voted on February 23, 2023 "to authorize general

counsel to issue a notice of no contact and no trespass to Tyler Miller effective immediately, and

to remain in effect until further board action" (the "Ban"). *Id.* at 4 ¶¶ 7-12. That same day, the

District's general counsel sent the Ban to Miller via letter. *Id.* at 5 ¶ 14. In relevant part, the Ban

read:

> **NOTICE:** You are not permitted to enter the District's premises or
> any property owned or leased by the District, including remote
> tower sites. You are not allowed to attend the District's public
> meetings in person. You may attend District public meetings by
> remote means. . . .
>
> **ADDITIONAL NOTICE**: You are further notified not to contact
> District employees directly, indirectly, or through the District's
> communications systems except in an emergency. . . .
>
> **FAILURE TO COMPLY**. If you fail to comply with the above
> notices, you will be subject to civil or criminal actions. Local law
> enforcement will be provided a copy of this notice for future
> enforcement purposes. . . .

*Id.* at 5 ¶ 14.

---

[2] The Court repeats only the factual findings necessary to resolve the present Motion. For
the Court's full Findings of Fact, see ECF 205.

Miller sued the District and four Board members under 42 U.S.C. § 1983, arguing that

enforcement of the Ban violated his First Amendment rights to free association and free

expression. *Id.* at 2.[3] Miller sought and obtained a temporary restraining order and a preliminary

injunction stating that he may not be prevented from attending Board meetings otherwise open to

the public. *See id.* at 6 ¶¶ 15-16; ECF 20 (temporary restraining order); ECF 52 (preliminary

injunction). Miller then sought a permanent injunction to enjoin Defendants from enforcing the

Ban in its entirety. *Id.* at 20 ¶¶ 18-19. The Court held a one-day bench trial on July 14, 2025. *See*

ECF 204 ("Trial Tr.") at 1-3. On August 15, 2025, the Court issued Findings of Fact and

Conclusions of Law. *See generally* FFCL.

The Court concluded that the Ban violated the First Amendment in two ways. First, the

Court concluded that the Ban violated Miller's right of free expression. The Court determined

that public Board meetings are limited public fora in which the government may only impose

reasonable, viewpoint neutral speech restrictions. FFCL at 17-18 ¶ 12; 12-13 ¶¶ 2-4. Because the

District's concerns could have been addressed by less restrictive means than the "permanent,

prospective ban" than it imposed, such as requiring Miller to maintain an appropriate physical

distance from certain employees, the Court found that the Ban was unreasonable. *Id.* at 13-18

¶¶ 5-12. Second, the Court concluded that the Ban violated Miller's First Amendment right to

association. *Id.* at 18-19 ¶¶ 14-15. The Court explained that because less restrictive alternatives

existed, the Ban was not narrowly tailored. *Id.*

After concluding that the Ban violated the First Amendment, the Court crafted an

appropriate injunction. *Id.* at 22-24 ¶¶ 22, 25. In doing so, the Court found the following facts

---

[3] Although Miller originally alleged a claim of First Amendment retaliation, the parties
stipulated to the dismissal of that claim. ECF 167.

relevant: (1) Egan and Hooper testified that they would feel more comfortable if Miller must always maintain appropriate physical distance from them and refrain from communicating—directly or indirectly—with them in the absence of their consent, except to the extent required by Miller's current elected position; (2) Miller offered no evidence to suggest that he needs to be within a particular distance of Egan or Hooper to do his job as a Board member going forward; (3) Miller has no reason directly to communicate with Egan for either of them properly to do their jobs; (4) and, Because Hooper makes presentations to the Board and answers questions from the Board at official meetings, she may need to interact with Miller in his official capacity as a Board member at those meetings, but Miller has no reason directly to communicate with Hooper outside of those board meetings. *See id.* at 22 ¶ 22. From those facts, the Court concluded that "a permanent injunction conditioning Miller's ability to attend district meetings in person on a restriction limiting his ability to approach or communicate with Egan and Hooper would appropriately strike a reasonable balance between Miller's interest and the District's." *Id.*

At trial, Defendants argued that an order enjoining the entirety of the Ban would be inappropriate. *Id.* ¶ 23. The Court agreed. *Id.* ("[T]he Court agrees . . . that an order enjoining the entirety of the Ban is inappropriate."). Although the Court agreed that the Ban was "unconstitutional insofar as it prevents Miller from attending public meetings in person," it explained that "Miller has not shown how a prohibition on entering generally restricted District property or contacting District employees outside of public meetings or other public necessity violated Miller's First Amendment rights to expression and association." *Id.* The Court further explained:

> Of course, Miller may need to enter certain District premises in his capacity as a Board member, namely, to attend meetings. And, as discussed, Miller may need to communicate with certain District employees to fulfill his obligations as a Board member. But aside

> from these practical carve outs, the Court will balance Miller's
> rights with the District's interests by enjoining the Ban insofar as it
> prevents Miller from physically attending District meetings or
> otherwise fulfilling his role as a Board member.

*Id.*

The Court then addressed the effect that its injunction will have on the public interest of non-parties. *Id.* at 23 ¶ 24. Finding that there is both a "significant public interest in upholding First Amendment principles" and a "significant public interest in ensuring that public fora are safe places for people to engage in public discourse," the Court explained that "the District retains the power to expel Miller from any particular meeting at which he presents a legitimate threat to the other attendees." *Id.*

Accordingly, the Court granted Miller "a limited, permanent conditional injunction." *Id.* at 23 ¶ 25. The injunction was "conditioned on the following two requirements": (1) "First, Miller must always maintain a distance of 15 feet from both Egan and Hooper." (2) "Second, apart from asking questions of Hooper during Board meetings in his official capacity as a Board member, Miller may not initiate communications with Egan or Hooper directly or indirectly, in person, by text, by phone, by email, or otherwise." *Id.* at 23-24 ¶ 25. The Court also retained jurisdiction "to enforce the terms of the conditional injunction against any party." *Id.* at 24 ¶ 25.

The Court memorialized its limited, permanent conditional injunction in a Judgment that reads in relevant part:

> (3)     The Court **GRANTS IN PART** Plaintiff's request for
> permanent injunctive relief. Until the Court orders otherwise,
> Defendants are enjoined from enforcing the provision of the Ban
> that prohibits Plaintiff from attending public District meetings on
> the conditions that Plaintiff:
>
>> a)     must always maintains a distance of no less than 15
>> feet from both Chandra Egan and Dannell Hooper; and

>    b)    must not initiate communications with Chandra
>    Egan or Dannell Hooper directly or indirectly, in person, by
>    text, by phone, by email, or otherwise—apart from asking
>    questions of Dannell Hooper during Board meetings in
>    Plaintiff's official capacity as a Board Member.

ECF 206 ("Judgment") at 2.

On August 25, 2025, Miller filed the pending motion, requesting that this clause be

revised to state the following:

>    (3)    The Court **GRANTS IN PART** Plaintiff's request for
>    permanent injunctive relief. Until the Court orders otherwise,
>    Defendants are enjoined from enforcing the Ban insofar as it
>    prevents Plaintiff from physically attending District meetings or
>    otherwise fulfilling his role as a Board member. However, the
>    Court reserves the right to vacate this injunction against
>    Defendants if Defendants demonstrate, by a preponderance of the
>    evidence, that while on District premises, Plaintiff:
>
>    >    a)    has failed to maintain a distance of no less than 15
>    >    feet from Chandra Egan or Dannell Hooper; or
>
>    >    b)    has initiated communications with Chandra Egan or
>    >    Dannell Hooper directly or indirectly, in person, by text, by
>    >    phone, by email, or otherwise—apart from asking questions
>    >    of Dannell Hooper during Board meetings in Plaintiff's
>    >    official capacity as a Board Member.
>
>    Nothing in this Section 3 shall be applied in a way that unduly
>    interferes with Plaintiff's official duties as an elected or appointed
>    official, employee, or volunteer, of any public body.

Mot. at 2-3.

On August 27, 2025, Miller posted about an upcoming Board of Directors meeting to his

Columbia 9-1-1 Communications District Board Member page on Facebook. ECF 213 ("Miller

Decl.") ¶ 2, Ex. 1. Miller explained that "[t]here is no accountability" within the Board and that

"the majority of the board doesn't appear to take their responsibility to the public seriously." *Id.*

Ex. 1. Miller also said that the "new executive director hired by the previous board, has been a

disappointment (my opinion) and is non collaborative with the board you elected to represent

PAGE 8 – OPINION AND ORDER

you." Miller ended his remarks by saying "I work for the people who elected me. Who are they working for and are they doing a good job?" and sharing a graphic reading, "TIME TO CHANGE!" *Id.* (emphasis in original).

That same day, Fletcher—the former Board director who hired Van Meter to investigate Miller in 2023—shared Miller's post in the *Columbia County Concerned Citizens Completely UNCENSORED !!!! "Not 4Cs"* Facebook group, which has approximately 4,100 members. Miller Decl. ¶¶ 3-4. Fletcher also commented:

> Mr. Miller reports that the new Executive Director refuses to meet with him. This is not true. The Executive Director was willing to meet Mr. Miller off site, but not at the district office. This was not acceptable for Mr. Miller . . . Mr. Miller is not being transparent about his restrictions placed on him by a FEDERAL JUDGE AND THE FEDERAL COURT. Mr[.] Miller is not allowed to be on ANY district property with the exception of attending public meetings. He is restricted from having ANY contact (in person, telephone, text, email) with multiple district staff members. In essence, there is a restraining order for Mr[.] Miller due to his BEHAVIOR . . . While he professes his innocence publicly, a FEDERAL JUDGE found something completely different. TRANSPARENCY!

Miller Decl. Ex. 2 (emphasis in original); *see also* Miller Decl. ¶ 4.

Miller attended the scheduled Board of Directors meeting on August 28, 2025, in his capacity as an elected member of the Board. Miller Decl. ¶ 5. During the meeting, the Board went into executive session to discuss litigation, and the Board told Miller to leave the building. *Id.* Miller "was not allowed to remain in the admin area of the District building." *Id.* Although he was "told that the executive session would last about 15 minutes," Miller was "left outside for about 40 minutes" in 88-degree weather. *Id.*

On several occasions, the Executive Director and President cancelled meetings with Miller and dodged Miller's attempts to discuss topics at Board meetings. ECF 220 ("Second Miller Decl.") ¶¶ 5-9. Miller has also been disinvited from employee appreciation events and has

not been given a District polo shirt or District key card. *Id.* ¶¶ 20-22. Additionally, the Board

frequently goes into executive session to discuss Miller's litigation, during which he is asked to

leave the premises. *See id.* ¶¶ 11-15. Miller is "informed and believe[s] that waiting in the

conference room would not require [him] to come within 15 feet of either Chandra Egan or

Dannell Hooper" or communicate with them. *Id.* ¶ 16.

Miller has been informed that fellow Board members are under the false impression that

the Court has "banned" him from the District building, including the administrative area of the

building. *Id.* ¶ 4. On September 28, 2025, Miller received a telephone call from former State

Senator Betsy Johnson. *Id.* ¶ 10. During that call, Johnson told Miller that a current member of

the Board told her that it was not the Board or the Executive Director who were banning Miller

from the District building, but rather it was the Court. *Id.*

## DISCUSSION

### A.  Rule 60(a)

The Court begins by noting that Miller's Motion stretches Rule 60(a) beyond the bounds

of its permissible use. Miller is requesting that the Court substantially rewrite the injunction. This

is not an arithmetic, spelling, or clerical error that Rule 60(a) was designed to address. *See*

*Tattersalls*, 745 F.3d at 1297; *Jones & Guerrero Co.*, 650 F.2d at 1074. Altering the text of the

Judgment in this manner also is more than addressing mere "blunders in execution." *Tattersalls*,

745 F.3d at 1297. Therefore, the Court closely scrutinizes whether Miller's proposed changes fall

within any of the narrow exceptions discussed in *Garamendi*, which all require that the new text

"reflect[s] the contemporaneous intent of the district court as evidenced by the record."

*Garamendi*, 683 F.3d at 1080.

Miller argues that Rule 60(a) relief is proper because the Judgment is inconsistent with

two statements in the conclusions of law. First, Miller says that the Judgment does not "explicitly

reflect the 'practical carve outs' described by the Court" in Paragraph 23 of the conclusions of

law, "nor does it specify that the Ban is enjoined 'insofar as it prevents Miller from . . . otherwise

fulfilling his role as a Board member.'" Mot. at 3 (quoting FFCL at 22-23 ¶ 23). Second, Miller

argues that Paragraph 25 of the conclusions of law evinces the Court's intent to "condition

Miller's attendance at District meetings on his adherence to the stated conditions while he is on

District premises" and its intent to "retain the sole authority to dissolve the injunction in the

event the District demonstrates that Miller has violated the stated conditions." *Id.* at 4.

To bridge these perceived gaps, Miller says that the Judgment should be "corrected" with

four changes. First, Miller proposes that the scope of the Court's injunction be broadened. The

injunction enjoins enforcement of "the provision of the Ban that prohibits Plaintiff from

attending public District meetings" if Miller complies with conditions (a) and (b) restricting his

interactions with Egan and Hooper. Judgment at 2. Provided Miller's compliance with the same

conditions, Miller's proposed language would enjoin Defendants "from enforcing the Ban

insofar as it prevents Plaintiff from physically attending District meetings or otherwise fulfilling

his role as a Board member." Mot. at 3. That text does not align with the Court's

contemporaneous intent or the record evidence; thus, the Court declines to adopt it.

There is no question that the "contemporaneous intent," *see Garamendi*, 683 F.3d

at 1079-80, of the Court was to enjoin the Ban only to the extent that it applied to public District

meetings. To decide Miller's First Amendment claim, the Court defined the relevant forum as

"public District meetings." FFCL at 13 ¶ 5. From there, the Court analyzed Miller's First

Amendment rights to free expression and free association only in the context of public District

meetings. Accordingly, the Court discussed only public meetings and the interests of the general

public throughout its First Amendment discussion. *See, e.g.*, *id*. at 12 ¶ 2 (citing *Reza v. Pearce*,

806 F.3d 497, 503 (9th Cir. 2015) and *Walsh v. Enge*, 154 F. Supp. 3d. 1113, 1127 (D. Or. 2015)

for their discussions of city council meetings open to the public); 14-15 ¶¶ 6-8 (discussing

Miller's behavior at public meetings); 16-17 ¶¶ 9-11 (applying forum analysis to "public

meetings"). Read in this context, the Court's conclusion that "the Ban is unconstitutional insofar

as it prevents Miller from attending *public* meetings in person" is consistent with its conclusions

of law. It would be inconsistent with the Court's contemporaneous intent to adopt Miller's

proposed text, which would extend to all District meetings—including those not open to the

public.

It would also be inconsistent with the Court's intent to adopt Miller's proposed change

enjoining enforcement of the Ban "insofar as it prevents [Plaintiff] from . . . otherwise fulfilling

his role as a Board member." FFCL at 23 ¶ 23. In *Garamendi*, the Ninth Circuit explained that

courts must be able to "turn to the record [to] ensure that the clarifications did not change the

operative, substantive terms of the original judgment." *See* 683 F.3d at 1080. To do so, a court

should identify where the "relevant facts [could] be found" to support the court's modifications

and determine whether "[t]hose facts were all implicitly part of the original . . . judgments." *Id.*

Here, there is no record evidence about Miller's job duties. For example, as the Court

noted in its Findings of Fact and Conclusions of Law, "Miller offered no evidence that he needs

to be within a particular distance of Egan or Hooper to do his job as a Board member going

forward." FFCL at 22 ¶ 22. In closing arguments, when the Court asked counsel for Miller:

"How do I know what his needs are as a board member? There is no testimony of his needs as a

board member or what he needs to do, who he needs to communicate with. Am I missing

something?," counsel for Miller answered: "You are not." Trial Tr. at 88:9-13; *see also* ECF 215

("O'Kasey Decl.") ¶ 2; Ex. 1 (same). Thus, adding an express carveout in the injunction to

prevent enforcement of the Ban whenever it stops Miller from fulfilling his role as a Board member would substantively change the operative terms of the Judgment without any contemporaneous factual support from trial. *Contra Garamendi*, 683 F.3d at 1080.

Second, Miller suggests adding a proviso at the end of the injunction, ensuring that nothing in the section "be applied in a way that unduly interferes with Plaintiff's official duties as an elected or appointed official, employee, or volunteer, of any public body." Mot. at 3. That addition would expand the scope of the injunction far wider—encompassing official duties of any position he may hold in a public body—than the impermissible scope rejected above—involving only his duties as a Board member. Miller's proposed text encompassing any position with any public body also would be wholly disproportionate to the First Amendment violation the Court is redressing. *See Milliken v. Bradley*, 433 U.S. 267, 281-82 (1977) ("The well-settled principle that the nature and scope of the remedy are to be determined by the violation means simply that federal-court decrees must directly address and relate to the constitutional violation itself."). As discussed, the First Amendment violation that was pleaded and tried has nothing to do with Miller's elected position and instead was only about his right as a member of the public to attend District meetings otherwise open to the public. Indeed, Miller's First Amended Complaint, which was the operative pleading, alleged nothing about Miller being an elected member of the Board (which occurred while this lawsuit was pending). *See, e.g.*, ECF 89 (Amended Complaint) ¶¶ 11-12 (discussing Miller's attendance at "public board of director meetings").

Third, Miller proposes that the Court clarify that he can only violate the conditions of the injunction "while on District premises." Mot. at 1. This limitation would also contravene the contemporaneous intent of the Court. Both Egan and Hooper testified, and the Court found, that

PAGE 13 – OPINION AND ORDER

"they would feel more comfortable if Miller must (1) *always* maintain appropriate physical distance from them; and (2) refrain from communicating—directly or indirectly—with them in the absence of their consent." FFCL at 22 ¶ 22 (emphasis added). The Court also found that "Miller has no reason directly [to] communicate with Egan," and "Miller has no reason directly to communicate with Hooper outside of . . . [B]oard meetings." *Id.* The Court's conditions—that Miller "always" stay 15 feet away from Egan and Hooper, and that Miller refrain from communicating with either, aside from asking Hooper questions during Board meetings—are consistent with those factual findings. The Court would be searching in vain for the "relevant facts" in the record to support modifications limiting the injunction to District property. *See Garamendi*, 683 F.3d at 1080. There was no testimony to that end that could have been "implicitly part of the original" injunction. *See id.*

Fourth, Miller proposes an additional term requiring Defendants to prove, by a preponderance of evidence, that Miller has violated one of the conditions of the injunction before the Court can vacate the injunction. Miller contends that the current injunction is ambiguous "as to whether the Court retains the sole authority to dissolve the injunction—or whether the District may, on its own accord, declare that Miller has violated the conditions." Mot. at 4.

The injunction expressly states that the "Court retains jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651, to enforce the terms of this permanent injunction against any party." Judgment at 2. Thus, the Court unambiguously retained the sole authority to dissolve the injunction. There is no need to add text to the injunction to clarify this point.

Whether the District may, on its own, declare that Miller has violated the conditions is a question with essentially the same answer. The plain language of the Judgment enjoins Defendants from enforcing the public meeting provision of the Ban "[u]ntil the Court orders

otherwise." Judgment at 2. Defendants therefore cannot institute another permanent, prospective

ban on Miller's attendance at public District meetings without obtaining leave of Court. If in the

future Defendants wish to have the injunction dissolved, Defendants may move the Court for

such an order. It also is unnecessary  amend the Judgment to provide that Defendants must prove

a violation of one of the conditions by a preponderance of evidence. That already is the

applicable standard of proof. *See In re Exxon Valdez*, 270 F.3d 1215, 1232 (9th Cir. 2001).

Although the injunction is unambiguous on this point, Miller's suggestion that the

District is powerless to find that he has violated the conditions of the Judgment has inaccurate

connotations that bear clarifying. As explained, the Judgment only enjoins the District from

enforcing the provision of the Ban that *permanently* prohibits Miller from attending *public*

District meetings. Some enforceable terms of the Ban overlap with the conditions of the

Judgment. If Miller were to speak to Egan, for example, that conduct would simultaneously

violate a condition of the Judgment ("Plaintiff . . . must not initiate communications with

Chandra Egan"), and may violate a portion of the Ban that the Judgment did not enjoin ("You are

further notified not to contact District employees directly, indirectly, or through the District's

communications systems except in an emergency."). Because of that overlap, it may appear as

though the District is finding its own violations of the Judgment when it continues to apply the

enforceable provisions of the Ban.

Because the Judgment addresses only the constitutional violation that Miller suffered, it

does not disturb the District's ability to impose reasonable or narrowly tailored restrictions on

speech during public District meetings. Nor did the Court limit the District's authority to remove

Miller from public meetings if he caused a disruption during the meeting. *Id.* at 15 ¶ 9

("Defendants could have excluded Miller from any public meeting during which he caused a

disruption."). The Court expressly held that "[i]t is reasonable for local councils immediately to exclude a disruptive individual from a meeting for the duration of *that* meeting." *Id.* at 15-16 ¶ 9 (emphasis in original) (collecting cases).

Thus, the Judgment does not enjoin the District from removing Miller (or any other disruptive individual) from public District meetings on a meeting-by-meeting basis. Thus, if Miller were to come within 15 feet of Hooper during a public Board meeting, for example, that conduct would simultaneously violate a condition of the Judgment ("Plaintiff . . . must always maintains a distance of no less than 15 feet from . . . Dannell Hooper") and offend a legitimate and significant government concern that the District has in keeping public District meetings safe and accessible. That, however, does not mean that the terms of the injunction are ambiguous. As noted, the Court has the sole authority to dissolve the injunction.

Lastly, the Court notes that the factual developments that occurred after entry of the Judgment bear little to no relevance to the appropriateness of a Rule 60(a) modification. Where the Ninth Circuit confronted "new material" animating the modification in *Garamendi*, it scrutinized the modification. 683 F.3d at 1080. The court located "the placement of [the new] facts in the corrected judgments" to determine whether the "district court relied on these additional facts in" granting relief. *Id.* After determining that the new facts did not affect the court's reasoning, the Ninth Circuit instructed: "[t]he mere mention of outside-the-record information does not require reversal when, as here, those facts do not affect the reasoning of the original or corrected judgments." *Id.* Here, relying on Miller's exclusion from a *private* Board meeting to re-evaluate the terms of the injunction would surely "affect the reasoning of the original" Judgment. *Id.*

The only relevance that the new evidence might have to a motion under Rule 60(a) is to demonstrate whether the Judgment "reflect[s] the necessary implications of the original order." *See Garamendi*, 683 F.3d at 1078. Moreover, relief under Rule 60(a) still would not be justified because the new evidence shows that the Judgment, in substance, already reflects the Court's intent. Fletcher said that "a FEDERAL JUDGE AND THE FEDERAL COURT" placed several restrictions on Miller, including that he is "not allowed to be on ANY district property with the exception of attending public meetings" and "is restricted from having ANY contact (in person, telephone, text, email) with multiple district staff members." Miller Decl. ¶ 4, Ex. 2. Miller also states that Senator Johnson told Miller that "it was not the Board or the Executive Director who were banning [Miller] from the District building, but rather it was this Court." Second Miller Decl. ¶ 10. As already discussed, the injunction does not prohibit the District from enforcing any portion of the Ban save the public meeting provision because the other provisions were not found to violate the First Amendment. Although the comments from Fletcher and Senator Johnson, as recited by Miller, may not have been entirely accurate,[4] they show that the Judgment, as written, already reflects the necessary implications of the Court's original Order. Rule 60(a) alteration, therefore, is neither needed nor warranted.

## B. Rule 60(b)(5)

Miller argues for the first time in his reply brief that there has been a "significant change in factual circumstances" justifying modification under Rule 60(b)(5). "[A]rguments raised for the first time in a reply brief are waived." *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1166 n. 8 (9th Cir. 2012) (internal quotation marks omitted). Even still, Rule 60(b)(5) relief would not appear to be warranted because Miller has not made a "clear

---

[4] The Court did not, for example, place a restraining order on Miller.

showing[ ]" that there is a substantial change in circumstances" justifying modification. *See Worthen*, 98 F.3d at 482. The exclusions Miller discusses from *private* Board meetings are precluded under the Judgment, were not raised in the First Amended Complaint, and were not before the Court at trial. Moreover, Miller has not made a clear showing of "extreme and unexpected hardship" resulting from compliance with the injunction's terms, nor has he presented a good reason for why the Court should modify the permanent injunction. *See id.* With these, granting relief under Rule 60(b)(5) would be inappropriate.

## CONCLUSION

The Court DENIES Plaintiff's Rule 60(a) Motion. ECF 209. The Court also DENIES AS MOOT Defendants' Unopposed Motion to File Sur-Reply. ECF 221.

**IT IS SO ORDERED.**

DATED this 20th day of October, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge